```
 1              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NORTH CAROLINA
 2                    WESTERN DIVISION

 3

 4   SIAVASH L. MOJARRAD,      -    Docket No. 5:20-cv-396-FL
     as administrator of The -
 5   Estate of Soheil Antonio-
     Mojarrad,                 -
 6                             -
        Plaintiff,             -    New Bern, North Carolina
 7                             -    February 6, 2023
            v.                 -    Final Pretrial Conference
 8                             -
     WILLIAM BRETT EDWARDS,    -
 9   in his individual         -
     capacity,                 -
10                             -
        Defendant.             -
11   -------------------------------

12           TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
           BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
13               UNITED STATES DISTRICT JUDGE.

14   APPEARANCES:

15   For the Plaintiffs:  Edwards & Beightol, LLC
                          By:  Catharine E. Edwards
16                             Kristen Lin Beightol
                          PO Box 6759
17                        Raleigh, NC 27628
                          (919) 636-5100
18
     For the Defendant:   Hartzog Law Group, LLP
19                        By: Dan McCord Hartzog, Jr.
                              Rachel Posey
20                        2626 Glenwood Avenue, Suite 305
                          Raleigh, NC 27608
21                        (919) 480-2450

22   Court Reporter:      Tracy L. McGurk, RMR, CRR
                          413 Middle St.
23                        New Bern, NC 28560
                          (419) 392-6626

24

25   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
```

1        (Commenced at 11:10 a.m.)

2             THE COURT:  Good morning.

00:00:02    3             MS. EDWARDS:  Good morning Your Honor.

00:00:04    4             THE COURT:  For the record, how does one

00:00:06    5    pronounce the plaintiff?

00:00:09    6             MS. EDWARDS:  The plaintiff is Siavash

00:00:15    7    Mojarrad, and the decedent is Soheil Mojarrad.

00:00:19    8             THE COURT:  So during trial you're wanting

00:00:21    9    to refer to the decedent just directly as Soheil?

00:00:26   10             MS. EDWARDS:  Yes, Your Honor.  We thought

00:00:28   11    with the plaintiff being Siavash Mojarrad and the

00:00:31   12    decedent being Soheil Mojarrad, that that would be

00:00:35   13    easier than "Mr. Mojarrad."

00:00:38   14             THE COURT:  Any objection as to that

00:00:40   15    nomenclature?

00:00:42   16             MR. HARTZOG:  No objection.

00:00:43   17             THE COURT:  It makes sense to me.

00:00:48   18             So for the plaintiff, counsel, if you would

00:00:52   19    please introduce those who are in attendance with you.

00:00:57   20             MS. EDWARDS:  Catharine Edwards for the

00:00:59   21    plaintiff.  I'm with Kristen Beightol also for the

00:01:02   22    plaintiff, and our paralegal Chelsea Clemmons.

00:01:05   23             THE COURT:  And for the Defendant?

00:01:05   24             MR. HARTZOG:  Good morning, Your Honor.  Dan

00:01:07   25    Hartzog, Jr. for Officer Edwards.  I'm here with Rachel

00:01:13   1   Posey, who has not entered and an appearance in the case

00:01:17   2   yet because she will be doing her E filing training on

00:01:20   3   Wednesday.

00:01:21   4           THE COURT:  Now, I'm not correcting you; in

00:01:23   5   fact, I'm going to give you dispensation.  But now that

00:01:25   6   we're not wearing masks, the protocol in the Eastern

00:01:28   7   District is that counsel would rise when addressing the

00:01:31   8   judge.  And so I'm confident that you will remember

00:01:34   9   that going forward.

00:01:35  10           However, today I'm going to invite you to

00:01:38  11   stay seated because I expect we're going to be going

00:01:41  12   back and forth fairly quickly, and that might actually

00:01:44  13   improve efficiencies.  This is somewhat of a dialogue

00:01:48  14   preparing a civil matter for trial.  As I told you the

00:01:53  15   other day on the phone, the Court's goal is that each

00:01:56  16   side be the best that it can be and the case get to the

00:01:59  17   jury as efficiently as possible.

00:02:02  18           So I assume the journey this morning with

00:02:06  19   Mr. Willett was a successful experience.  Anybody

00:02:09  20   having any issues with technology?

00:02:11  21           Okay.  Good.

00:02:13  22           So many, many things brought to my attention

00:02:21  23   in this case for address.  Why don't we start with

00:02:28  24   defendant's motion to redesignate Meghan Clement as a

00:02:36  25   case in chief expert witness.  And this is really

| | |
|---|---|
| 00:02:42 | 1 |
| 00:02:44 | 2 |
| 00:02:48 | 3 |
| 00:02:54 | 4 |
| 00:02:58 | 5 |
| 00:03:09 | 6 |
| 00:03:14 | 7 |

1  paired with plaintiff's motion, as the Court understands

2  it, to exclude expert testimony in the field of forensic

3  biology and forensic DNA.  And we've also got this

4  other individual whose name is a little difficult to

5  pronounce that kind of pairs up with Clement.  So why

6  do you think you should be able to bring -- and give me

7  the name of that second person.  What's her name?

8      MR. HARTZOG:  Yes, Your Honor.  Give me one

9  second.  It is --

10      MS. POSEY:  It's Bracamontes, Your Honor.

11      THE COURT:  Why do you need Bracamontes all

12  of a sudden, which is somebody we've really not heard

13  too much about at all?

14      MR. HARTZOG:  Well, Your Honor, we did

15  disclose in our supplemental pretrial disclosures back

16  in -- I believe it was March of 2022 that we intended to

17  call an authenticating witness for that information from

18  Cybergenetics.  We didn't know the name of the

19  individual we were going to call, but we identified an

20  authenticating witness to authenticate that report.

21  Jennifer Bracamontes is the one we have identified to be

22  that witness.  So plaintiff's counsel has been aware

23  that we're going to call an authenticating witness since

24  March of 2022.  And We supplemented our initial

25  disclosures to make that clear.

| | | |
|---|---|---|
| 00:04:16 | 1 | THE COURT: Why do you think at this point |
| 00:04:18 | 2 | in time you should be able to redesignate Meghan Clement |
| 00:04:26 | 3 | when the plaintiff has withdrawn Foran? |
| 00:04:32 | 4 | MR. HARTZOG: Well, Your Honor, so when we |
| 00:04:33 | 5 | originally designated expert witnesses, we were not |
| 00:04:37 | 6 | aware that any DNA evidence would be tested in this |
| 00:04:39 | 7 | case. It was not until plaintiff's counsel approached |
| 00:04:42 | 8 | us and said that they were intending to have Officer |
| 00:04:49 | 9 | Edwards's DNA tested, and if we didn't consent, they |
| 00:04:53 | 10 | were going to be filing a motion. |
| 00:04:54 | 11 | Officer Edwards said: I'd be happy to give |
| 00:04:57 | 12 | my DNA. And so we consented to the collection of his |
| 00:05:00 | 13 | DNA. |
| 00:05:01 | 14 | That was in December of '21, which is after |
| 00:05:04 | 15 | we had already disclosed our expert witnesses. And so |
| 00:05:09 | 16 | by necessity we designated her as a rebuttal expert |
| 00:05:12 | 17 | because our disclosure deadline had already passed. |
| 00:05:17 | 18 | But it was because this concept of testing Officer |
| 00:05:22 | 19 | Edwards's DNA had not come up until December of 2021. |
| 00:05:27 | 20 | So we designated Meghan Clement as our rebuttal expert |
| 00:05:32 | 21 | in December of '21, provided a report, and then provided |
| 00:05:35 | 22 | a supplemental report in March of 2022. And in that |
| 00:05:38 | 23 | report she laid out all her opinions in the case. |
| 00:05:42 | 24 | And plaintiff's counsel indicated that if |
| 00:05:45 | 25 | her opinions were what was in the report, they didn't |

00:05:48  1  feel the need to depose her.

00:05:50  2          It wasn't until later on that we realized

00:05:53  3  that if Dr. Foran were withdrawn, that we might have an

00:05:59  4  issue with her being a rebuttal expert. We approached

00:06:03  5  plaintiff's counsel and said: Can we reach compromise

00:06:06  6  on that, and we'll withdraw our motion on Foran if we

00:06:09  7  can move Meghan Clement up to a case in chief expert.

00:06:14  8          Plaintiff's counsel did not agree with that

00:06:16  9  proposal. And after we had proposed that is when they

00:06:19  10  withdrew Dr. Foran, I think for the purpose of excluding

00:06:24  11  Meghan Clement.

00:06:27  12          We then filed our motion to redesignate her

00:06:31  13  as soon as we were able to do that. We had some comings

00:06:34  14  and going with our firm with an associate leaving and

00:06:37  15  Ms. Posey coming in. So I agree, maybe we should have

00:06:40  16  filed that motion earlier, but we filed it as soon as we

00:06:43  17  were able. Plaintiff's counsel was aware that we were

00:06:45  18  going to be filing that motion. But the main reason,

00:06:49  19  Your Honor, is that the DNA evidence is a crucial piece

00:06:53  20  of evidence in this case. The plaintiff's theory all

00:06:55  21  along has been that Officer Edwards planted the knife on

00:07:04  22  Soheil Mojarrad -- I've been saying Soheil. I'm going

00:07:08  23  to have to correct myself. Soheil Mojarrad.

00:07:11  24          The DNA evidence, we believe, shows that

00:07:14  25  Officer Edwards never touched the knife and was the only

00:07:16 1 one with the opportunity to have planted the knife,

00:07:19 2 because the next individual on the scene was Officer

00:07:22 3 Thompson, who had his body camera on. And as he walked

00:07:26 4 up to Mr. Mojarrad, the knife was in his hand at that

00:07:30 5 time. So if the DNA evidence excludes Officer Edwards

00:07:33 6 as a contributor to that knife, and there was two other

00:07:37 7 individuals who had touched the knife whose DNA were on

00:07:41 8 the knife, I believe that is pretty compelling evidence

00:07:45 9 for the jury that Officer Edwards did not, in fact,

00:07:49 10 plant the knife.

00:07:49 11 And that's a key piece of evidence in this

00:07:51 12 case. It is, in fact, really the issue of the entire

00:07:55 13 case, is: Did Mr. Mojarrad have a knife on him at the

00:07:59 14 time? And I just think this trial should be about truth

00:08:04 15 of what happened. And fundamental fairness should

00:08:08 16 allow us to present that evidence to the jury.

00:08:11 17 If Officer Edwards didn't touch the knife,

00:08:13 18 he should be allowed to tell the jury that.

00:08:16 19 We've had Ms. Clement designated as an

00:08:20 20 expert in this case since December of '21. So this is

00:08:23 21 not someone that we've just sprung on plaintiff's

00:08:25 22 counsel at the last minute. She was on our disclosure

00:08:29 23 list; she was on our pretrial list. It wasn't until

00:08:32 24 plaintiff withdraw Dr. Foran that this became an issue.

00:08:36 25 And again, they only withdrew Dr. Foran

00:08:40   1   after we said we may redesignate Meghan Clement because

00:08:44   2   we realize that that could be an issue.

00:08:47   3            THE COURT:  So when was that conversation or

00:08:51   4   dialogue?

00:08:52   5            MR. HARTZOG:  That was, I believe, December

00:08:57   6   of 2022.

00:09:00   7            MS. BEIGHTOL: Your Honor, I believe the

00:09:01   8   conversation about the proposal was on November 21,

00:09:05   9   2022.

00:09:07  10            Our withdrawal of Dr. Foran was December 7,

00:09:11  11   2022.

00:09:12  12            MR. HARTZOG:  That's correct, Your Honor.

00:09:13  13   Those dates are correct.

00:09:15  14            THE COURT:  So when you said to me a few

00:09:17  15   minutes ago plaintiff was aware that we were going to

00:09:19  16   file that motion, you are speaking of November 21st?

00:09:25  17            MR. HARTZOG:  That's correct, Your Honor.

00:09:27  18   We indicated that that was our proposal, that we were

00:09:29  19   intending to possibly redesignate Ms. Clement as a case

00:09:33  20   in chief expert because we realized the issue with Dr.

00:09:36  21   Foran, and it was after that, December 7th, that

00:09:39  22   plaintiff withdraw Dr. Foran.

00:09:41  23            THE COURT:  And remind me when this motion

00:09:43  24   was filed.

00:09:44  25            MR. HARTZOG:  The motion was filed in

| | | |
|---|---|---|
| 00:09:52 | 1 | January.   And I'm trying to find the exact date. |
| 00:09:57 | 2 | January 20th, Your Honor. |
| 00:10:02 | 3 | THE COURT:  Okay.  Is there anybody else |
| 00:10:08 | 4 | reasonably that plaintiff's motion to exclude expert |
| 00:10:15 | 5 | testimony in the field of forensic biology and forensic |
| 00:10:19 | 6 | DNA might reasonably reach to on your side of the case? |
| 00:10:25 | 7 | MR. HARTZOG:  Meghan Clement is the only one |
| 00:10:27 | 8 | we had designated as an expert in that field. |
| 00:10:31 | 9 | Jennifer Bracamontes, again, we identified |
| 00:10:33 | 10 | as -- not by name, but as someone from Cybergenetics to |
| 00:10:38 | 11 | authenticate the report in March of 2022. |
| 00:10:40 | 12 | THE COURT:  So there's nobody else? |
| 00:10:43 | 13 | There's no other expert? |
| 00:10:44 | 14 | MR. HARTZOG:  That's correct, Your Honor. |
| 00:10:45 | 15 | I don't believe so. |
| 00:10:47 | 16 | THE COURT:  All right.  So why should the |
| 00:10:52 | 17 | Court, just without regard to late disclosures, what is |
| 00:10:56 | 18 | the basis for the motion to exclude? |
| 00:11:01 | 19 | MS. BEIGHTOL: It's actually a couple |
| 00:11:03 | 20 | different reasons, Your Honor.  And if I may, I gave |
| 00:11:05 | 21 | you the date November 21 as the date that the proposal |
| 00:11:09 | 22 | was made.  But the more important date, as my |
| 00:11:14 | 23 | co-counsel just referenced, is actually the date they |
| 00:11:17 | 24 | filed to move to exclude Dr. Foran, which was back in |
| 00:11:20 | 25 | April.  Ms. Clement has been identified as a rebuttal |

00:11:27　1　expert since December of 2021.　And you just heard from

00:11:35　2　Mr. Hartzog that as far back as the beginning of the

00:11:39　3　case it's always been the theory that Mr. Edwards or

00:11:47　4　Officer Edwards had planted the knife.　At that time

00:11:49　5　when they identified her as a rebuttal expert they could

00:11:52　6　have moved for her to be a case in chief, but they

00:11:55　7　didn't.

00:11:57　8　　　　　And then moving forward, up to now, each

00:12:00　9　step they've made is to not put her in place or to move

00:12:03　10　to have her case in chief.　They have twice, as Your

00:12:07　11　Honor will recall, moved to exclude Dr. Foran.

00:12:11　12　　　　　And the case law is that a rebuttal expert

00:12:13　13　is a rebuttal expert.　They are there to rebut evidence

00:12:17　14　from the other side.　And if you look at the

00:12:19　15　designation of Ms. Clement, it actually says that her

00:12:23　16　only role is to rebut evidence of Dr. Foran.　So our

00:12:28　17　basis in our motions in limine, which we did only having

00:12:32　18　the pretrial disclosures which listed Ms. Clement, which

00:12:35　19　was a surprise to us, because no motion had been made

00:12:38　20　before that time, no motion had been made since December

00:12:41　21　7, because she was effectively excluded at the time that

00:12:46　22　Dr. Foran was withdrawn.

00:12:50　23　　　　　This new motion came over a month later.

00:12:53　24　It came after pretrial disclosures.　And, you know, at

00:12:58　25　this point they've mentioned that they knew all along

00:13:01   1   that this was an allegation the knife was planted.

00:13:05   2   More than that, at the very first answer of the

00:13:07   3   complaint of the original complaint in this case they

00:13:12   4   alleged that Mr. Mojarrad or Soheil had gone against

00:13:17   5   Edwards with a knife.  At the very, very beginning.

00:13:21   6   So if there was an allegation with regard to the knife,

00:13:24   7   and DNA was necessary of the knife, that was known at

00:13:27   8   the outset.  But certainly it was known in December when

00:13:30   9   they designated Ms. Clement.

00:13:34  10         If you look at the declaration and the

00:13:36  11   designation and her report, all of it is rebutting Dr.

00:13:42  12   Foran.  All of it.  It's not like the paragraphs are

00:13:45  13   talking about separate independent things.  They're

00:13:47  14   going against the expert, Dr. Foran.

00:13:50  15         So they didn't identify somebody.  Then

00:13:52  16   when they kept going down the road, they tried to

00:13:54  17   exclude Dr. Foran without trying to designate her in the

00:13:58  18   case in chief.  And when we finally withdrew him after

00:14:01  19   declining to make an agreement to have her go in the

00:14:03  20   case in chief, it was over a month before they moved the

00:14:07  21   Court and well after pretrial disclosures for her to be

00:14:11  22   redesignated as a case in chief.

00:14:14  23         And this puts plaintiff in a very bad

00:14:16  24   position and is super prejudicial because we don't have

00:14:19  25   the opportunity to depose her.  We didn't depose her in

00:14:22  1   our initial case, and the reason we didn't depose her in

00:14:25  2   our initial case is she was a rebuttal expert; she was a

00:14:28  3   very limited rebuttal expert against our expert.  Now

00:14:31  4   we're put in the position of being at the pretrial

00:14:33  5   conference with her being put in the case in chief,

00:14:38  6   according to what they're asking.  And if that's the

00:14:40  7   case, we're going to be forced to do a discovery

00:14:43  8   deposition at trial.  We don't have the opportunity to

00:14:45  9   put an expert in the case.  And, in fact, we relied on

00:14:48  10  the fact that they had moved to remove our expert in

00:14:52  11  withdrawing Dr. Foran, which would effectively withdraw

00:14:55  12  all of the DNA expert witnesses in this case.  And so

00:15:01  13  if this motion is granted, then we've relied on that,

00:15:04  14  and we don't have Dr. Foran in the case.

00:15:07  15          THE COURT:  And this is all within my

00:15:09  16  discretion?

00:15:11  17          MS. BEIGHTOL: Correct, Your Honor.

00:15:21  18          THE COURT:  Well, I, in my discretion, am

00:15:24  19  denying the defendant's motion to redesignate Meghan

00:15:27  20  Clement as a case in chief expert witness.  And I'll

00:15:31  21  enter a written order later.

00:15:38  22          MR. HARTZOG:  Your Honor, may I ask one

00:15:40  23  question?  Would Ms. Clement be allowed to be a

00:15:44  24  rebuttal witness for some of the other evidence that

00:15:47  25  they have in the case, namely the issue of Mr. Mojarrad

00:15:53  1  not having a knife?  Because I think she does rebut

00:15:56  2  that evidence as well.

00:15:59  3          And just a little bit of background.  When

00:16:02  4  we first were looking at the DNA evidence in the case,

00:16:05  5  the SBI had determined that the DNA was inconclusive.

00:16:09  6  So at the outset of the case we were not aware that

00:16:12  7  there was any additional DNA testing that could be done.

00:16:15  8  And so that's why we did not have a DNA expert at the

00:16:19  9  outset, because we weren't aware there was even this

00:16:22  10  process.  So we learned that after our expert

00:16:26  11  disclosures were due.

00:16:28  12          THE COURT:  So that really renews

00:16:30  13  plaintiff's motion to exclude this testimony?

00:16:34  14          MR. HARTZOG:  I suppose so, Your Honor.

00:16:38  15          THE COURT:  What says the plaintiff?

00:16:40  16          MS. BEIGHTOL: It's the same issue for us,

00:16:42  17  Your Honor.  He found out about this DNA evidence a

00:16:45  18  long time ago.  We're at the eve of trial.  He actually

00:16:48  19  actively moved to exclude Dr. Foran twice, who was our

00:16:52  20  expert speaking on these issues.  I mean, putting this

00:16:56  21  on us right now when this was -- I understand that we

00:17:00  22  withdrew Dr. Foran on December 7.  But that was after

00:17:04  23  two motions trying to exclude him.  He has actively

00:17:09  24  tried to get the DNA evidence out of this case through

00:17:11  25  our expert.  And now that he has, he's asking to have

00:17:15 1 someone come in on his behalf and speak on it. And

00:17:18 2 that puts us in a very prejudicial position at this

00:17:21 3 point, especially when they knew about the DNA test long

00:17:25 4 before now, at least before December 2021 when they

00:17:29 5 designated Ms. Clement in the first place.

00:17:31 6 Again, she was not designated. The

00:17:33 7 designation for her does not say she's going to speak on

00:17:36 8 all these issues. It says specifically and explicitly

00:17:40 9 that she is going to rebut Dr. Foran.

00:17:44 10 THE COURT: Do you want to be heard further?

00:17:46 11 MR. HARTZOG: Yes, Your Honor. If you look

00:17:47 12 at Meghan Clement's report, it does not only rebut Dr.

00:17:51 13 Foran; it also provides the affirmative opinion that

00:17:55 14 Officer Edwards, based on the DNA testing, can be

00:17:57 15 excluded as a DNA contributor to the knife. That

00:18:01 16 directly rebuts testimony of other witnesses that

00:18:05 17 Officer Edwards -- that Soheil did not have a knife,

00:18:10 18 because the only way the knife could have been put in

00:18:13 19 his hand is Officer Edwards. So she provides direct

00:18:17 20 rebuttal to their witness testimony that Soheil was --

00:18:23 21 THE COURT: So what part of that report are

00:18:24 22 you specifically referring me to? Can you give me a

00:18:31 23 paragraph number?

00:18:32 24 MR. HARTZOG: Yes, Your Honor. If you look

00:18:32 25 at the supplemental reports of Meghan Clement, paragraph

00:18:36　1　13.　The supplemental, because that's when the DNA

00:18:39　2　testing came back.　She says, "It is my opinion that,

00:18:42　3　due to the below stochastic level DNA obtained from the

00:18:45　4　knife swabbing, as well as the peaks below the

00:18:48　5　reportable" --

00:18:50　6　　　　　　THE COURT:　Let's just slow down.　Can you

00:18:53　7　remind me what docket number that supplemental report

00:18:57　8　is?　And I would like to just take a look at it.

00:19:01　9　　　　　　MR. HARTZOG:　Yes, Your Honor.　I'm not

00:19:04　10　familiar with the docket number, but I believe we

00:19:07　11　attached it to our motion to redesignate.

00:19:11　12　　　　　　THE COURT:　Okay.　I popped on first report,

00:19:14　13　and every paragraph talks about Dr. Foran, basically.

00:19:20　14　So I certainly wanted to review the report that you were

00:19:23　15　making reference to that did far more than that again.

00:19:31　16　So let me just see if I have the paper in front of me.

00:19:36　17　If not, if my law clerk -- do you have that right in

00:19:39　18　front of you, Catie?

00:19:45　19　　　　　　We don't seem to be able to find it quickly.

00:19:48　20　Could you help me out?

00:19:50　21　　　　　　MR. HARTZOG:　Yes, Your Honor.　Give me one

00:19:53　22　second.　I will try to find it.

00:20:02　23　　　　　　MS. BEIGHTOL: Are you talking about the

00:20:04　24　designation?

00:20:05　25　　　　　　MR. HARTZOG:　The supplemental report.

00:20:07  1          I believe it was attached to the declaration

00:20:10  2  of Meghan Clement, which would be --

00:20:13  3          MS. BEIGHTOL: The declaration is 101-15, if

00:20:18  4  that helps.   Docket 101-15.

00:20:22  5          THE COURT:  101-15?

00:20:25  6          MS. BEIGHTOL: Yes, Your Honor.

00:20:26  7          MR. HARTZOG:  Specifically, Your Honor,

00:20:27  8  paragraph 17 of that supplemental report is the opinion

00:20:33  9  that we believe the jury should be allowed to hear,

00:20:37  10  which is that the assessment revealed --

00:20:39  11          THE COURT:  Let's just take a pause and let

00:20:42  12  me look at this for a moment.

00:20:44  13          MR. HARTZOG:  Sure.

00:22:04  14          THE COURT:  Okay.  I'm sorry.  I thought you

00:22:06  15  said paragraph 17.   And what I've been pointed to,

00:22:10  16  101-15, ends at paragraph 14.

00:22:17  17          MS. BEIGHTOL: I believe that's the

00:22:18  18  declaration.

00:22:19  19          MR. HARTZOG:  It's an attachment to the

00:22:21  20  declaration, Your Honor.

00:22:22  21          THE COURT: An attachment.   Okay.

00:22:25  22          MR. HARTZOG:  Is what I'm currently looking

00:22:27  23  at.   It may be in her statement as well.   Let me pull

00:22:31  24  that up.   I believe it's Exhibit C to that declaration.

00:22:41  25          THE COURT:  Let me look at that then.

00:24:15 1    I think it's a backdoor effort to run around

00:24:22 2 the Court's earlier ruling where the thrust of this is

00:24:26 3 still a response to Dr. Foran, albeit paragraph 17 does

00:24:36 4 not reference him, the thread throughout this is this

00:24:44 5 expert's disagreement with the opinions of Foran.

00:24:51 6    MR. HARTZOG:  Your Honor, if we limit Ms.

00:24:53 7 Clement's testimony to only that paragraph, that's all

00:24:58 8 we're seeking is that she be allowed to rebut the

00:25:01 9 evidence that Officer Edwards planted the knife.

00:25:08 10    THE COURT:  All right.  But we get back to

00:25:13 11 plaintiff's motion.  Do you want to be heard further?

00:25:18 12    MS. BEIGHTOL: Yes, Your Honor.  I'd like to

00:25:20 13 be heard on that issue.  And if we haven't closed the

00:25:22 14 issue of Bracamontes, I'd like to speak to that as well.

00:25:25 15    THE COURT:  I don't think we have to get to

00:25:27 16 Bracamontes if Clement doesn't come.  Is that a fair

00:25:31 17 statement?

00:25:32 18    MR. HARTZOG:  Your Honor, I believe

00:25:33 19 Bracamontes could testify just to authenticate the

00:25:40 20 TrueAlleele reports.  Ms. Clement would provide

00:25:43 21 additional explanation.  But I believe the report

00:25:45 22 speaks for itself and should be submitted to the jury as

00:25:48 23 a business record through authentication by Ms.

00:25:53 24 Bracamontes.  So even if we're unable to have an expert

00:25:56 25 testify as to some specifics of what that report means,

00:26:00  1    I believe the report itself should be presented to the

00:26:04  2    jury through Ms. Bracamontes.

00:26:06  3                    THE COURT:  Okay.

00:26:07  4                    MS. BEIGHTOL: As it relates to Clement,

00:26:10  5    which I understand we're still on at the moment --

00:26:14  6                    THE COURT:  Then we can go to Bracamontes

00:26:15  7    and the admission of this report, which I assume your

00:26:18  8    motion seeks to exclude.

00:26:21  9                    MS. BEIGHTOL:  Yes.  We seek to exclude the

00:26:23  10   report of Bracamontes and Clement and Bracamontes's

00:26:29  11   declaration, which every single paragraph actually

00:26:32  12   rebuts Dr. Foran's opinions and seeks to present expert

00:26:37  13   opinions in connection with summary judgment.  That's

00:26:40  14   the Bracamontes issue.

00:26:41  15                    As it relates to Clement, Your Honor, we

00:26:44  16   agree with the Court that it appears to be a backdoor

00:26:46  17   way of getting expert testimony in, the same expert

00:26:51  18   testimony that they've known -- to rebut Dr. Foran, who

00:26:55  19   was, as my co-counsel just reminded me, identified

00:26:59  20   before the disclosure deadline and in enough time for

00:27:02  21   Clement to have been identified or some other expert in

00:27:05  22   the case in chief.

00:27:07  23                    If that testimony was sought to be entered

00:27:09  24   in their case in chief, this request should have been

00:27:12  25   long ago.

| | | |
|---|---|---|
| 00:27:14 | 1 | Moreover, and probably more important as it |
| 00:27:17 | 2 | relates to the specific issue we're talking about, we |
| 00:27:20 | 3 | don't know if there were gloves on and whether there |
| 00:27:23 | 4 | would be fingerprints or not. It's not determinative |
| 00:27:26 | 5 | of that issue anyway. |
| 00:27:28 | 6 | But as it relates to Dr. Foran -- |
| 00:27:32 | 7 | THE COURT: Let me just make sure I |
| 00:27:33 | 8 | understand the full import of your statement. We don't |
| 00:27:36 | 9 | know if gloves were on. Do you want to expand on that? |
| 00:27:41 | 10 | MS. BEIGHTOL: Sure. There are two |
| 00:27:42 | 11 | witnesses that are uninvolved that witnessed this that |
| 00:27:47 | 12 | were able to see whether or not something was in the |
| 00:27:49 | 13 | hands of Soheil. Both testified that there wasn't |
| 00:27:53 | 14 | anything in the hands. |
| 00:27:56 | 15 | Defendant Edwards says that Soheil had a |
| 00:27:59 | 16 | knife during the incident. |
| 00:28:01 | 17 | So there is conflicting fact testimony. |
| 00:28:03 | 18 | We do not have a video because the body |
| 00:28:05 | 19 | camera wasn't turned on by defendant Edwards. |
| 00:28:08 | 20 | THE COURT: Who would be wearing the gloves? |
| 00:28:10 | 21 | MS. BEIGHTOL: In other words, if it was |
| 00:28:11 | 22 | planted, if the knife was planted, if there is no |
| 00:28:14 | 23 | fingerprint on the knife, then it could be because |
| 00:28:19 | 24 | someone was wearing gloves and planted it. So, in |
| 00:28:22 | 25 | other words, it goes -- it isn't determinative of the |

00:28:25 1 issue one way or the other whether there is fingerprint

00:28:28 2 evidence on the knife.

00:28:29 3          It would be as relates to Soheil, but I

00:28:33 4 don't think anyone here disputes that there is a

00:28:34 5 photograph of Soheil with the knife in his hand, and

00:28:38 6 certainly fingerprints could have been transferred from

00:28:40 7 that -- I'm sorry; I mean DNA from that.

00:28:47 8          THE COURT:  Okay.

00:28:48 9          MR. HARTZOG:  Your Honor, this is the first

00:28:49 10 time I've ever heard the word "glove" in this case.

00:28:52 11 That has not been in evidence, it has not come up.  You

00:28:55 12 can see on the video when he exits his vehicle he's not

00:28:58 13 wearing gloves.  You can see his hands in the video.

00:29:01 14          And again, for Ms. Bracamontes, she is

00:29:05 15 only -- we're only intending to call her as an

00:29:09 16 authenticating witness, as we identify in our Rule 26

00:29:12 17 disclosures, well within the time that we had to do

00:29:15 18 that.  So we're only asking that she be allowed to come

00:29:19 19 in and authenticate a document.  And we identified her

00:29:23 20 as a witness to do that.  I believe the document speaks

00:29:26 21 for itself.

00:29:26 22          I would like to have some explanation from

00:29:31 23 Ms. Clement, but if the Court will not allow us to do

00:29:36 24 that, I think at the very least we should be allowed to

00:29:39 25 present the document itself and let the jury give it the

00:29:44  1   weight that they believe it's due.  She should be

00:29:48  2   allowed to come authenticate that testimony.

00:29:50  3                 And again, as you just heard, their theory

00:29:53  4   of this planting of the knife, Ms. Clement is rebutting

00:29:57  5   that.  She provides rebuttal evidence that:  No, in

00:30:02  6   fact, Officer Edwards didn't plant the knife because his

00:30:05  7   DNA is not on the knife.

00:30:06  8                 THE COURT:  But for some reason the

00:30:08  9   defendant denominated Clement a rebuttal witness and

00:30:14  10  focused Clement on examining the opinions of Foran.

00:30:22  11                MR. HARTZOG:  Your Honor, we did that in

00:30:23  12  part because of -- she was designated as a rebuttal in

00:30:27  13  part because of the timing of when we knew that we would

00:30:30  14  actually be doing DNA testing, which was after we had

00:30:33  15  disclosed our experts in the case.  And so by virtue of

00:30:37  16  timing alone, we believed we needed to designate her as

00:30:40  17  a rebuttal expert.

00:30:41  18                Her opinions, as Your Honor just read

00:30:43  19  through her statement, while many of them are focused on

00:30:47  20  Dr. Foran, they are not exclusively focused on Dr.

00:30:50  21  Foran.  They also focus on the evidence itself of

00:30:52  22  whether Officer Edwards's DNA was present on the knife.

00:30:56  23  And two other individuals were present on the knife.

00:31:01  24                THE COURT:  It would just seem that much,

00:31:02  25  much earlier you could have done what you seek to do

00:31:08   1   now.

00:31:09   2           MR. HARTZOG:  And I don't disagree with

00:31:11   3   that, Your Honor.   But I think -- and I understand it's

00:31:14   4   the discretion of the Court, but I think this evidence

00:31:16   5   is so important to the case and so important that the

00:31:19   6   jury hear that we respectfully request that the Court

00:31:23   7   allow us to redesignate her, or to call -- I'm sorry,

00:31:28   8   not to redesignate, but to call her as a rebuttal to

00:31:31   9   plaintiff's evidence that Officer Edwards planted the

00:31:33   10  knife.   Because I think she rebuts that.   And that is

00:31:36   11  contained in her report, the rebuttal evidence that we

00:31:39   12  intend to present on that issue.

00:31:42   13          THE COURT:  Okay.  Did you want to say

00:31:45   14  anything else?

00:31:46   15          MS. BEIGHTOL: I do.   And I hate to belabor

00:31:48   16  this point.   If it was so important, it should have

00:31:51   17  been -- a motion to designate her in the case in chief

00:31:59   18  untimely way back in December 2021.  This is not so

00:32:04   19  important -- it may be so important because trial is

00:32:06   20  coming up, but these facts have been known for a long

00:32:09   21  time.

00:32:11   22          More importantly, we're not saying we're

00:32:13   23  arguing a glove.   That's not the point.   The point is

00:32:16   24  that he's trying to backdoor expert testimony in to

00:32:19   25  rebut now eyewitness testimony, which is not what his

00:32:25 1 designation of expert witnesses -- which, by the way,

00:32:28 2 was not by the time of the expert witness deadline and

00:32:31 3 could have been -- says.  That actually specifically

00:32:35 4 says that she's being designated to, and I quote, and

00:32:39 5 this is all it says in the designation, "to offer

00:32:43 6 rebuttal testimony to the opinions of David R. Foran,

00:32:47 7 Ph.D."  It does not talk about other witnesses.  It

00:32:51 8 doesn't talk about anything else.

00:32:54 9         And following that, Defendant Edwards twice

00:32:58 10 in two separate motion, the second one after permission

00:33:01 11 from the Court, moved to exclude Dr. Foran, the very

00:33:04 12 person that she was identified to rebut.

00:33:08 13         It puts us, the plaintiff, in a very

00:33:10 14 precarious and prejudicial position.

00:33:13 15         THE COURT:  What's your argument about

00:33:15 16 introduction of the underlying report?

00:33:18 17         MS. BEIGHTOL: As far as the underlying

00:33:20 18 report, are you meaning the report of Ms. Clement, the

00:33:26 19 supplemental report?

00:33:27 20         THE COURT:  No, the Cybergenetics report.

00:33:32 21         MS. BEIGHTOL: I mean, Bracamontes signed

00:33:34 22 that report, was one of those signators on that report.

00:33:39 23 She was known as soon as that report came out.  Her

00:33:42 24 name has never been identified in this case until --

00:33:46 25         THE COURT:  But just as the custodian.  It's

| | | |
|---|---|---|
| 00:33:49 | 1 | a business record, he says. He's not going to ask her |
| 00:33:52 | 2 | any questions; the report speaks for itself; It should |
| 00:33:55 | 3 | come in. I mean, I'm kind of paraphrasing the |
| 00:33:58 | 4 | defendant's -- is that a fair paraphrasing? |
| 00:34:03 | 5 | MR. HARTZOG: Fair characterization. |
| 00:34:05 | 6 | MS. BEIGHTOL: The problem with the report is |
| 00:34:07 | 7 | two-fold, and Bracamontes as the witness to authenticate |
| 00:34:09 | 8 | it. Bracamontes's affidavit in this case or |
| 00:34:12 | 9 | declaration in this case is point by point, it's pages |
| 00:34:15 | 10 | long. I can find the cite to it if you'd like to look |
| 00:34:18 | 11 | at it. Every single paragraph talks about her opinions |
| 00:34:21 | 12 | against Dr. Foran, even giving legal opinions about |
| 00:34:26 | 13 | whether his testimony should be excluded. This is not |
| 00:34:29 | 14 | a witness -- if she goes before the jury and there is |
| 00:34:33 | 15 | any hint of that, she is not just authenticating, she is |
| 00:34:37 | 16 | giving expert witness testimony. |
| 00:34:39 | 17 | THE COURT: But I can control that. I'm |
| 00:34:40 | 18 | the judge. So what if the judge controlled that, and |
| 00:34:46 | 19 | it just came in through her? |
| 00:34:48 | 20 | MS. BEIGHTOL: The next problem becomes |
| 00:34:50 | 21 | you're now entering a DNA analysis in front of the jury |
| 00:34:57 | 22 | without plaintiff having the opportunity to have a |
| 00:35:01 | 23 | witness to talk about it, nor defense. Because again, |
| 00:35:06 | 24 | this is a problem of Defendant Edwards's making. We |
| 00:35:11 | 25 | identified in our case in chief a DNA expert. He |

00:35:14  1  sought to exclude him and only identified someone to

00:35:17  2  rebut him.  Now in the place where a report comes in

00:35:20  3  that is not explained before the jury, it becomes a

00:35:22  4  waste of time and could absolutely confuse and mislead

00:35:25  5  the jury and, in fact, likely will because it's

00:35:28  6  something -- if you want to look at, Your Honor, I'm

00:35:30  7  sure Defendant Edwards can give you the cite.  It's one

00:35:33  8  that he's identified.  But it is pages and pages of

00:35:36  9  complex DNA information.

00:35:38  10          THE COURT:  Let me look at it.  What's the

00:35:41  11  docket number, Mr. Hartzog?

00:35:58  12          MR. HARTZOG:  I believe it is DE 164-5, DE

00:36:04  13  164-5.

00:37:27  14          THE COURT:  Well, let's just let me enter a

00:37:33  15  ruling that's not very challenging.  A great deal of

00:37:37  16  this report has to do with what other courts have done,

00:37:43  17  beginning on page 6 of 22.  And a laundry list of

00:37:55  18  different court cases are listed.

00:37:58  19          MR. HARTZOG:  And we are not even seeking

00:38:00  20  entry of that portion of the report, Your Honor.

00:38:02  21          THE COURT:  So I would certainly exclude

00:38:03  22  pages up to and through page 13.  And I don't think we

00:38:18  23  need her curriculum vitae, which would be the pages that

00:38:25  24  follow, about what classes she's taught and so forth, if

00:38:32  25  she's being used only in the way that alternatively

00:38:37 1 defendant would now seek to use her.

00:38:41 2      So now what we're really talking about, if

00:38:45 3 I'm remembering where I started, was everything ahead of

00:38:48 4 page 6. Let's go up and look at that.

00:38:58 5      MR. HARTZOG: Pages 1 through 5, Your Honor.

00:39:01 6      THE COURT: All right.

00:39:04 7      MS. BEIGHTOL: Your Honor, I just want to be

00:39:05 8 sure, because I don't have it in front of me. Are we

00:39:07 9 looking at the TrueAllele report, or are we looking at

00:39:11 10 her declaration?

00:39:13 11      MR. HARTZOG: The Cybergenetics report, DE

00:39:16 12 164-5.

00:39:19 13      THE COURT: And now the request has been

00:39:20 14 clarified to just be pages 1 through 5, the actual

00:39:25 15 report itself.

00:39:43 16      So the Bode Technology report that's

00:39:47 17 referenced on the first page of the Cybergenetics

00:39:53 18 report, if I turn through this pretrial order, would I

00:39:59 19 find that listed as a proposed exhibit?

00:40:01 20      MR. HARTZOG: Yes, Your Honor.

00:40:09 21      THE COURT: So who's coming in to testify

00:40:11 22 about the Bode Technology report?

00:40:13 23      MR. HARTZOG: Oh, I'm sorry. The Bode

00:40:16 24 Technology report? I'm sorry, Your Honor. Can you

00:40:24 25 point me to which portion you're talking about?

00:40:26  1          THE COURT:  The first page, the first bullet

00:40:28  2  under "Methods" in the Cybergenetics report.  It says,

00:40:33  3  "The DNA PowerPlex Fusion 6C data profiles referenced in

00:40:40  4  this report were previously developed and addressed in a

00:40:45  5  Laboratory Report issued by the North Carolina State

00:40:51  6  Crime Laboratory and a Forensic Case Report issued by

00:40:55  7  Bode Technology."

00:40:57  8          So I really should put an "S" when I asked

00:41:01  9  you if I turn the pages of this pretrial order, would I

00:41:05  10  see those two reports in your case in chief?

00:41:11  11          MR. HARTZOG:  Your Honor, I cannot recall if

00:41:12  12  we included that because those were the SBI reports that

00:41:16  13  were inconclusive.  So they don't really have value to

00:41:19  14  the case.  They may be listed, but I cannot recall if

00:41:27  15  we listed those.  Let me take a look.  I think we were

00:41:31  16  counting on only the Cybergenetics report, because

00:41:34  17  that's the only one that reached any conclusion.

00:41:37  18          THE COURT:  Counsel for plaintiff, were you

00:41:39  19  proposing to introduce either the North Carolina State

00:41:41  20  Crime Laboratory Report or the Forensic Case Report

00:41:47  21  issued by Bode Technology?

00:41:49  22          MS. BEIGHTOL: No, Your Honor.

00:42:03  23          THE COURT:  That would be a question I would

00:42:04  24  have if I was sitting on a jury in a case where I was

00:42:07  25  presented with these five pages.  I would wonder where

00:42:16  1   those two reports are.  I would sit there and speculate

00:42:19  2   as to what they said.  And that's not the way a jury

00:42:23  3   should make a decision.

00:42:30  4          MR. HARTZOG:  Your Honor, I would suggest we

00:42:32  5   do have Elizabeth Patel designated as a witness from the

00:42:39  6   Crime Lab who could speak to that report without

00:42:42  7   introducing it because, again, they determined that

00:42:44  8   there was not enough data to make a conclusion.  So

00:42:47  9   Elizabeth Patel has been listed as a witness in this

00:42:50  10  case.  She is from the State Crime Lab and could speak

00:42:54  11  to that.

00:42:55  12         Or in the alternative, Your Honor, we could

00:42:57  13  redact that portion of the report.

00:42:59  14         But I think Elizabeth Patel could speak to

00:43:02  15  that and say:  We did this testing through Bode

00:43:04  16  Technology and were unable to reach any conclusions.

00:43:08  17  So Elizabeth Patel, I believe, could clarify that piece.

00:43:15  18         THE COURT:  She works for State of North

00:43:17  19  Carolina?

00:43:17  20         MR. HARTZOG:  She works for the State Crime

00:43:19  21  Lab who did the testing.

00:43:20  22         THE COURT:  So she wouldn't have done the

00:43:21  23  Bode Technology Forensic Case Report, because wasn't

00:43:25  24  that outsourced?

00:43:27  25         MR. HARTZOG:  It was outsourced by the State

00:43:30  1   Crime Lab.   I think they just used that laboratory

00:43:31  2   testing.   But it was done through the State Crime Lab.

00:43:35  3   So she would be the person who could speak to that

00:43:39  4   process and that report.

00:43:46  5              MS. EDWARDS:  Your Honor, if I may.  I'm

00:43:48  6   sorry, Mr. Hartzog, but I don't think that's correct.

00:43:50  7   I think the Bode Technology report was when Officer

00:43:55  8   Edwards's DNA was run by Bode Laboratories in Virginia,

00:44:01  9   not through the State Crime Lab.

00:44:03  10             MR. HARTZOG:  I apologize, Your Honor.   I

00:44:04  11  misspoke on that.  I apologize.

00:44:10  12             That's just the report where they collected

00:44:12  13  his DNA.  This is the running of the DNA.   So Officer

00:44:15  14  Edwards could speak to:  I submitted my DNA to this

00:44:18  15  laboratory that did testing.   All they did was collect

00:44:21  16  the DNA.   The Cybergenetics report is the testing of

00:44:24  17  the DNA.   So Officer Edwards would be able to clarify:

00:44:27  18  I submitted my DNA for testing, and Ms. Bracamontes

00:44:45  19  could testify that they tested the DNA that Officer

00:44:47  20  Edwards submitted.  And it actually says in the report

00:44:50  21  itself what was tested:  The knife, Officer Edwards's

00:44:54  22  DNA, and Mr. Mojarrad's DNA.   So I don't think there's

00:44:58  23  any risk of jury confusion for that because Officer

00:45:01  24  Edwards could testify to what he did as part of the

00:45:03  25  process and submitting his DNA.   The report speaks to

| | |
|---|---|
| 00:45:07 | 1 |
| 00:45:10 | 2 |

what was tested and what the results were.  They can be
authenticated by Ms. Bracamontes.

And again, Your Honor, this is an exhibit
that has long been identified in our case in chief.  It
was in our disclosure, in our initial disclosures, our
supplemental initial disclosures.  It was produced in
discovery long ago.  Plaintiff's counsel has known that
we were going to be using this report.  We've
identified an authenticating witness for it.  So
there's no issue of surprise or anything like that.  We
want the jury to know Officer Edwards was willing to
submit his DNA, did submit his DNA, and these are the
results of the analysis of it.  I think that's fair
game for the jury to hear, particularly where the
allegation is that he planted the knife in Mr.
Mojarrad's hand.

THE COURT:  But the State of North Carolina,
when it tested the knife --

MR. HARTZOG:  They used a different process
that is less -- in fact, they now use a process like
this TrueAllele.  And Ms. Patel is going to be able to
testify to that as well, that they now use this same
type of process in testing DNA.  So had they tested the
DNA today, they would be using this same test.  But
because it was tested back before they had this

00:46:40 1  capability, they used a different DNA test that is less

00:46:44 2  accurate.   This is the standard DNA process that they

00:46:49 3  now use.

00:46:49 4           THE COURT:  Ms. Patel, what's her capacity

00:46:52 5  at the lab?

00:46:59 6           MR. HARTZOG:  She does forensics, I believe,

00:47:00 7  at the State Crime Lab.   She is the one that was

00:47:03 8  involved -- she's assistant director of the North

00:47:06 9  Carolina laboratory.

00:47:16 10           THE COURT:  All right.   You listed her

00:47:21 11  properly in your case in chief?

00:47:23 12           MR. HARTZOG:  We did, Your Honor.   She's

00:47:27 13  been identified in our pretrial disclosure.  She's been

00:47:32 14  identified in initial disclosures.   Plaintiff's counsel

00:47:37 15  has long been aware of the SBI personnel and the State

00:47:43 16  Crime Lab who did this testing.   In fact, that's why

00:47:45 17  plaintiff's counsel requested additional testing is

00:47:48 18  because the SBI's -- or the State Crime Lab's testing

00:47:51 19  was inconclusive.

00:47:53 20           THE COURT:  Are you seeking to offer her as

00:47:55 21  an expert, as a fact witness, or both?

00:47:59 22           MR. HARTZOG:  As a fact witness, Your Honor.

00:48:08 23           THE COURT:  All right.

00:48:09 24           MR. HARTZOG:  Again, we believe the report

00:48:11 25  speaks for itself and doesn't need any expert testimony.

00:48:15  1  It's just a business record that we would like the jury

00:48:17  2  to be aware of.  And it's been listed since we had it

00:48:24  3  in our case in chief.

00:48:32  4           THE COURT:  Now, he says she's going to be a

00:48:36  5  fact witness, Ms. Patel.  So I don't see your motion to

00:48:39  6  exclude expert testimony in the field of forensic DNA to

00:48:44  7  reach her.

00:48:47  8           MS. BEIGHTOL: Well, if I may, Your Honor,

00:48:48  9  I'd like to take a step back and clarify something for

00:48:51  10  the record.  Ms. Patel cannot speak to factually or

00:48:55  11  otherwise the Bode report.  She had nothing to do with

00:48:59  12  the Bode report.  And though they might run reports

00:49:02  13  like that, they did not run the Bode report.  So the

00:49:05  14  Bode report is still a missing link in the document

00:49:09  15  they're seeking to enter, the Cybergenetics document.

00:49:13  16           And the discussion that we're having is

00:49:15  17  illustrative of the confusion and misleading of the jury

00:49:18  18  that we're concerned would happen if that report were

00:49:20  19  entered.  There are multiple parts to it.  It is

00:49:23  20  essentially being offered through Ms. Bracamontes, who I

00:49:28  21  encourage you to look at her declaration, because it is

00:49:32  22  explicitly and almost exclusively related to Dr. Foran.

00:49:36  23           THE COURT:  But, see, I'm the judge.  I'm

00:49:38  24  putting that to the side.  His plan B argument is: I

00:49:44  25  just want her to get that report in.  Okay.  So let's

| | | |
|---|---|---|
| 00:49:49 | 1 | accept that. And let's push the other stuff to the |
| 00:49:52 | 2 | side. |
| 00:49:53 | 3 | MS. BEIGHTOL: As it relates to the Bode, he |
| 00:49:56 | 4 | does not have a witness to talk about that, including |
| 00:49:59 | 5 | Defendant Edwards. |
| 00:50:01 | 6 | THE COURT: Does that go to the strength, |
| 00:50:08 | 7 | the weight of the evidence? Because the point you're |
| 00:50:10 | 8 | making is that if I let in the Cybergenetics report, the |
| 00:50:16 | 9 | first sentence makes reference to a report run by Bode |
| 00:50:21 | 10 | Technology, and that's not in evidence. |
| 00:50:24 | 11 | MS. BEIGHTOL: It's not in evidence. It |
| 00:50:25 | 12 | won't be explained to the jury, and it would be |
| 00:50:28 | 13 | confusing and misleading as a result. That was run |
| 00:50:31 | 14 | through plaintiff's counsel, and it's a report that -- |
| 00:50:36 | 15 | all of this is about what expert was in the case, which |
| 00:50:40 | 16 | is Dr. Foran, who has been sought to be withdrawn by |
| 00:50:43 | 17 | Defendant Edwards and then is effectively withdrawn now. |
| 00:50:47 | 18 | And so without that testimony to put the pieces |
| 00:50:50 | 19 | together, we're left with the fact witness that he's |
| 00:50:54 | 20 | referencing who can speak to crime laboratory stuff, |
| 00:50:58 | 21 | which is mentioned in that first sentence, but she can't |
| 00:51:02 | 22 | speak to that report. There's no one to speak to the |
| 00:51:04 | 23 | Bode report. |
| 00:51:05 | 24 | THE COURT: Can I interrupt and just ask a |
| 00:51:06 | 25 | question? |

| | | |
|---|---|---|
| 00:51:07 | 1 | MS. BEIGHTOL: Sure. |
| 00:51:07 | 2 | THE COURT:  Kind of following what you're |
| 00:51:09 | 3 | saying.  So the North Carolina State Crime Laboratory |
| 00:51:14 | 4 | at the time that it issued its Laboratory Report did not |
| 00:51:19 | 5 | have the Bode Technology Forensic Case Report; yes? |
| 00:51:25 | 6 | MS. BEIGHTOL: Yes. |
| 00:51:26 | 7 | THE COURT:  So the speculation would be in |
| 00:51:28 | 8 | part: How would the North Carolina State Crime |
| 00:51:34 | 9 | Laboratory's test have been influenced or not had it had |
| 00:51:38 | 10 | access to the Bode report?  Is that a concern of yours? |
| 00:51:44 | 11 | MS. BEIGHTOL: I think -- |
| 00:51:47 | 12 | MS. EDWARDS:  Your Honor, just for |
| 00:51:49 | 13 | clarification purposes, if it's helpful, the Bode |
| 00:51:54 | 14 | Technology report was the running of Officer Edwards's |
| 00:51:58 | 15 | DNA and the determination of what his DNA profile was. |
| 00:52:00 | 16 | THE COURT:  So the State didn't have his DNA |
| 00:52:02 | 17 | profile at the time it did its report? |
| 00:52:06 | 18 | MS. EDWARDS:  Correct, Your Honor. |
| 00:52:07 | 19 | THE COURT:  But Cybergenetics had it?  It |
| 00:52:11 | 20 | had Edwards's DNA? |
| 00:52:14 | 21 | MS. EDWARDS:  Correct, Your Honor.  And it |
| 00:52:15 | 22 | relied on the Bode Technology. |
| 00:52:18 | 23 | THE COURT:  So the State was just looking: |
| 00:52:20 | 24 | Is there anybody's DNA on this knife, right? |
| 00:52:22 | 25 | MS. EDWARDS:  Correct. |

|          |    |                                                             |
|----------|----|-------------------------------------------------------------|
| 00:52:23 | 1  | THE COURT:  So the Cybergenetics report is:                 |
| 00:52:25 | 2  | Can we exclude -- well, I guess:  Can we exclude            |
| 00:52:29 | 3  | Edwards?  Or:  Who's DNA is it between the two?  Or is      |
| 00:52:33 | 4  | it looking at everybody's DNA?  What's the                 |
| 00:52:38 | 5  | Cybergenetics focus?                                        |
| 00:52:40 | 6  | MR. HARTZOG:  What they do is they look at                  |
| 00:52:42 | 7  | everybody's DNA.                                            |
| 00:52:43 | 8  | THE COURT:  Just like the State did.                        |
| 00:52:45 | 9  | MR. HARTZOG:  Right.  But they specifically                 |
| 00:52:46 | 10 | tested against the DNA samples that they had from           |
| 00:52:51 | 11 | Officer Edwards and Mr. Mojarrad.                           |
| 00:52:54 | 12 | THE COURT:  So Soheil, the State didn't have                |
| 00:53:02 | 13 | Soheil's DNA?                                               |
| 00:53:04 | 14 | MS. EDWARDS:  The State did have Soheil's                   |
| 00:53:06 | 15 | DNA, Your Honor, yes.                                        |
| 00:53:09 | 16 | THE COURT:  But it just didn't have                         |
| 00:53:11 | 17 | Edwards's?                                                  |
| 00:53:12 | 18 | MS. EDWARDS:  Correct, Your Honor.                          |
| 00:53:17 | 19 | THE COURT:  Okay.  So I interrupted you.  We                |
| 00:53:28 | 20 | were on Ms. Patel.  It was kind of like:  She can't do      |
| 00:53:37 | 21 | this; she can't dot that.                                   |
| 00:53:39 | 22 | MS. BEIGHTOL: Correct.  As it relates to                    |
| 00:53:42 | 23 | Ms. Patel, we don't have a conflict with her being a       |
| 00:53:45 | 24 | fact witness about things about which she can speak,        |
| 00:53:48 | 25 | which is the crime lab report -- am I correct on that --   |

00:53:53  1   that she can talk about and authenticate.  It's the

00:53:57  2   Bode piece and the Cybergenetics piece that we have

00:54:02  3   concern with.

00:54:03  4           And if I'm following the train correctly --

00:54:06  5   which maybe I'm not, to be fair -- I think we got to Ms.

00:54:11  6   Patel because we were troubled by the paragraph in the

00:54:14  7   Cybergenetics report.  And this all goes back to the

00:54:19  8   Cybergenetics report all of this is attempting to rebut.

00:54:22  9           And our position is that that ship has

00:54:26  10  sailed with the withdrawal of Foran; that withdrew

00:54:31  11  Clement.

00:54:31  12          And you keep hearing, Your Honor, from Mr.

00:54:36  13  Edwards's counsel that this has been known about for a

00:54:39  14  long time.  That's exactly right.  And the Bode report

00:54:42  15  wasn't put on the exhibit list.  No one was identified

00:54:45  16  as an expert in the case in chief until this latest

00:54:48  17  attempt.  And I just don't think it's fair to put ten

00:54:51  18  individuals in the box and show them that without having

00:54:54  19  the people who can properly explain it.  And we don't

00:54:58  20  have those people.  That is evident.  We have no expert

00:55:02  21  witnesses to explain it.

00:55:04  22          And, I mean, I've got a law degree, and the

00:55:09  23  genetics stuff is really hard to understand.  And it's

00:55:12  24  not just a summary report that gets you there.

00:55:15  25          I am troubled.  I believe the Court has the

00:55:18  1   discretion and will be very careful with Bracamontes if

00:55:22  2   she comes in, but her report goes above and beyond what

00:55:29  3   is appropriate for her specialty, dances into the area

00:55:33  4   of legal allegations of what is and should not be

00:55:39  5   excluded.  And I think it's just really hard to put

00:55:42  6   that one page or five pages before the jury and ask them

00:55:45  7   to understand it.

00:55:50  8           And I think it's prejudicial because it will

00:55:52  9   confuse and mislead them.  It will waste time.  And I

00:55:55  10  think it's -- you know, especially in a situation where

00:55:59  11  if the evidence is or is not on the knife is not

00:56:02  12  necessarily determinative of whose hand it was in and

00:56:05  13  when.

00:56:06  14          THE COURT:  So your motion should be read as

00:56:07  15  seeking to strike.  Did you object to this?  Yes?

00:56:12  16          MS. BEIGHTOL: We object to the entire

00:56:15  17  shebang of the DNA evidence, without -- with the experts

00:56:20  18  not there to discuss them.

00:56:21  19          THE COURT:  So what the jury is going to

00:56:23  20  hear then is Patel is going to come up, Patel is going

00:56:31  21  to say:  Yes, we analyzed the knife, and our results

00:56:35  22  were not conclusive.

00:56:36  23          MS. BEIGHTOL:  And that can be entered

00:56:38  24  because that has been identified; that has been -- he is

00:56:41  25  absolutely correct that we knew that those witnesses may

| 00:56:44 | 1 | be in this trial.  We knew that that document may be in |
| 00:56:46 | 2 | this trial.   And that has been advised to us |
| 00:56:51 | 3 | previously.  What hasn't is the rest of this, is the |
| 00:56:54 | 4 | rebuttal piece. |
| 00:56:56 | 5 | THE COURT:  Let me think about it. |
| 00:57:05 | 6 | MR. HARTZOG:  Can I add one clarifying point |
| 00:57:06 | 7 | here?  The Bode report is pretty much the raw data that |
| 00:57:10 | 8 | is used.   I don't think that piece is helpful without |
| 00:57:14 | 9 | expert testimony.   The results, I think, on the letter |
| 00:57:19 | 10 | are what speak for themselves.   And Officer Edwards |
| 00:57:22 | 11 | should be able to testify that:  I submitted my DNA |
| 00:57:25 | 12 | because I know I didn't touch the knife.   And I got |
| 00:57:29 | 13 | this report back that is authenticated from Ms. |
| 00:57:33 | 14 | Bracamontes.  That's how we intend to introduce it, Your |
| 00:57:39 | 15 | Honor. |
| 00:57:43 | 16 | I think the raw data, to the extent the |
| 00:57:46 | 17 | Court believes that raw data report is necessary, we |
| 00:57:50 | 18 | would seek leave of Court to add that in as an exhibit. |
| 00:57:53 | 19 | We don't believe it's necessary because we believe the |
| 00:57:56 | 20 | report speaks for itself. |
| 00:58:02 | 21 | And also, Your Honor, I do think it would be |
| 00:58:04 | 22 | prejudicial to have the jury hear that it was |
| 00:58:06 | 23 | inconclusive without hearing that subsequent testing was |
| 00:58:10 | 24 | done that is not inconclusive. |
| 00:58:12 | 25 | THE COURT:  It's kind of about how you |

00:58:13  1    prepared your case, too, isn't it?

00:58:15  2               MR. HARTZOG:  I suppose so, Your Honor.

00:58:17  3    But again, we have identified this report all along.

00:58:21  4    The minute we got it, we put it in our pretrial

00:58:23  5    disclosures.  We put an authenticating witness in to our

00:58:27  6    pretrial disclosures.  We identified an expert to talk

00:58:30  7    about it.  Granted, we did it as a rebuttal because of

00:58:33  8    the stature of the case and our deadline for case in

00:58:37  9    chief experts had passed.  And it wasn't until they

00:58:40  10   withdrew on December 7th that that caused Ms. Clement to

00:58:45  11   not be available as a witness, and that's why we moved

00:58:48  12   to redesignate.  Prior to December 7th she was on the

00:58:51  13   witness list, and everyone assumed she would be called.

00:58:55  14   They only withdraw their expert once we said:  Hey, we

00:58:59  15   realize that there's this issue with our expert being a

00:59:03  16   rebuttal expert.

00:59:06  17              So I think what this is is sort of what is

00:59:11  18   referred to in the case law as, you know, kind of games

00:59:16  19   with discovery and litigation preventing the jury from

00:59:18  20   hearing the facts of the case.  We believe this is a key

00:59:21  21   fact in the case.

00:59:25  22              THE COURT:  You attacked Foran.  You sought

00:59:31  23   for the Court to exclude Foran.  And as the Court was

00:59:35  24   considering the motion.  The plaintiff withdraw Foran.

00:59:40  25              MR. HARTZOG: Right, Your Honor.  And we

00:59:41 1   realized during that process that this was an issue.

00:59:45 2   And that's when we contacted plaintiff's counsel with

00:59:48 3   our proposal to redesignate in exchange for withdrawing

00:59:53 4   our motion on Foran, to allow them both to testify.  I

00:59:56 5   think that's probably when plaintiff's counsel realized

00:59:59 6   this was an issue and withdrew Foran affirmatively.

01:00:03 7   But in any event, when we realized that this was an

01:00:06 8   issue, we moved the Court; we let plaintiff's counsel

01:00:09 9   know that we were intending to do this.  But the report

01:00:12 10  itself has been in evidence and been identified as

01:00:15 11  evidence since we received it in March of 2022, along

01:00:20 12  with an authenticating witness.  When we supplemented

01:00:24 13  our initial disclosures, we identified that report as an

01:00:28 14  exhibit we intended to use, and we identified a witness

01:00:30 15  to authenticate it.

01:00:32 16          THE COURT:  Well, I have no doubt that if I

01:00:34 17  tell you that Ms. Bracamontes cannot say such and such

01:00:43 18  and such and such, that you would instruct her

01:00:46 19  accordingly.

01:00:47 20          MR. HARTZOG:  Of course, Your Honor.

01:00:48 21          THE COURT:  So I think I can take care of

01:00:50 22  that part of the concern.  But there are some issues

01:00:53 23  that are all tied up in this.  But I didn't know there

01:00:55 24  was a word "octillion" until I read this report.  Who

01:01:01 25  is going to explain what octillion means?  You say it's

01:01:06  1  self-evident.  Does everybody know what octillion is?

01:01:11  2  Is it just me?  I didn't know what it was.  I still

01:01:11  3  don't know what it is.

01:01:12  4              MR. HARTZOG:  I think the jury can

01:01:14  5  understand it's a large number.  And I think that's the

01:01:16  6  important piece of this is that it's very unlikely that

01:01:19  7  he touched the knife.  And I think that's essentially

01:01:21  8  what the report says, that it's this times less likely

01:01:25  9  that he touched the knife, and it's this times more

01:01:29  10  likely that Mr. Mojarrad touched the knife.  I don't

01:01:32  11  think that's misleading or confusing to the jury.  I

01:01:34  12  think those numbers just speak for themselves.  One is

01:01:37  13  likely to have touched the knife.  One is unlikely to

01:01:40  14  have touched the knife.  If you read that report,

01:01:42  15  that's the conclusion you draw.  I think it speaks for

01:01:45  16  itself, Your Honor.

01:01:49  17              THE COURT:  Well, what's major, what's

01:01:52  18  minor?  Octillion is major and trillion is minor.  What

01:01:56  19  does that mean?  I'm a little confused by that.

01:01:58  20              MR. HARTZOG:  Well, I think we all know that

01:02:00  21  octillion is a larger number than trillion.  So I think

01:02:06  22  it's -- we can have a witness say what number octillion

01:02:11  23  is, that it's this many zeros.  I don't think you need

01:02:14  24  an expert opinion for that.

01:02:16  25              THE COURT:  But contributor major is one in

01:02:20  1  4.06 octillion; contributor minor is one in 25 trillion.

01:02:27  2  I'm just trying -- if this speaks for itself, I'm just

01:02:30  3  trying to understand:  What is it saying to me?

01:02:33  4          MR. HARTZOG:  It simply says that it is very

01:02:36  5  unlikely, extremely unlikely that Officer Edwards's DNA

01:02:41  6  is on the knife, and it is extremely likely that Mr.

01:02:44  7  Mojarrad's DNA is on the knife.

01:02:46  8          THE COURT:  Because the baseline for it

01:02:50  9  being Officer Edwards's DNA is one in 25 trillion.

01:02:57  10          MR. HARTZOG:  I think, as the report says,

01:03:00  11  someone with the same genetic -- a white male, it is --

01:03:07  12  Officer Edwards is less likely -- that many times less

01:03:10  13  likely than the average white male to be the one to have

01:03:13  14  touched the knife.

01:03:14  15          THE COURT:  Well, there is a lot to unpack

01:03:17  16  here.

01:03:21  17          MR. HARTZOG:  Well, I agree, Your Honor.

01:03:22  18  But I do think the report is key evidence in this case.

01:03:26  19  And again, Officer Edwards is accused in this case of

01:03:30  20  shooting someone and then planting a knife on them.

01:03:34  21  Our contention is that he did not do that.  And this

01:03:36  22  evidence, this DNA evidence shows in our mind that he

01:03:41  23  did not touch that knife.  And that is key evidence in

01:03:44  24  this case that we believe a jury should hear and should

01:03:49  25  be able to consider.  And Officer Edwards should be

01:03:51  1   able to testify that:  I was very confident that I did

01:03:55  2   not touch that knife, and I submitted my DNA evidence to

01:03:58  3   be tested against the knife.  And it turns out that

01:04:03  4   this report was generated, and it speaks for itself.  He

01:04:07  5   don't even have to say what the report says.  But I

01:04:09  6   think a jury can see that report and see that it's very

01:04:11  7   unlikely that Officer Edwards touched that knife.  And

01:04:14  8   I think that when Officer Edwards is accused of shooting

01:04:18  9   someone and then planting a knife on them, I think he is

01:04:21  10  entitled to present some evidence that that didn't

01:04:23  11  happen.  And this is that evidence.  This is part of

01:04:27  12  that evidence, that he did not do this, what they're

01:04:31  13  accusing him of.  So we think this is very, very

01:04:33  14  important evidence in this case.

01:04:35  15          And I understand Your Honor's ruling on the

01:04:38  16  expert issue.  But at the very least the jury should be

01:04:40  17  allowed to see this report that we've identified for

01:04:44  18  years in this case.

01:04:46  19          THE COURT:  Does your motion for

01:04:48  20  introduction of this report include page 4 of it?

01:04:55  21          MR. HARTZOG:  I believe we just identified

01:04:56  22  the report, but if there are aspects to the report that

01:04:59  23  Your Honor needs to be redacted, we can certainly do

01:05:02  24  that.

01:05:02  25          THE COURT:  I'm just wanting to know what

01:05:03  1   the scope of the motion is.   We've taken off pages 6 to

01:05:07  2   the end because, as I mentioned, the fact that where

01:05:16  3   this type of science was used, what other court cases

01:05:21  4   just doesn't really resonate with me as a report; it's

01:05:27  5   more argument.

01:05:29  6           But I'd like over the lunch hour for you to

01:05:33  7   look at page 4 and tell me, this page with all of these

01:05:38  8   references and with this -- maybe a little bit of

01:05:44  9   hearsay as to how this case work method works; are you

01:05:51  10  trying to get this in as part of the report?   Where,

01:05:58  11  for example, one paragraph reads:  "Over 40 TrueAllele

01:06:03  12  validation studies have been conducted to establish the

01:06:08  13  reliability of the method.   Eight of these studies have

01:06:11  14  been published in peer-reviewed scientific journals on

01:06:15  15  both synthetic and case work data.   There are related

01:06:21  16  papers on data analysis validation and error reporting.

01:06:27  17  TrueAllele has been empirically tested and complies with

01:06:31  18  six national standards for validating probabilistic

01:06:36  19  genotyping systems and other performance criteria."

01:06:42  20          Do you want to take a look at it over the

01:06:44  21  lunch hour?

01:06:45  22          MR. HARTZOG:  Sure, Your Honor.   I'll be

01:06:46  23  happy to address that.

01:06:48  24          THE COURT:  In which case, what you're

01:06:50  25  looking at is the bare bones pages 1, 2 and 3, and the

01:06:56 1  signature page, which is 5, if you're not seeking to

01:07:02 2  introduce page 4.

01:07:09 3  MR. HARTZOG:  I think we'd probably be okay

01:07:12 4  with that.  I'll take a look at page 4 over the lunch

01:07:16 5  break and present arguments on that.

01:07:17 6  THE COURT:  So what plaintiff is emphasizing

01:07:19 7  is that your motion seeking to exclude testimony

01:07:23 8  embraces this document seeking to exclude it.

01:07:29 9  MS. BEIGHTOL: Yes, Your Honor.  And we also

01:07:30 10  objected in pretrial disclosures to this document.

01:07:33 11  THE COURT:  On what basis?

01:07:35 12  MS. BEIGHTOL: I can pull it up.

01:07:37 13  THE COURT:  Just tell me what page that was.

01:07:46 14  MS. EDWARDS:  It's page 135.  And then

01:07:49 15  numbers -- Exhibit 170.

01:07:58 16  MS. BEIGHTOL: And if the Court -- I'll let

01:08:01 17  you finish reading.

01:08:08 18  THE COURT:  Irrelevant, more prejudicial

01:08:11 19  than probative.  But what is the significance of

01:08:17 20  "Defendant was unaware of Soheil's" --

01:08:20 21  MS. BEIGHTOL:  We'll redact that on the

01:08:21 22  record because it appears it was pulled over from

01:08:24 23  somewhere else.  We'll take that on ourselves.

01:08:26 24  THE COURT:  Okay.  Your motion is allowed.

01:08:32 25  So 401, 402, 403.

01:08:36    1          MS. BEIGHTOL: Yes, Your Honor.

01:08:39    2          THE COURT:  Why don't you take an hour for

01:08:41    3    lunch.  Why don't you come back at 1:20; it looks like

01:08:48    4    that will give you a full hour.  We'll just keep on

01:08:51    5    going.  Okay.

01:10:46    6          (Recess taken.)

02:14:16    7          THE COURT:  Let's pick up this very thorny

02:14:22    8    issue about DNA evidence.  You're going to be arguing

02:14:29    9    it would be a reasonable inference for the jury that

02:14:32   10    Defendant Edwards planted the knife?

02:14:38   11          MS. BEIGHTOL:  I'm sorry.

02:14:39   12          THE COURT:  Defendant Edwards planted the

02:14:41   13    knife is going to be something that you can tell the

02:14:44   14    jury, for example, in your closing argument, that it

02:14:48   15    might be reasonable to infer under the facts?  Is that

02:14:54   16    an inference --

02:14:55   17          MS. BEIGHTOL: I think what we'll tell the

02:14:57   18    jury is that Defendant Edwards said that he had it, and

02:15:00   19    two witnesses say that he didn't.  And I think we'll

02:15:04   20    put that information before the jury.  And as far as

02:15:07   21    the inferences from that --

02:15:09   22          THE COURT:  Well, you mentioned gloves.

02:15:13   23          MS. BEIGHTOL: Only in the context of their

02:15:14   24    argument with regard to DNA.  In other words, that

02:15:17   25    there are reasons there may not be DNA on the knife that

02:15:22 1 are not in the reports that we've been talking about.

02:15:26 2 In other words, no matter what the report says, that

02:15:29 3 doesn't exclude that he could have handled the knife.

02:15:39 4 (Discussion had off the record.)

02:15:39 5 MS. BEIGHTOL: And she brings up a good

02:15:41 6 point. Only if the DNA evidence comes in would we need

02:15:44 7 to go to those places, of course.

02:15:52 8 THE COURT: So Patel is not in your case in

02:15:59 9 chief? Patel from the state laboratory is not anybody

02:16:01 10 you're seeking to call in your case in chief?

02:16:04 11 MS. BEIGHTOL: We did not identify her in our

02:16:07 12 case in chief as a witness.

02:16:08 13 THE COURT: So defendant wants to bring

02:16:11 14 Patel in. You want Patel to come and testify that it

02:16:16 15 wasn't conclusive?

02:16:18 16 MR. HARTZOG: Well, Your Honor, we're --

02:16:22 17 we've got Patel on our list. We may not need to call

02:16:25 18 her on that point. But the issue, I think, is the DNA

02:16:29 19 testing. We believe the TrueAllele testing should come

02:16:34 20 in. And as part of that, I think the explanation from

02:16:38 21 Ms. Patel that here's how they did it; here's what they

02:16:41 22 were able to do. And I think Ms. Patel can also testify

02:16:44 23 that they now use this same software at -- this

02:16:48 24 probabilistic testing.

02:16:53 25 THE COURT: Have you issued your subpoenas?

| | | |
|---|---|---|
| 02:16:55 | 1 | MR. HARTZOG:  We have, Your Honor. |
| 02:16:56 | 2 | THE COURT:  You have? |
| 02:16:58 | 3 | MR. HARTZOG:  Yes. |
| 02:17:07 | 4 | A couple other points, if I may.  I wanted |
| 02:17:09 | 5 | to -- first of all, plaintiffs have implicated all |
| 02:17:13 | 6 | along, and I think they've been -- they have not come |
| 02:17:18 | 7 | out and said Officer Edwards planted the knife, but that |
| 02:17:21 | 8 | is clearly the implication that they want drawn.  And, |
| 02:17:23 | 9 | in fact, as we cited in our reply brief on this issue, |
| 02:17:27 | 10 | there's been newspaper headlines that the family accuses |
| 02:17:31 | 11 | Officer Edwards of planting the knife.  Mrs. Mojarrad in |
| 02:17:35 | 12 | her deposition said that she believed Officer Edwards |
| 02:17:37 | 13 | planted the knife.   Plaintiff in their arguments on the |
| 02:17:44 | 14 | case have said it's a fair implication that the knife |
| 02:17:46 | 15 | was planted.   So that is, in fact, the implication that |
| 02:17:49 | 16 | is being made. |
| 02:17:52 | 17 | I also wanted to go back, Your Honor, to |
| 02:17:56 | 18 | our -- their motions -- their objections to our motions. |
| 02:18:00 | 19 | Their only objection to the Cybergenetics report is 401, |
| 02:18:04 | 20 | 402, and 403.   And then in their motions in limine they |
| 02:18:08 | 21 | only object to DNA evidence from expert testimony, which |
| 02:18:13 | 22 | I don't think encompasses the report itself. |
| 02:18:16 | 23 | THE COURT:  Okay.  Which was a question that |
| 02:18:18 | 24 | I asked, and an assumption that I made.  You're |
| 02:18:22 | 25 | clarifying that the motion didn't reach the |

02:18:24  1    Cybergenetics report from your view of it.

02:18:27  2                MR. HARTZOG:  That's correct, Your Honor.

02:18:29  3                THE COURT:  Okay.  Did Foran -- can you

02:18:33  4    remind me, did he offer any opinions as to the

02:18:38  5    sufficiency or authoritativeness of the Cybergenetics

02:18:43  6    report?

02:18:44  7                MS. BEIGHTOL: Your Honor, we offered a

02:18:46  8    declaration in connection with our response on summary

02:18:50  9    judgment with a declaration from Dr. Foran on that

02:18:55  10   issue, and he did question the findings on that report.

02:18:59  11   And if I may, Your Honor, just -- this may help move

02:19:03  12   things along.  We can agree not to make the explicit

02:19:06  13   argument that he planted the knife.  I don't -- I'm

02:19:12  14   looking at my co-counsel.  I don't think we've ever

02:19:15  15   explicitly made that argument.  I think the only thing

02:19:18  16   we've said in passing is that looking at the image that

02:19:21  17   we have of the knife, that someone could come to that

02:19:25  18   conclusion.  But we have not ourselves explicitly argued

02:19:30  19   that, nor have we offered a witness to argue that.  I

02:19:33  20   think the thing that they have continued to argue is

02:19:36  21   related to a newspaper article that's out in the world

02:19:41  22   that is not a legal -- it's been in their briefing for a

02:19:45  23   long time.  It's over and over again been in their

02:19:48  24   briefing, in fact, on treating physicians.  But not in

02:19:52  25   ours.

02:19:53  1          THE COURT:  So you wouldn't argue that to

02:19:55  2   the jury, that Officer Edwards -- that it could be

02:20:02  3   reasonable to assume that he planted the knife?  You

02:20:06  4   will not argue that to the jury?

02:20:10  5          MS. EDWARDS:  Your Honor, for clarification

02:20:11  6   purposes, it doesn't matter to us whether Officer

02:20:14  7   Edwards planted the knife.

02:20:15  8          There are a couple of things that do matter

02:20:17  9   to us in terms of our case and whether Officer Edwards

02:20:21  10  had the authority within the law to use deadly force.

02:20:25  11  Those things are -- one of which is:  Was he armed?  It

02:20:29  12  doesn't matter to us whether he pulled the knife out

02:20:33  13  himself as he was falling.  It doesn't matter to us

02:20:36  14  whether some other passerby put the knife in his hand.

02:20:39  15  It doesn't matter to us at all whether -- whether or how

02:20:43  16  he came to possess the knife.  If the jury were to find

02:20:46  17  that he didn't possess the knife, then Officer Edwards

02:20:49  18  would have shot an unarmed man.  Whether he planted the

02:20:53  19  knife really doesn't make a difference in our opinion.

02:21:00  20          And I would just, for clarification

02:21:02  21  purposes, state that our case does not hinge upon

02:21:06  22  whether or not he had a knife.

02:21:08  23          THE COURT:  Hence your objection, relevance?

02:21:12  24          MS. EDWARDS:  Correct, Your Honor.

02:21:20  25          THE COURT:  Does that give you any

| | |
|---|---|
| 02:21:21 | 1 |
| 02:21:27 | 2 |
| 02:21:29 | 3 |
| 02:21:32 | 4 |
| 02:21:34 | 5 |
| 02:21:38 | 6 |
| 02:21:41 | 7 |
| 02:21:46 | 8 |
| 02:21:49 | 9 |
| 02:21:51 | 10 |
| 02:21:56 | 11 |
| 02:21:59 | 12 |
| 02:22:01 | 13 |
| 02:22:03 | 14 |
| 02:22:06 | 15 |
| 02:22:08 | 16 |
| 02:22:12 | 17 |
| 02:22:14 | 18 |
| 02:22:17 | 19 |
| 02:22:25 | 20 |
| 02:22:29 | 21 |
| 02:22:32 | 22 |
| 02:22:33 | 23 |
| 02:22:38 | 24 |
| 02:22:41 | 25 |

confidence in terms of the import or lack thereof of
Clement and this DNA evidence that we could take it
completely off the lay of the land?

          MR. HARTZOG:  No, Your Honor.  Because,
again, Officer Thompson was the next person to arrive on
the scene.  And his body cam, as he walks up to the
scene, the knife is in Mr. Mojarrad's hand.  So even if
they don't explicitly say Officer Edwards planted the
knife, that is the implication they want the jury to
hear.  And they don't have to explicitly say it.  All
they have to say is:  There wasn't a knife in his hand,
and all of a sudden there was; I don't know what
happened, but Officer Edwards was the only one there.
It's the same thing as saying:  Officer Edwards planted
the knife.  I don't think they have to come out and say
it explicitly.  That is their implication.

          And it is, in our mind, certainly relevant
whether Mr. Mojarrad possessed a knife at the time of
the shooting.  Again, this is the key issue in the case
in defendant's mind is:  Did Mr. Mojarrad have a knife
at the time of the shooting?

          THE COURT:  So you don't envision that
there's a stipulation that could be crafted that would
remove this issue from the table?

          MR. HARTZOG:  I suppose if there's a

02:22:42  1    stipulation that Officer Edwards did not plant a knife

02:22:47  2    in his hand, that might work.   I'd have to give that

02:22:51  3    little bit of thought.   But I suppose I could go with a

02:22:54  4    stipulation that Officer Edwards did not put the knife

02:22:58  5    in his hand.

02:23:01  6              MS. BEIGHTOL: I don't think -- I don't think

02:23:05  7    we can make that stipulation.

02:23:07  8              But we can talk about all sorts of things

02:23:09  9    that the jury might jump to.  Which comes back to if

02:23:14  10   these reports come in, it's very confusing and

02:23:17  11   misleading, as is leaving doors open about that.   I

02:23:22  12   think what we have and what we can present to the jury

02:23:25  13   is the stuff that is real, which is two people didn't

02:23:29  14   see a knife, one person claims there was one, and

02:23:32  15   there's no video camera.

02:23:34  16             But even if, even if we have DNA evidence

02:23:39  17   come in without an expert -- which is, we've explained,

02:23:42  18   problematic -- you still have the problem that then

02:23:45  19   we're starting to enter testimony and thought process

02:23:49  20   about -- that doesn't exclude that he did or didn't have

02:23:53  21   the knife in his hand, because there are other

02:23:55  22   explanations for that.

02:23:57  23             And talking about Officer Thompson is not

02:23:59  24   helpful.   He came up after the fact.   There are two

02:24:01  25   witnesses other than Defendant Edwards that saw this.

| | |
|---|---|
| 02:24:05 | 1 |
| 02:24:08 | 2 |
| 02:24:11 | 3 |
| 02:24:13 | 4 |
| 02:24:16 | 5 |
| 02:24:19 | 6 |
| 02:24:22 | 7 |
| 02:24:26 | 8 |
| 02:24:31 | 9 |
| 02:24:33 | 10 |
| 02:24:36 | 11 |
| 02:24:38 | 12 |
| 02:24:41 | 13 |
| 02:24:47 | 14 |
| 02:24:49 | 15 |
| 02:24:52 | 16 |
| 02:24:55 | 17 |
| 02:24:58 | 18 |
| 02:25:08 | 19 |
| 02:25:11 | 20 |
| 02:25:14 | 21 |
| 02:25:16 | 22 |
| 02:25:21 | 23 |
| 02:25:27 | 24 |
| 02:25:31 | 25 |

Two.  Mr. Caudle is a third person who saw it, but he absolutely testified that he couldn't tell whether or what was in his hand.  So there are two.  That's what we're faced with.  That's what we can talk about at trial.  And that's what the jury should, without video of the event, look at.  Because when you go into these other areas, then there are -- there are all these cans of worms that become open at that point where:  Okay, then we need to talk about there could be other reasons that that's the case; where we've got two witnesses that say it didn't happen, and one that does.  And the jury can do with that what they want.  That's the search for the truth that we'd like to present at trial.

If I may -- and I will stop talking after this -- there is continued mention of this being a key fact, key evidence, important evidence.  If that were the case, our client deserved to know that they were going to enter it way back when through an expert.

MR. HARTZOG:  And it was in our initial disclosures the minute we got this report.  We identified it as an exhibit that we intended to use along with an authenticating witness.  Plaintiffs have not objected on the grounds that it would take an expert to authenticate this.  They objected under 401, 402, and 403.  And under 403 I guess their argument is it's

02:25:34 1　misleading to the jury.　But even if that's the case,

02:25:36 2　which I don't believe it is, even if it is, the

02:25:38 3　prejudicial value of it has to outweigh the probative

02:25:41 4　value of it.　And that simply is not the case.

02:25:43 5　　　　　And I'm not surprised to hear they won't

02:25:46 6　stipulate that he didn't have a knife because clearly

02:25:48 7　they want the jury to take that implication.　That has

02:25:51 8　been their case, that there was no knife, and all of a

02:25:56 9　sudden there was.　The clear implication is that the

02:25:58 10　only person there who had the opportunity to do it,

02:26:00 11　Officer Edwards, planted the knife.

02:26:02 12　　　　　And they can say all day long:　Oh, there's

02:26:05 13　a bunch of different explanations.　None of them are in

02:26:08 14　any evidence.

02:26:09 15　　　　　The only person -- the two witnesses left

02:26:13 16　after they heard the first shots, Chad Caudle, who they

02:26:16 17　mentioned, said it looked like he had something in his

02:26:19 18　hand, but he couldn't tell.　So there are three

02:26:22 19　witnesses.　One couldn't tell, but he said when I got

02:26:25 20　up there, I saw the knife and realized that's probably

02:26:27 21　what I saw in his hand.　But I think the clear

02:26:34 22　implication they want to give to the jury is this was

02:26:37 23　planted evidence, that it wasn't in his hands, then all

02:26:39 24　of a sudden it was.　And the DNA evidence disproves

02:26:42 25　that.　I think it is highly relevant and highly

02:26:45 1 probative, even if there is some risk to the jury of

02:26:48 2 confusion, which I don't believe there is. I believe

02:26:51 3 the report is pretty clear. But even if there is some

02:26:57 4 confusion about it, the probative value of this far

02:27:00 5 outweighs any risk of that.

02:27:03 6 THE COURT: So the timeline. Everybody gets

02:27:10 7 the report from the North Carolina State Crime Lab Crime

02:27:17 8 Laboratory. This State of North Carolina is looking to

02:27:22 9 know whether or not there's DNA on the knife.

02:27:28 10 And then -- and I think you all agree;

02:27:33 11 obviously that's what's going on, right? The State of

02:27:36 12 North Carolina is trying to figure out if there's DNA on

02:27:38 13 the knife?

02:27:39 14 MS. EDWARDS: Yes, Your Honor.

02:27:39 15 THE COURT: And the answer comes back:

02:27:41 16 Well, you know, we don't really know. Patel. It's

02:27:47 17 inconclusive.

02:27:49 18 MS. EDWARDS: Yes, Your Honor. And that

02:27:50 19 was actually known at the outset of the case because the

02:27:53 20 SBI file was available.

02:27:54 21 THE COURT: So when did you go to Dr. Foran?

02:28:02 22 Was that in response to some other action?

02:28:09 23 MS. EDWARDS: We went to Dr. Foran -- I

02:28:13 24 don't know exactly when, but maybe a month or two prior

02:28:16 25 to the expert disclosure deadline for the plaintiffs,

02:28:21  1   which was a bit before the defendant's deadline.  We

02:28:23  2   disclosed him in that initial disclosure -- in that

02:28:30  3   initial, and then supplemented.  But when we spoke with

02:28:33  4   him he said:  I need the bench file from the State Crime

02:28:38  5   Lab.  Which then we had to go through the process to

02:28:40  6   obtain.

02:28:41  7              THE COURT:  So he's focused on the state's

02:28:43  8   materials.  So when does Cybergenetics get involved?

02:28:51  9              MR. HARTZOG:  When plaintiff's counsel

02:28:53  10  called us and said: Our expert, Dr. Foran, has indicated

02:28:58  11  that there's additional testing that could be done, and

02:29:00  12  we are asking if you would consent to our motion to draw

02:29:04  13  his DNA.

02:29:06  14             THE COURT:  Draw Edwards's DNA?

02:29:09  15             MR. HARTZOG:  Edwards's DNA to test against

02:29:12  16  the knife.

02:29:12  17             THE COURT:  And that results in the Bode

02:29:14  18  Technology report?

02:29:15  19             MR. HARTZOG:  Correct.  Which is -- and I

02:29:17  20  will say one more thing, Your Honor.  Which is:  In our

02:29:20  21  pretrial disclosures we did say the Cybergenetics report

02:29:24  22  and supporting materials.  So I think fairly the Bode

02:29:28  23  report falls under "supporting materials" and has been

02:29:30  24  identified.

02:29:31  25             THE COURT:  So now we've got the Bode

02:29:34 1  report.  So help me understand.  So who goes to

02:29:38 2  Cybergenetics, you or you?

02:29:42 3              MR. HARTZOG:  We did, Your Honor.

02:29:43 4              THE COURT:  Because plaintiff said:  Our

02:29:47 5  expert thinks more testing could be done?

02:29:50 6              MR. HARTZOG:  Once we found out that more

02:29:51 7  evidence could be done and we got the DNA report, we --

02:29:55 8              THE COURT:  Which plaintiff asked you to

02:29:56 9  get?

02:29:57 10             MR. HARTZOG:  Correct.

02:29:57 11             THE COURT:  For the purpose of you getting

02:30:00 12 more DNA evidence, or you?

02:30:03 13             MR. HARTZOG:  It was for the purpose of

02:30:05 14 their expert requesting Officer Edwards's DNA.  We said:

02:30:11 15 If he's going to test the DNA, we're also going to test

02:30:14 16 the DNA.

02:30:15 17             THE COURT:  So Foran was going to use the

02:30:16 18 Bode report to consider further what the State of North

02:30:19 19 Carolina had done?

02:30:20 20             MR. HARTZOG:  I think basically what the

02:30:22 21 State of North Carolina had done, the way they did the

02:30:24 22 testing, their system at the time was not sophisticated

02:30:30 23 enough.  And there's things about peaks and spikes in

02:30:34 24 the DNA.  They didn't have the technology to do the

02:30:37 25 full DNA testing that they now do.  They do the

02:30:40  1  probabilistic testing like the TrueAllele testing.

02:30:44  2          THE COURT:  What do you understand Foran was

02:30:46  3  going to do with the Bode report?

02:30:48  4          MR. HARTZOG:  Well, we knew he was going to

02:30:51  5  run that DNA information and generate a report similar

02:30:54  6  to Cybergenetics that we generated.  We believed if

02:30:58  7  their expert is going to test the DNA, then ours should

02:31:02  8  too.  So that's why we identified a rebuttal expert at

02:31:06  9  that time to do the same testing that their expert was

02:31:09  10  now going to be doing.

02:31:10  11         THE COURT:  Okay.  So really it's no

02:31:15  12  surprise to the plaintiff?

02:31:17  13         MR. HARTZOG:  No.

02:31:29  14         THE COURT:  I'm going to backtrack.  And all

02:31:34  15  things considered, I'm going to let you bring in Clement

02:31:41  16  just for the purpose of explaining the Cybergenetics

02:31:49  17  report.

02:31:54  18         MR. HARTZOG:  Yes, Your Honor.

02:31:54  19         THE COURT:  And if you want Foran to come

02:31:57  20  back and be your rebuttal witness, you certainly can.

02:32:05  21         MS. BEIGHTOL:  Thank you, Your Honor.

02:32:09  22         THE COURT:  And maybe you all can stipulate

02:32:12  23  and agree as to the authenticity of the Cybergenetics

02:32:17  24  report such that Bracamontes doesn't have to come.

02:32:30  25  I'll leave that to you all, of course.

02:32:32   1          MR. HARTZOG:  Thank you, Your Honor.   We'll

02:32:34   2    talk.

02:32:35   3          THE COURT:  I owe it to you to enter a

02:32:38   4    written order to explain my turn of view, and that

02:32:45   5    written order will follow.   Okay.

02:32:48   6          MS. EDWARDS:  Your Honor, we would request,

02:32:52   7    maybe an oral motion for leave to depose Ms. Clement.

02:32:55   8    Because we elected not to do that for the very reason

02:32:58   9    that she was rebuttal.   And all of her opinions that

02:33:02  10    we've been exposed to at this point --

02:33:04  11          THE COURT:  You're going to get that chance.

02:33:05  12          And so where is she in your order of proof?

02:33:11  13          MR. HARTZOG:  Your Honor, frankly, we're

02:33:13  14    still working on our order of proof.   But she would be

02:33:16  15    probably somewhere near the -- probably near the end,

02:33:22  16    but that's subject to change.

02:33:24  17          THE COURT:  Well, remember there's that day

02:33:26  18    I told you we would end early, just thinking about

02:33:31  19    trying to help with the economies.   Wasn't that the

02:33:35  20    second day of the trial, that Tuesday?   I've left my

02:33:42  21    calendar.   I told you over the phone.

02:33:44  22          MR. HARTZOG:  That's what I wrote down.

02:33:46  23          THE COURT:  Is that something you'd be

02:33:47  24    interested in, them bringing her to New Bern?   When do

02:33:50  25    you want to depose her?

02:33:52 1          MS. BEIGHTOL:  I mean, I think ideally we

02:33:54 2     would depose her before that because we'd like to

02:33:59 3     prepare Dr. Foran, who we advised -- I mean, we hope

02:34:03 4     he's still available, because we advised him he wasn't a

02:34:03 5     witness anymore.   I mean, we have a lot of backtracking

02:34:06 6     to do.

02:34:07 7          THE COURT:  Do you want to go make a phone

02:34:08 8     call right now, one of you, and we'll keep on going?

02:34:15 9     I'm just wanting to help you.

02:34:16 10          MS. EDWARDS:  Your Honor, I don't think

02:34:18 11     that's going to make much of a difference to do it now

02:34:21 12     versus in a few hours.

02:34:22 13          THE COURT:  Well, when can you make Clement

02:34:25 14     available?

02:34:25 15          MR. HARTZOG:  I will check her schedule, but

02:34:27 16     if we do a remote deposition, we can do it probably just

02:34:30 17     about any time.

02:34:31 18          MS. EDWARDS:  That will be fine with us.

02:34:33 19          THE COURT:  Your oral motion is allowed

02:34:36 20     regarding the deposition.

02:34:38 21          And if you want to add any other contours to

02:34:43 22     that allowance of that motion --

02:34:47 23          MS. BEIGHTOL:  I mean, I think we'd like it

02:34:49 24     in enough time that we'd be able to provide it to Dr.

02:34:52 25     Foran and prepare our case for trial.   I mean, we're

| | |
|---|---|
| 02:34:55 | 1 |
| 02:34:58 | 2 |
| 02:35:02 | 3 |

three weeks before trial right now, and this is
obviously really impinging on our entire case that we
have to present day one.

THE COURT: So to mitigate any prejudice, do
you want to discuss pushing the trial out a little bit,
which is something that I could consider to alleviate
some of your concern.

MS. BEIGHTOL: Unfortunately that may cause
us problems with other witnesses, of which there are not
one or two, but multiple. I mean I think at this point
this just puts us in a bind no matter what.

But we would like to get an opportunity -- I
mean, we both have things the next two days, but we'd
like within the next seven to ten days to have her
availability. And we're fine doing it remote. But
usually court reporters take two weeks to get
depositions back. We'd have to order an expedited
deposition transcript. There are lots of things that
come into play here that will prejudice the plaintiff at
this moment in time in the case.

THE COURT: So you need to get her as soon
as possible.

MR. HARTZOG: Your Honor, I've already
emailed her to ask her for her availabilities.

THE COURT: If she emails you back,

02:36:28  1  interrupt me, and we'll focus on that.

02:36:30  2          MS. EDWARDS:  Your Honor, may I, for

02:36:31  3  clarification?  You're allowing Ms. Clement to testify

02:36:35  4  but for limited purposes?

02:36:39  5          THE COURT:  Well, obviously she doesn't need

02:36:41  6  to talk about Foran if he's putting in the case in

02:36:48  7  chief, right?  Well, let's think it through.  Foran may

02:36:56  8  or may not come as your rebuttal witness.  So much of

02:36:59  9  the thrust of her opinions are how wrong Foran is.   So

02:37:06  10 how much are you going to want to go into that?

02:37:10  11         MR. HARTZOG:  Well, if Foran is not

02:37:12  12 testifying -- that's up to them, but if he's not

02:37:14  13 testifying, that does cabin her opinions somewhat.

02:37:18  14         THE COURT:  I think you need focus -- she's

02:37:20  15 your witness to paragraph 17.

02:37:23  16         MR. HARTZOG:  Correct, Your Honor.  That's

02:37:24  17 really what we want her in for is to say:  Here's the

02:37:27  18 Cybergenetics report.  Here's how it's done.  And here's

02:37:30  19 what it is; here's what it means.  And that's pretty

02:37:33  20 much the extent of what we need from her.

02:37:35  21         THE COURT:  Yeah.  I would say in his case

02:37:38  22 in chief he's got to steer clear of eliciting any attack

02:37:42  23 from her of Foran.  Now, that's not to say if you

02:37:45  24 decide to put Foran on, that she couldn't be recalled

02:37:50  25 subject to the rules.

| | | |
|---|---|---|
| 02:37:53 | 1 | MS. BEIGHTOL: Your Honor, just thinking |
| 02:37:55 | 2 | through this, and all the logistical hassles, and what I |
| 02:37:58 | 3 | fear and we fear, and one reason we made this motion is |
| 02:38:02 | 4 | the waste of time that will be practiced upon the Court. |
| 02:38:06 | 5 | We would be willing to try to strike a compromise such |
| 02:38:09 | 6 | as letting the pages in that you were discussing |
| 02:38:13 | 7 | beforehand, before our lunch break, of the report; I |
| 02:38:19 | 8 | think it was 1, 2, 3, and 5, and having that come in |
| 02:38:23 | 9 | versus Clement in some manner. Look, we want to be |
| 02:38:28 | 10 | fair to all parties involved. We're not trying -- but |
| 02:38:31 | 11 | we don't want this to turn into gamesmanship that |
| 02:38:35 | 12 | creates a delay in trial. We don't want hardships |
| 02:38:38 | 13 | placed on the Court or placed on the parties. So we're |
| 02:38:41 | 14 | open to discussions in that regard, if it can alleviate |
| 02:38:45 | 15 | some of these hassles. Because this is a lot that |
| 02:38:48 | 16 | could delay the trial in its current stead. |
| 02:38:53 | 17 | THE COURT: The shapes keep shifting. So |
| 02:38:58 | 18 | now they would consent to 1, 2, 3, and 5 of the |
| 02:39:01 | 19 | Cybergenetics report introduced into evidence with or -- |
| 02:39:05 | 20 | maybe they don't even need the -- are you -- |
| 02:39:10 | 21 | MR. HARTZOG: Well, Your Honor, I do think |
| 02:39:11 | 22 | Meghan Clement having some explanation to the jury, |
| 02:39:14 | 23 | here's what this is and here's what it means, would be |
| 02:39:17 | 24 | helpful. And that is going to be the extent of her |
| 02:39:19 | 25 | opinion. And that's an opinion that's been known to |

02:39:23 1  plaintiff's counsel since March of 2022, which hasn't

02:39:29 2  changed.  It's written in her report.  All it is is:

02:39:32 3  Here's the Cybergenetics report; here's how we do the

02:39:34 4  testing, and here's what it means.

02:39:36 5        THE COURT:  You were sloppy in the way that

02:39:39 6  you put out Clement.  But the plaintiff has known all

02:39:44 7  along that this was your position, that you would take

02:39:52 8  this position, and you had someone qualified or --

02:39:59 9  maybe -- to illuminate what the Cybergenetics report

02:40:04 10 means.  And I think you should be able to still,

02:40:11 11 despite your sloppiness, all things considered, bring

02:40:14 12 her into the courtroom.

02:40:17 13       So if you're not willing to stipulate to

02:40:20 14 that, I'm not going to make you stipulate to that.   But

02:40:25 15 I'm going to say:  Focus your witness on what you wanted

02:40:32 16 to draw from her in support of her opinion in paragraph

02:40:37 17 17.

02:40:40 18       MR. HARTZOG:  Understood, Your Honor.

02:40:43 19       THE COURT:  And then if plaintiff wants to

02:40:45 20 bring Foran in, plaintiff can in rebuttal.  Or if

02:40:53 21 plaintiff wants to present Foran in its case in chief,

02:40:57 22 it can, and take the first stab at it.

02:41:04 23       But I think I can control your presentations

02:41:09 24 in a way to minimize the prejudice and any perceived

02:41:14 25 waste of time.  And so I'll be mindful of the

02:41:23  1   plaintiff's concerns in that regard.

02:41:28  2               MR. HARTZOG:  Understood, Your Honor.  We

02:41:29  3   will keep her testimony very limited.

02:41:31  4               MS. BEIGHTOL: I'm just trying to put another

02:41:34  5   opportunity out there for maybe this to become a little

02:41:36  6   more streamlined.

02:41:37  7               THE COURT:  Do you want to talk about that

02:41:38  8   outside my presence, and just if you all come to some

02:41:42  9   agreement, or are you advocating for your client and

02:41:44  10  seeking a ruling from me?

02:41:46  11              MS. BEIGHTOL: I think we're just trying to

02:41:47  12  make this streamlined for the Court and everyone else in

02:41:50  13  a manner that doesn't require multiple depositions and

02:41:54  14  back and forth and, frankly, Your Honor's careful

02:42:00  15  criticism, look at this expert and maybe find a way to

02:42:04  16  get around that.

02:42:05  17              And I have not talked to anyone about this

02:42:07  18  but me, so my law partner may jump in and tell me to be

02:42:12  19  quiet.  But what if there was some sort of stipulation

02:42:15  20  we could get both of the experts to agree on, plus the

02:42:19  21  four pages of the report, so that this does not have to

02:42:23  22  be -- because I fear, like I said, that it's going to

02:42:26  23  turn into not only a game, but that it's going to be

02:42:29  24  very confusing if we're case and chiefing it on his case

02:42:33  25  in this limited fashion, and then potentially bringing

02:42:36  1  someone else in, and the only opinions we've been aware

02:42:39  2  of are literally paragraphs that criticize the guy we're

02:42:43  3  bringing in last.  It's just very back-ended.  And

02:42:46  4  perhaps a stipulation of some kind that the parties

02:42:48  5  could work out could get around this to not delay and to

02:42:53  6  not burden the Court and to instead burden the parties.

02:42:59  7  Whoever's fault it is should have had this straight

02:43:02  8  before now.

02:43:03  9          THE COURT:  Did you want to respond to that?

02:43:06  10          MR. HARTZOG:  I'll be happy to talk to them

02:43:08  11  after court today.

02:43:10  12          THE COURT:  Okay.  Well, let's keep on

02:43:12  13  going.

02:43:24  14          Any disputes regarding video depositions

02:43:27  15  that I need to know about?

02:43:31  16          MS. BEIGHTOL: Yes, Your Honor.  The parties

02:43:35  17  jointly filed a notice of dispute at docket 178.

02:43:43  18          THE COURT:  Let me go to that.

02:43:44  19          MS. BEIGHTOL: Your Honor will be pleased to

02:43:46  20  know we streamlined those to those that relate to

02:43:49  21  motions in limine, but there are a limited few that are

02:43:51  22  outside of that.  And you can see the summary of the two

02:43:57  23  categories on page 2 and 3 of docket 178, which the

02:44:01  24  parties worked together to put together.

02:45:07  25          THE COURT:  So what's the most efficient way

02:45:10  1   to focus on category 2?   What do you think?

02:45:15  2           MS. BEIGHTOL: I think we can go by topic,

02:45:18  3   probably.   And, you know, some of these somewhat

02:45:21  4   dovetail with the motion in limine, so I don't know if

02:45:24  5   it's more effective and efficient --

02:45:26  6           THE COURT:  Do that first?

02:45:28  7           MS. BEIGHTOL:  -- to do those first.   And

02:45:29  8   then whatever is sort of left over, then maybe that gets

02:45:33  9   dealt with in this section.   Because I think some of

02:45:35  10  your rulings will give us an understanding of where

02:45:39  11  things may fall in these five categories.

02:45:42  12          THE COURT:  Okay.  So what does evidence

02:46:16  13  about Soheil's character and mental health history do

02:46:19  14  for you?   Why do you want that in?

02:46:21  15          MR. HARTZOG:  Well, Your Honor, it's partly

02:46:23  16  for a damages perspective.   As plaintiff indicated in

02:46:27  17  their pretrial filings, in fact, in their jury

02:46:30  18  instructions they say that you can consider the

02:46:33  19  relationship between the family and Soheil.   And in

02:46:38  20  part these medical records and prior issues that Soheil

02:46:43  21  had establish that his own family had had him

02:46:48  22  involuntarily committed on numerous occasions, had

02:46:52  23  kicked him out of the house for violence, was worried

02:46:56  24  about him harming their other child.   I think all of

02:47:01  25  that information and evidence comes in on the issue of

02:47:06   1   damages.

02:47:10   2            THE COURT:  Okay.  About his character?

02:47:15   3   Where does character start and stop?

02:47:21   4            MR. HARTZOG:  Well, Your Honor, we've tried

02:47:23   5   to be mindful of not going too far afield and only

02:47:27   6   chosen ones that we think show -- that characterize

02:47:36   7   damage to the family and relationship with his family

02:47:40   8   and sort of his overall demeanor.  It also is kind of

02:47:46   9   rebuttal evidence -- which I know we don't need to

02:47:49  10   disclose, but we did, in an abundance of caution -- to

02:47:53  11   any testimony that Soheil would not have done this; he

02:47:56  12   would not have attacked Officer Edwards; he's not a

02:48:01  13   violent person; he would not be the type of person to

02:48:04  14   hold a knife like that, where we have evidence that, in

02:48:08  15   fact, he has done that in the past.  So I think it's

02:48:12  16   both rebuttal evidence and it's evidence on damages with

02:48:18  17   respect to issues he's had previously with his family.

02:48:21  18            THE COURT:  Okay.

02:48:22  19            MS. BEIGHTOL: Your Honor, I think -- if I

02:48:24  20   may, this is an issue very personal to me.  I do a lot

02:48:28  21   of medical malpractice, and I'm very protective of the

02:48:31  22   patient's, even if they're deceased, mental health

02:48:34  23   records, especially in today's environment.  This is

02:48:38  24   not that that he just shared.

02:48:41  25            Let us be clear what we're talking about.

02:48:44 1 They have identified 79 sets of medical records from

02:48:49 2 this young man. They have identified three of his

02:48:53 3 mental health care providers as "will call," 19 as "may

02:48:59 4 call." This case -- I mean, they've talked about a lot

02:49:02 5 of what we may say at trial. But I can tell you from

02:49:05 6 this pretrial order you can look at, almost half of it

02:49:09 7 is involuntary commitments and medical records for this

02:49:13 8 young man who unfortunately had a mental health issue.

02:49:17 9 But as Your Honor well knows from the rulings you've

02:49:20 10 made so far in this case, that has absolutely no

02:49:23 11 bearing, absolutely no bearing on an excessive force

02:49:27 12 claim.

02:49:28 13             In fact, entry of such information, as other

02:49:31 14 courts -- and we've got it in our briefing -- have held,

02:49:34 15 is unduly prejudicial because the test is evaluated from

02:49:39 16 an objective reasonableness based on the information the

02:49:42 17 officer knew at the time.

02:49:44 18             This officer, Defendant Edwards, has

02:49:47 19 testified unequivocally he never met with, never dealt

02:49:53 20 with, never spoke to, never saw, didn't even know the

02:49:57 21 name of Soheil at the time he shot him.

02:50:01 22             Entering this evidence will confuse and

02:50:03 23 mislead this jury into thinking exactly what he just

02:50:07 24 said he wanted to enter the evidence for, that he acted

02:50:11 25 in conformity with. That is not appropriate under 404;

02:50:14  1  it is not appropriate under excessive force.  It is

02:50:18  2  absolutely irrelevant.

02:50:20  3         And let's talk about damages.  He's

02:50:22  4  mentioned damages.  As it relates to damages, exactly

02:50:27  5  what he said is true:  His relationship with his family;

02:50:33  6  that's what is important here.

02:50:40  7         Does his involuntary commitment, does his

02:50:43  8  mental health on a particular day, does whether or not

02:50:45  9  he had sufficient medication at a sufficient time,

02:50:47  10  whether he had anxiety, whether he had paranoia, does

02:50:51  11  that -- what matters is his relationship to this family.

02:50:55  12         I see this a little different than some

02:50:57  13  people may because I practice both in Georgia and in

02:50:59  14  North Carolina.  In Georgia the standard is backwards

02:51:03  15  to North Carolina.  Here in North Carolina we look at

02:51:06  16  the loss of a person to their family.  In Georgia you

02:51:11  17  look at the loss of the person's life to the person who

02:51:14  18  lost the life.  And I think that's really instructive

02:51:18  19  here because when we think about the loss of someone to

02:51:20  20  their family member, it's not how many times they've

02:51:23  21  been committed; it's the relationship they have with

02:51:26  22  their family member.

02:51:28  23         I don't think most of us sitting here today

02:51:31  24  know the mental health diagnoses of our family members

02:51:36  25  or the mental health diagnoses of our friends.  And a

02:51:40  1   great example of that is Soheil's brother.  He doesn't

02:51:44  2   know about the same instances that, per se, his mother

02:51:47  3   does or his father does.  We don't love or care about

02:51:51  4   people because of their diagnoses.  It's their

02:51:54  5   relationship to us.  And that is what the law permits

02:51:56  6   to come in.

02:51:58  7             A stray from that is absolutely prejudicial

02:52:01  8   in a case where on liability that is not looked at.

02:52:04  9   How do you teach a jury not to look at that when it's

02:52:08  10  not relevant?

02:52:12  11            There are other courts that have looked at

02:52:14  12  this issue, and they have found the way we think this

02:52:17  13  Court should find and we think would be appropriate to

02:52:19  14  keep us on the issues that are important.  And they

02:52:22  15  talk about -- here's one case that's instructive.  They

02:52:28  16  wanted to enter this evidence on the issue of

02:52:30  17  credibility, something the person said in their medical

02:52:33  18  records as to credibility.  This is the Northern

02:52:35  19  District of New York; it's the Harris v. Donahue case,

02:52:38  20  2017_WL_3638452.  Unfortunately I put the type on my

02:52:47  21  outline a little bit smaller than I can read.  I

02:52:50  22  apologize.

02:52:51  23            But what they were concerned about, what the

02:52:53  24  Court was really concerned about in that excessive force

02:52:56  25  case was that it might go to propensity to engage in the

02:53:01 1   type of activity engaged in.  The Court was very worried

02:53:05 2   about that.  And so it didn't let it in for that

02:53:07 3   reason.  And it also was concerned about the volume and

02:53:10 4   the consumption of time, and only let in specific

02:53:16 5   statements that specifically went to credibility, and

02:53:18 6   that was it.  There is not one specific statement in

02:53:21 7   these medical records that is going to tell you the

02:53:23 8   relationship at the time of Soheil's passing with his

02:53:26 9   mother and father.

02:53:28 10              THE COURT:  Okay.  Is there anything about

02:53:30 11  his mental health diagnosis that you think should come

02:53:33 12  in?

02:53:35 13              MS. BEIGHTOL: No.

02:53:36 14              THE COURT:  Nothing?

02:53:37 15              MS. BEIGHTOL: I mean, I think as it relates

02:53:39 16  to his mental health diagnoses, the thing that -- as far

02:53:42 17  as his relationship to his family, if a family member

02:53:46 18  says:  Yes, this is -- but that's not the testimony in

02:53:49 19  this case.  Certainly he was committed.  And those may

02:53:53 20  have been times that the family was not together.  But

02:53:55 21  that does not bear on his relationship to them as

02:53:59 22  people, as humans.

02:54:00 23              I have a parent in another state across the

02:54:03 24  country.  I don't have a lesser relationship with him

02:54:05 25  because he's in California and I'm in Raleigh.  We talk

```
02:54:09   1    twice a day half the time, not always, but --
02:54:12   2            THE COURT:  Is there anything the records
02:54:14   3    about a physical health diagnosis that you think should
02:54:17   4    come in?
02:54:18   5            MS. BEIGHTOL:  Not about physical health.
02:54:20   6    And there's no allegation from -- I should have said
02:54:22   7    this earlier, and I apologize for not bringing this to
02:54:25   8    the Court's attention.  But Edwards himself testified
02:54:29   9    very cleanly.  He could tell something was wrong with
02:54:33  10    Soheil, but he did not know or diagnose or determine at
02:54:36  11    that time it was mental health.  And because he did
02:54:39  12    not, that takes it out of the realm of anything that
02:54:43  13    should be discussed in this case.  Because unless he
02:54:46  14    perceived it to be mental health, unless he knew of a
02:54:49  15    mental health concern at that moment, it's not relevant.
02:54:51  16    And, in fact, not only is it not relevant, as the New
02:54:55  17    York Court mentioned, it could cause the jury to make a
02:54:59  18    decision based on that when it shouldn't be
02:55:02  19    understanding it at all.
02:55:09  20            THE COURT:  And tell me why you see it
02:55:11  21    differently.
02:55:12  22            MR. HARTZOG:  Well, Your Honor, again, we're
02:55:13  23    not introducing it for the purposes of saying Officer
02:55:16  24    Edwards knew this and acted in accordance with his
02:55:18  25    knowledge.  That's not why we're introducing it.
```

| | | |
|---|---|---|
| 02:55:21 | 1 | We're introducing it for damages -- from a damages |
| 02:55:25 | 2 | perspective because, as plaintiff said, it's the |
| 02:55:28 | 3 | relationship with his family.  And they get to talk |
| 02:55:30 | 4 | about that.  And if they're going to talk about the |
| 02:55:33 | 5 | relationship that he had with his family, then I think |
| 02:55:35 | 6 | we should be able to use that as cross-examination |
| 02:55:38 | 7 | material and say:  Well, you've had him committed.  You |
| 02:55:44 | 8 | knew he had mental health issues; he attacked you; he |
| 02:55:47 | 9 | attacked your family member, and you didn't -- you |
| 02:55:50 | 10 | kicked him out of the house because he was violent |
| 02:55:52 | 11 | towards you.  I think that -- |
| 02:55:55 | 12 | THE COURT:  Kicked him out of the house; |
| 02:55:56 | 13 | that's not a mental health issue.  That's a -- |
| 02:55:56 | 14 | MR. HARTZOG:  Correct. |
| 02:56:02 | 15 | THE COURT:  -- is it true that you -- |
| 02:56:03 | 16 | MR. HARTZOG:  Correct.  And some of that is |
| 02:56:04 | 17 | rebuttal.  I understand that. |
| 02:56:06 | 18 | But the mental health records have that type |
| 02:56:09 | 19 | of information in it. |
| 02:56:11 | 20 | THE COURT:  You could ask the witness:  Is |
| 02:56:12 | 21 | it true you committed him? |
| 02:56:15 | 22 | MR. HARTZOG:  Right.  But without knowing |
| 02:56:17 | 23 | why, I think it's. |
| 02:56:18 | 24 | THE COURT:  Why did you commit him? |
| 02:56:21 | 25 | And the witness would answer that question. |

02:56:24  1          MR. HARTZOG:  Well, presumably, but that's

02:56:27  2   what they're trying to keep out.

02:56:28  3          THE COURT:  But that's different from

02:56:29  4   medical records, isn't it?  This is asking a witness

02:56:33  5   about an event.

02:56:35  6          MR. HARTZOG:  I suppose if I asked them

02:56:36  7   about the event, if they say:  I don't remember that,

02:56:39  8   would I be able to use that record to refresh their

02:56:42  9   recollection or to impeach them?

02:56:45  10          I think these records are relevant for what

02:56:49  11   was his relationship with his family?  Because that's

02:56:52  12   what they're going to be introducing at trial.

02:56:55  13          THE COURT:  It seems like it's a couple of

02:56:57  14   steps removed.  What a doctor diagnoses somebody with

02:57:01  15   isn't necessarily an explanation of a relationship

02:57:07  16   between a child and a parent, right?

02:57:10  17          MR. HARTZOG:  I suppose in some sense that

02:57:12  18   is correct.   But the parents were the ones bringing him

02:57:17  19   in saying he attacked a family member or he was violent.

02:57:22  20   And I think that's what's contained in the medical

02:57:26  21   records is their statements about what he did.   So I

02:57:29  22   think --

02:57:29  23          THE COURT:  Is there a hearsay something or

02:57:32  24   other then if you're trying to get their statements in

02:57:37  25   through what a doctor writes down that maybe comes out

02:57:42  1  of an admission report that the doctor wasn't even

02:57:46  2  around to directly receive?

02:57:49  3              MR. HARTZOG:  Well, I think a statement made

02:57:50  4  for the purpose of receiving medical care --

02:57:53  5              THE COURT:  But it's not the person

02:57:54  6  receiving the medical care.  It's the parent thrusting

02:57:57  7  the medical care onto the child.

02:58:00  8              MR. HARTZOG:  Well, but -- they're the ones

02:58:04  9  who presumably will come in and testify that they had a

02:58:06  10  good relationship.  And I think we have the right to use

02:58:10  11  that as --

02:58:12  12              THE COURT:  I think you've got the right to

02:58:14  13  ask the witness when they describe a placid, serene,

02:58:19  14  non-turbulent relationship.  You've got a question, it

02:58:25  15  sounds like, you want to ask, which is:  Well, isn't it

02:58:27  16  true that he attacked you?

02:58:31  17              Well, yes.

02:58:32  18              And isn't it true that you committed him or

02:58:36  19  sought to have him committed?

02:58:37  20              Yes.

02:58:39  21              And then you kind of -- I don't see where

02:58:41  22  the medical records come in.

02:58:44  23              MR. HARTZOG:  I suppose they would only come

02:58:45  24  in at that point, Your Honor, if they denied that that

02:58:48  25  ever happened.  Then I would use that for impeachment

02:58:53  1   purposes.

02:58:53  2              THE COURT:  We'll have to see what happens,

02:58:54  3   won't we?  I don't want to get too far down the road.

02:58:57  4   But that's a preview.

02:59:00  5              Do you have anything to say?

02:59:01  6              MS. BEIGHTOL: I would just say that it's a

02:59:03  7   very slippery slope, Your Honor, because, again, first

02:59:07  8   of all, it can't be entered that he acted in conformity

02:59:11  9   therewith under 404.  And in addition, a conversation

02:59:17  10  with the parents that slides into mental health issues

02:59:20  11  that Defendant Edwards was not aware of at the time,

02:59:23  12  it's got to be very clear to this jury.

02:59:27  13             And I am concerned that this is not

02:59:29  14  something that a layperson can fully understand when

02:59:32  15  they're being presented evidence about a young man and

02:59:36  16  mental health concerns when the defendant himself was

02:59:40  17  not aware of those in the seconds at issue that he saw

02:59:46  18  this man for the first time.

02:59:49  19             THE COURT:  Have you proposed a limiting

02:59:50  20  instruction to me?  Because I'm giving you the chance

02:59:53  21  to do that.

02:59:55  22             MS. BEIGHTOL: I think we can talk about a

02:59:57  23  limiting instruction, certainly.  I still have the

02:59:59  24  concern, but we can certainly look into that.

03:00:01  25             THE COURT:  Without waiving your objection,

03:00:04 1    if you want to present a limiting instruction, because

03:00:08 2    depending on what that witness testifies to on direct,

03:00:14 3    I've indicated that I see that it could be proper for

03:00:24 4    defense counsel to ask some questions directly relating

03:00:29 5    to that person's relationship with their son, but only

03:00:33 6    for the purpose of damages.   And I would want to make

03:00:37 7    that clear to the jury.

03:00:39 8            Now, maybe I made a mistake in not

03:00:42 9    bifurcating this case.   But that's a double edged

03:00:47 10   sword.   But you did make a motion to where you sought

03:00:50 11   to have the punitive damages phase done separately, and

03:00:53 12   I said no.   So I'm trying to strike a balance here.

03:00:59 13           MS. BEIGHTOL: As far as your ruling, Your

03:01:01 14   Honor, I want to understand where you're going to order

03:01:05 15   and where the limiting instruction would come in.   I

03:01:07 16   mean, I guess my concern is:   Medical record, you know,

03:01:11 17   if you showed any family member of mine my medical

03:01:15 18   records, they're not going to have seen it before.

03:01:17 19   That would be for a doctor to talk about.   So on

03:01:19 20   impeachment it would need to be a more specific instance

03:01:23 21   that they either know or not know about.   I want to be

03:01:26 22   clear what the Court is ordering.

03:01:27 23           THE COURT: I think you ought to take a stab

03:01:29 24   at drafting, without waiving your objection, what would

03:01:34 25   be acceptable to you when the testimony turns on

cross-examination, say, of the mother, and defense
counsel has the opportunity to inquire whether or not
she was attacked by him or whether or not she committed
him.

And I would want it plain to the jury that
this is not to be considered by you -- and I'll be
working on this, too, in my instructions -- this is not
to be considered by you as to whether or not he acted in
conformity; rather, this is solely for the purpose of
should you find liability on the part of the defendant,
assessing the damages accruing from his death.
Something like that. You'll improve on that, I'm sure.

But I don't see any need for medical records
or mental health records of this type to come in unless
your witness on the stand says: I never committed him;
I never felt concerned enough about my safety to tell
him that he had to seek treatment, or, you know. And
then maybe some medical or mental health records of a
particular date and time redacted in some way might be
allowed to be introduced to impeach. But we're
certainly not there yet.

MS. BEIGHTOL: In other words, that that
would only come in for impeachment purposes. And as it
relates to the treating health care providers that
they've identified, I assume that we're talking about

03:03:43  1   that altogether; I assume those would also be excluded

03:03:46  2   likewise?

03:03:47  3            THE COURT:  Yes.  Unless there's something

03:03:49  4   that I'm not seeing here.  I just don't see it as

03:03:53  5   anything other than impeachment.

03:03:56  6            MS. BEIGHTOL:  And so it would be denied for

03:03:59  7   those three motions -- I'm sorry, it sounds like granted

03:04:04  8   for motions 1, 2, and 3 with the caveat -- that the

03:04:06  9   plaintiff's motion in limine is granted, 1, 2, and 3,

03:04:09  10  with the caveat that you are reserving the right to

03:04:13  11  permit it on impeachment with plaintiffs, and you will

03:04:17  12  consider an instruction proposed by plaintiff related to

03:04:21  13  that?

03:04:21  14           THE COURT:  I would always consider any

03:04:22  15  instruction about anything so long as it's timely.  And

03:04:26  16  I'm opening up the door to both sides, based on what

03:04:29  17  happens today, to supplement your jury instructions with

03:04:34  18  limiting instructions.

03:04:35  19           And I probably won't go so far as to just --

03:04:39  20  I would just say reserve ruling with respect to any

03:04:42  21  attempt to introduce a medical or mental health record

03:04:50  22  for an impeachment purpose.  I'm not saying it's going

03:04:53  23  to be okay.  I'm saying that that's the only door that's

03:04:56  24  open, unless defendant can show me something very

03:05:01  25  compelling, that that is the only door open to the

03:05:06  1    defendant right now would be impeachment.

03:05:09  2              MS. BEIGHTOL:  And would that go -- that same

03:05:11  3    ruling go for 1, 2, 3, and then 4, which is the prior

03:05:15  4    bad acts motion by plaintiff?

03:05:17  5              THE COURT:  Prior bad acts.  What do you

03:05:20  6    want to say about prior bad acts?

03:05:23  7              MR. HARTZOG:  Your Honor, I think the issue

03:05:28  8    is going to be, again, impeachment.  Plaintiff himself

03:05:33  9    has testified that Soheil was not a violent person, that

03:05:37  10   he wouldn't do something like this.  He's quoted in

03:05:41  11   news sources saying the same thing.  And we have

03:05:45  12   evidence that that is not the case.  So I think we

03:05:49  13   should be permitted to use those prior incidents as

03:05:53  14   impeachment material on the testimony that has

03:05:57  15   previously been given that he would not have done this

03:06:05  16   or that he was not a violent person.

03:06:08  17             MS. EDWARDS:  Your Honor, that is the exact

03:06:10  18   thing that is prohibited by Rule 404.  Impeachment is

03:06:14  19   for the purpose of showing that a witness is not

03:06:16  20   credible.  So unless there's an attack on the knowledge

03:06:22  21   and truthfulness of the witness -- for example, Siavash

03:06:27  22   Mojarrad, who is the plaintiff in this case, testified

03:06:29  23   at his deposition, was asked repeatedly about a number

03:06:32  24   of incidents that he didn't know about because he was

03:06:34  25   living in California.  So the concept that he could

03:06:36  1   say: I didn't know about this; no, I don't know what

03:06:40  2   you're talking about; my brother was a peaceful, nice

03:06:43  3   guy.

03:06:43  4               Did you ever get into arguments?

03:06:45  5               Yes, we did, of course. We're brothers. We

03:06:46  6   got into arguments. We had physical fights growing up.

03:06:49  7   That's what brothers do.

03:06:50  8               I have two boys myself, so I'm very familiar

03:06:53  9   with that.

03:06:54  10             The concept that the defendant could then

03:07:00  11   introduce any evidence of violence to contradict that,

03:07:03  12   that's not permissible, because he didn't know about

03:07:05  13   that evidence. So if you can prove he knew about that

03:07:08  14   evidence, that's one thing. That's impeachment. But

03:07:10  15   if you're not able to show that he knew about it, then

03:07:13  16   he's not being impeached; you're just trying to use a

03:07:16  17   back door to introduce the evidence for impermissible

03:07:19  18   404 purposes.

03:07:21  19             THE COURT: What's your answer?

03:07:22  20             MR. HARTZOG: Well, this is not an isolated

03:07:24  21   incident. There are multiple incidents of violence by

03:07:30  22   the decedent in this case.

03:07:32  23             And I think it also goes to family

03:07:34  24   relations. If he was not aware of this, I think we

03:07:39  25   have the right to say: So you weren't aware that he was

03:07:41  1   doing all these things?  You didn't spend time with

03:07:44  2   him?  You weren't with him?  And I think that goes,

03:07:47  3   again, to damages and impeachment.

03:07:50  4           THE COURT:  I don't think this particular

03:07:52  5   circumstance goes so much to damages that the prejudice

03:07:57  6   to the plaintiff is outweighed by the evidence for the

03:08:13  7   purpose you're seeking.  I think that's a stretch.  I

03:08:18  8   think the prejudice side of the scale tips as far as

03:08:24  9   other outbursts not directed to family members but to

03:08:30  10  law enforcement.  And that was affecting someone's

03:08:35  11  relationship?  I just don't get that.  So I think

03:08:39  12  that's a stretch.

03:08:41  13          MR. HARTZOG:  So just so I'm clear, we are

03:08:44  14  permitted to use incidents where his own family was

03:08:47  15  involve and was aware of the incident, but other

03:08:49  16  incidents would not come in?

03:08:52  17          THE COURT:  All right.  You're now saying

03:08:54  18  if the family knew about something that had happened

03:08:57  19  with law enforcement?

03:08:58  20          MR. HARTZOG:  If we can establish that the

03:09:00  21  family knew about it.

03:09:01  22          THE COURT:  I don't think so.

03:09:03  23          MR. HARTZOG:  Okay.

03:09:06  24          THE COURT:  But if it's something this

03:09:08  25  defendant did to his family directly, that's another

03:09:14  1  thing.  But I just think the prejudice to the plaintiff
03:09:21  2  of the effort to establish in front of the jury that the
03:09:26  3  particular witness knew about something that happened in
03:09:29  4  a totally different circumstance, that, in and of
03:09:35  5  itself, is concerning to me.
03:09:36  6       And then the fact that it would have
03:09:38  7  happened to law enforcement suggests that it's being
03:09:43  8  offered to show the plaintiff had this propensity or
03:09:50  9  character.  And I understand that to be the type of
03:09:53  10 evidence this rule is meant to exclude.
03:09:57  11       But do you have some case law other than
03:09:59  12 what has been noted or some other argument?
03:10:04  13       MR. HARTZOG:  Again, Your Honor, we intend
03:10:07  14 to use it primarily as impeachment and damages evidence.
03:10:10  15       THE COURT:  Well, you trod carefully if you
03:10:15  16 think it's impeachment.  If an outburst unrelated to a
03:10:19  17 witness, as between the plaintiff and law enforcement,
03:10:22  18 you'd better call me out into the hall or at sidebar if
03:10:27  19 you really think it needs to come in.
03:10:30  20       MR. HARTZOG:  Understood, Your Honor.
03:10:32  21       MS. EDWARDS:  Your Honor, may I ask for a
03:10:33  22 piece of clarification on that?  Because there are a
03:10:36  23 couple of instances in which Soheil Mojarrad
03:10:42  24 unfortunately did harm to himself.  It includes an
03:10:49  25 incident where he was self-harming and an incident

03:10:55  1  where, although it's unclear, he had an overdose on

03:11:00  2  medication.  It's unclear whether it was intentional.

03:11:03  3  There was an incident where he set fire to his own car.

03:11:06  4  Are those the types of prior acts that, because they

03:11:09  5  don't have a bearing on the relationship with his

03:11:11  6  family, are also excluded?

03:11:19  7          THE COURT:  Do you want to be heard on those

03:11:20  8  three specific incidences?

03:11:27  9          MR. HARTZOG:  Your Honor, I will just say

03:11:29  10  that in our brief we cited a Tenth Circuit decision that

03:11:34  11  does say that defendant should be entitled to present

03:11:40  12  evidence of someone's character from which the jury

03:11:42  13  could infer that they were the aggressor in a situation.

03:11:46  14  So I will cite that law.

03:11:49  15          THE COURT:  What was the type of lawsuit in

03:11:51  16  that Tenth Circuit case?

03:11:56  17          MR. HARTZOG:  That was a case where -- it

03:12:04  18  was a law enforcement case, use of force, use of deadly

03:12:07  19  force.

03:12:08  20          And the Tenth Circuit held that evidence

03:12:13  21  should have been allowed to come in that the officer was

03:12:15  22  acting in self-defense, that would tend to show that the

03:12:21  23  individual decedent was the aggressor in the situation.

03:12:26  24  So I think some of the prior incidents with law

03:12:29  25  enforcement where he attacked law enforcement would come

03:12:33  1   in under that rationale.

03:12:34  2           THE COURT:  Remind me of the cite to that

03:12:37  3   Tenth Circuit case.

03:12:38  4           MR. HARTZOG:  Yes, Your Honor.   It is

03:12:43  5   Perrin v. Anderson 784 F.2d 1040.   And we discuss that

03:12:50  6   in our trial brief on page 3.

03:12:50  7           THE COURT: Okay.  I'll go back and look at

03:13:05  8   that.

03:13:05  9           MS. EDWARDS:  Your Honor, I would just posit

03:13:09  10  for the record that I really don't think self-harm is

03:13:11  11  indicative of being an aggressor towards someone else.

03:13:15  12          THE COURT:  There's no Fourth Circuit case

03:13:17  13  adopting the interpretation that the Perrin court

03:13:21  14  applied to 404(a).  And the fact that 404(a) got amended

03:13:26  15  following that decision seems to me to dilute your

03:13:29  16  argument.  So I'm holding the course here.

03:13:33  17          MR. HARTZOG:  Thank you, Your Honor.

03:14:01  18          THE COURT:  Exclusion of any reference to

03:14:03  19  determinations regarding the facts by Lorrin Freeman,

03:14:09  20  the Raleigh Police Department, and/or internal affairs.

03:14:20  21  So what's your response?

03:14:22  22          MS. EDWARDS:  And, Your Honor, that was our

03:14:25  23  motion.  Essentially two-fold.  Number one, I'll start

03:14:30  24  with the internal affairs.  The internal affairs

03:14:33  25  decision regarding Officer Edwards, it essentially goes

| | | |
|---|---|---|
| 03:14:40 | 1 | to the final question in this case. It determined that |
| 03:14:43 | 2 | he reasonably used force. And it's important, I think, |
| 03:14:48 | 3 | that the Raleigh Police Department policy mirrors the |
| 03:14:51 | 4 | case law in the Fourth Circuit regarding excessive force |
| 03:14:55 | 5 | and when force is reasonable. And the findings in that |
| 03:14:58 | 6 | case, the ultimate findings were that he acted within |
| 03:15:03 | 7 | policy, and thus reasonably used force. And that |
| 03:15:06 | 8 | invades the province of the jury. |
| 03:15:08 | 9 | The same is true of Lorrin Freeman's |
| 03:15:11 | 10 | findings, which were essentially the exact same. And |
| 03:15:13 | 11 | they're actually quoted within the Raleigh Police |
| 03:15:16 | 12 | Department's Internal Affairs decision. |
| 03:15:20 | 13 | And then on top of that, I think it's -- |
| 03:15:24 | 14 | these are completely different standards, especially |
| 03:15:28 | 15 | with respect to the decision that the prosecutor makes. |
| 03:15:31 | 16 | I mean, the prosecutor determines whether she can prove |
| 03:15:33 | 17 | beyond a reasonable doubt that he's guilty of murder or |
| 03:15:40 | 18 | some lower offense. And I think that's very confusing |
| 03:15:43 | 19 | to the jury to introduce evidence like that because it |
| 03:15:46 | 20 | indicates (A) it indicates sort of a seal of approval on |
| 03:15:57 | 21 | the behavior, but it's looking at it from a much higher |
| 03:16:00 | 22 | criminal standard than we have here. |
| 03:16:02 | 23 | THE COURT: Let me ask you this: Are you |
| 03:16:03 | 24 | going to argue that the defendant failed to follow |
| 03:16:06 | 25 | policies and procedures with respect to dealing with a |

03:16:09  1  suspect that presented mental health issues?

03:16:17  2          MS. EDWARDS:  We did not plan to, Your

03:16:19  3  Honor, because we did -- I mean, assuming -- we would

03:16:23  4  argue that, yes, if mental health issues were

03:16:26  5  introduced.  But since that evidence is excluded, no,

03:16:29  6  we would not argue that because that would be equally

03:16:32  7  confusing to the jury.

03:16:34  8          THE COURT:  So I think the lay of the land,

03:16:40  9  as it is now, this part should be allowed.  I don't see

03:16:44 10  Lorrin Freeman's investigation or the Internal Affairs

03:16:49 11  unit -- I don't see it tipping the scale as more

03:16:53 12  probative than prejudicial.  I think it also adds time

03:16:57 13  to this trial and kind of confuses the jury.

03:17:05 14          MR. HARTZOG:  Could I make one small point?

03:17:07 15  I do think -- I'll obviously defer to whatever ruling

03:17:12 16  the Court makes.  I do think we should be able to say

03:17:14 17  that he acted in accordance with policy, and that's what

03:17:18 18  this internal affairs decision was reviewing.

03:17:21 19          And I also want to point out that they are

03:17:24 20  also seeking to introduce a reprimand that Officer

03:17:28 21  Edwards got for not turning on his body camera.  And if

03:17:30 22  they're going to be introducing evidence of, you know,

03:17:35 23  they determined he violated policy here, then I think we

03:17:38 24  should be able to introduce evidence that shows:  But

03:17:40 25  not with respect to the shooting itself.  So.

03:17:43  1          I think it would be unfair for them to be

03:17:47  2    able to introduce reprimands without us

03:17:51  3    introducing the --

03:17:52  4          THE COURT:  Let's go back and look at it

03:17:53  5    from that perspective.

03:17:55  6          MS. EDWARDS:  Your Honor, if I may.  It is

03:17:59  7    true that Officer Edwards didn't turn his body camera

03:18:02  8    on.  And we're in 2023.  It's not like the jury isn't

03:18:06  9    going to know that officers are equipped with body

03:18:10  10   cameras, especially in the Raleigh Police Department.

03:18:13  11   We don't need to introduce evidence that he was formally

03:18:16  12   reprimanded, as long as we can introduce evidence -- as

03:18:19  13   long as we can ask him, and he's been asked this before,

03:18:22  14   whether he failed to turn his body camera on.  It

03:18:25  15   doesn't matter to us.  The failure itself is what

03:18:27  16   matters.

03:18:28  17         THE COURT:  Okay.  So they're not going to

03:18:31  18   be making a big deal out of a reprimand for not turning

03:18:36  19   on his body camera.

03:18:38  20         MR. HARTZOG:  They have also sought to

03:18:39  21   introduce evidence of prior internal affairs

03:18:43  22   investigations of Officer Edwards that I also think

03:18:45  23   should not come in.  But if they do, then I think the

03:18:47  24   internal affairs investigation into this incident in all

03:18:50  25   fairness should also come in, because if they're saying

03:18:53  1   he's been reprimanded in the past for these other --

03:18:58  2   what were relatively minor incidents, then I think it

03:19:02  3   would be fair for the jury to hear:  But they didn't

03:19:05  4   reprimand him for this.

03:19:08  5              So if all those other IAs are kept out, then

03:19:11  6   I understand.   But if those come in, then I think this

03:19:14  7   should come in.

03:19:14  8              THE COURT:  So clearly you would be making

03:19:16  9   an objection if that question was asked of the witness?

03:19:20  10             MR. HARTZOG:  We have, and we've made a

03:19:22  11  motion in limine on that front as well, Your Honor.

03:19:24  12             THE COURT:  If that was an issue -- or is

03:19:26  13  that an issue?   Are you going to be trying to introduce

03:19:29  14  that?

03:19:29  15             MS. EDWARDS:  Well, Your Honor, yes.  And I

03:19:34  16  think we can limit what we would actually introduce.

03:19:37  17  But it's for a completely different purpose.   The

03:19:40  18  purpose for this would be punitive damages.   I mean, it

03:19:44  19  is a question, and under the North Carolina pattern jury

03:19:46  20  instructions it's very clear that one of the things that

03:19:50  21  the jury must consider in whether and what to award in

03:19:55  22  terms of punitive damages is whether there has been

03:19:58  23  similar past conduct.   It's crystal clear.  If we

03:20:03  24  have -- and I don't have it in front of me, but if we

03:20:08  25  have instances of similar past conduct, and we could

03:20:11 1 submit it to you even to review for that determination,

03:20:14 2 that is what we would seek to admit. Not every IA

03:20:17 3 investigation or every complaint ever. But we think

03:20:20 4 that is relevant.

03:20:24 5 MR. HARTZOG: And for the same reason, Your

03:20:25 6 Honor, if they're going to be arguing punitive damages

03:20:28 7 to the jury and say: Look, he's been -- look at all

03:20:31 8 these issues he's had. Which he hasn't had that many.

03:20:35 9 But if they're trying to point to his past issues to

03:20:38 10 support punitive damages for this case, I think it's

03:20:41 11 only fair for him to be able to say: Okay, they looked

03:20:44 12 at, you know, there's alcohol at a football game,

03:20:47 13 something like that. But in this particular case they

03:20:49 14 found that I didn't violate the policy. So if they're

03:20:52 15 going to point to past policy violations to support a

03:20:55 16 punitive damages argument, I think it's only fair for

03:20:57 17 the jury to hear what the internal affairs department

03:21:00 18 felt about this incident.

03:21:01 19 THE COURT: But with respect to Ms. Freeman,

03:21:04 20 the decision not to bring criminal charges --

03:21:07 21 MR. HARTZOG: I'll withdraw that.

03:21:10 22 THE COURT: All right. So Lorrin Freeman is

03:21:12 23 out.

03:21:13 24 So we're talking about the Raleigh Police

03:21:17 25 Department?

03:21:17  1          MR. HARTZOG:  Correct, Your Honor.  And

03:21:19  2  that's if the other incidents should come in, then I

03:21:21  3  think it's only fair that this come in, particularly if

03:21:26  4  they're going to be arguing from a punitive damages

03:21:28  5  perspective that he should be punished in part because

03:21:30  6  of these past IA investigations, for the jury to hear

03:21:34  7  what the IA investigation into this particular incident

03:21:36  8  found.

03:21:46  9          MS. EDWARDS:  Your Honor, what about this

03:21:47 10  compromise?  We, instead of bringing in the IA

03:21:54 11  investigations, which we may or may not even want to do,

03:21:58 12  candidly; it's just a lot, and we would not want to risk

03:22:03 13  confusing the jury.  We think the issues here are

03:22:06 14  relatively simple and straightforward.  But could I ask

03:22:09 15  Defendant Edwards about it when he's on the stand?  Can

03:22:13 16  I ask him:  Have you ever been reprimanded before?  And

03:22:16 17  just get his answer.  And use those documents if needed

03:22:20 18  for impeachment purposes?

03:22:27 19          MR. HARTZOG:  Your Honor, that wouldn't be

03:22:28 20  impeachment.  She's affirmatively introducing the

03:22:31 21  evidence to him.

03:22:32 22          THE COURT:  Well, if he said no.

03:22:34 23          MR. HARTZOG:  But if he said yes, would we

03:22:35 24  just leave it with the jury unknown what those were?

03:22:38 25  That seems prejudicial to Officer Edwards.

03:22:46  1          THE COURT:  Well, you've got cross, don't

03:22:49  2  you?

03:22:50  3          MR. HARTZOG:  I suppose, Your Honor.  But

03:22:51  4  what that means is, in effect, all she has to do is say:

03:22:54  5  Have you ever been reprimanded?  And all of a sudden all

03:22:57  6  of this evidence comes in, which we think should not.

03:23:00  7  But if they're doing that, then, again, I think if he's

03:23:03  8  been reprimanded before:  Were you reprimanded for this

03:23:07  9  incident?  That should be a fair question in response

03:23:09  10  to that.  And I think if you're going to bring in his

03:23:14  11  past IA stuff, it would be totally unfair to bring in

03:23:16  12  all past stuff and not this one that the jury is

03:23:19  13  supposed to be considering.

03:23:23  14          THE COURT:  Were you reprimanded for this

03:23:26  15  incident?

03:23:27  16          No.

03:23:28  17          MR. HARTZOG:  He was not.  Well, he was for

03:23:31  18  the body camera, which we think should not come in.  And

03:23:35  19  they said they now don't intend to introduce that.  So

03:23:40  20  I think that would also be a backdoor way to bring that

03:23:41  21  in, which should not come in.

03:23:41  22          THE COURT:  It really isn't a big deal, is

03:23:44  23  it, in the scheme of things?

03:23:45  24          MR. HARTZOG:  I think it is, Your Honor,

03:23:46  25  because what they're trying to imply is that he did this

03:23:49  1    intentionally and that he didn't turn on the body

03:23:51  2    camera.  And he can explain why he didn't.  I'm not

03:23:57  3    even sure -- and we've got a motion in limine on whether

03:24:01  4    he turned on the body camera or not.

03:24:03  5            It's not relevant at all to whether he used

03:24:06  6    excessive force.  It just has no bearing on the jury's

03:24:10  7    analysis of was excessive force used in this case?  So

03:24:13  8    I'm not even sure what issue the body camera goes to

03:24:16  9    that's properly before the jury.  So I don't think that

03:24:19  10   should come in in the first place because it has zero to

03:24:22  11   do with whether he used excessive force and can only

03:24:25  12   serve to confuse the jury.  It's not probative to

03:24:31  13   anything.

03:24:31  14           THE COURT:  It kind of sets the stage,

03:24:34  15   though, doesn't it.  It kind of adds to the story

03:24:36  16   that's being told.  It explains something or the lack

03:24:40  17   of something, doesn't it?

03:24:42  18           MR. HARTZOG:  Well, I'm not sure --

03:24:46  19           THE COURT:  So you're not speculating:  What

03:24:48  20   would the camera -- what would the film be?

03:24:51  21           MR. HARTZOG:  Well, I suppose we could

03:24:53  22   stipulate that there is no body camera footage.  And

03:24:56  23   that answers that question for the jury.

03:24:57  24           But they're trying to imply some wrongdoing

03:24:59  25   by him not turning it on, and I think that's what's

03:25:02  1  inappropriate.

03:25:07  2          THE COURT:  Well, you have cross, don't you?

03:25:09  3          MR. HARTZOG:  I do, Your Honor.  But I think

03:25:11  4  once we're in cross on that, we're already in that

03:25:14  5  prejudicial territory of this piece of evidence that is

03:25:17  6  not probative, that is entirely designed to imply to the

03:25:21  7  jury that he did something wrong by not turning on his

03:25:24  8  body camera.

03:25:25  9          THE COURT:  Well, doesn't it also --

03:25:27  10  couldn't it also be used to explain a certain state of

03:25:41  11  mind?

03:25:43  12          MR. HARTZOG:  I think he will testify to his

03:25:45  13  state of mind, that he got out of the car, and he was

03:25:47  14  not expecting to find the guy.  I don't think whether

03:25:50  15  he turned on his body camera or not has any bearing on

03:25:54  16  his state of mind.

03:25:55  17          THE COURT:  Have you ever not turned your

03:25:57  18  body camera on?  How many --

03:25:59  19          MR. HARTZOG:  We're getting into past

03:26:01  20  conduct.  And I just think it's entirely irrelevant

03:26:05  21  because if the jury is sitting here thinking:  Well, he

03:26:08  22  must have -- there's a reason he didn't turn on his body

03:26:11  23  camera.  Then that's the prejudice to Officer Edwards.

03:26:14  24  And I think it's just not at all related to whether he

03:26:17  25  used excessive force.

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
| 03:26:18 | 1  | THE COURT:  Well, if he didn't turn it on              |
| 03:26:20 | 2  | because it had been at the shop the last week, and he'd |
| 03:26:24 | 3  | just gotten used to not having it, you know, wouldn't   |
| 03:26:27 | 4  | that explain it?   I mean --                            |
| 03:26:29 | 5  | MR. HARTZOG:  I guess my point, Your Honor,             |
| 03:26:30 | 6  | is:  We shouldn't have to explain it because it's not   |
| 03:26:32 | 7  | relevant.                                               |
| 03:26:35 | 8  | THE COURT:  I'm not -- do you think it's                |
| 03:26:37 | 9  | relevant?                                               |
| 03:26:38 | 10 | MS. EDWARDS:  Yes, Your Honor.   I think                |
| 03:26:39 | 11 | there is a huge difference between a fact that is       |
| 03:26:41 | 12 | prejudicial and a fact that is bad for your client.     |
| 03:26:44 | 13 | And I think that's what we're confronted with here.     |
| 03:26:46 | 14 | This is not a good fact for Defendant Edwards.   We     |
| 03:26:49 | 15 | concede that.   That doesn't make it prejudicial.   It's |
| 03:26:51 | 16 | relevant, and it goes to a number of things.   But in an |
| 03:26:54 | 17 | excessive force case it goes to credibility; it goes to |
| 03:26:57 | 18 | intent, motive, opportunity, all the things that we know |
| 03:27:00 | 19 | under 404 --                                            |
| 03:27:02 | 20 | THE COURT:  This comes in.   It's an                    |
| 03:27:04 | 21 | intrinsic part of the facts of that time.   And it comes |
| 03:27:11 | 22 | in.  The significance of which, you know, that's up to  |
| 03:27:13 | 23 | the jury.   And it may be no significance.   But it     |
| 03:27:19 | 24 | comes in.                                               |
| 03:27:20 | 25 | MS. EDWARDS:  Your Honor, if I may, if it's             |

03:27:23  1  helpful to streamline this former internal affairs,

03:27:28  2  we're content with no internal affairs.

03:27:30  3          THE COURT:  Okay.

03:27:32  4          MS. EDWARDS:  That's fine.  We don't need to

03:27:34  5  talk about it.

03:27:35  6          MR. HARTZOG:  I do think that resolves a lot

03:27:37  7  of that issue.

03:27:38  8          THE COURT:  Yes.

03:27:39  9          MR. HARTZOG:  I will say they are also

03:27:40  10  intending to introduce a prior list of use of forces,

03:27:45  11  which has no context to it other than a number, which I

03:27:49  12  also believe is prejudicial.  It's along the same lines

03:27:55  13  of the former IA files would be, which is:  Has he used

03:27:58  14  force in any way before?  And they have to document that

03:28:01  15  they used force.  That could be grabbing someone's arm

03:28:05  16  to handcuff them, whether it's justified/not justified

03:28:11  17  is not reflected in the list or number of use of forces.

03:28:15  18          THE COURT:  Who is going to be testifying to

03:28:17  19  that?

03:28:17  20          MR. HARTZOG:  Well, the plaintiffs have

03:28:18  21  listed it as an exhibit.  I don't know who they intend

03:28:21  22  to introduce it through.

03:28:24  23          MS. EDWARDS:  Well, I suppose we would be

03:28:27  24  giving it to the defendant in terms of who we would be

03:28:31  25  introducing it through.  And he certainly could

03:28:34  1   explain.   If there was no issue with them with respect,

03:28:43  2   you know, being deemed reasonable, that wouldn't be a

03:28:45  3   problem for him, I would suppose.

03:28:47  4           MR. HARTZOG:  We're talking about judicial

03:28:50  5   economy.   We're going to have to go through each time

03:28:53  6   he's ever used force and what it was and why he used it?

03:28:55  7   And without doing that, the implication is left for the

03:28:59  8   jury that it's unauthorized or excessive in some way.

03:29:04  9           THE COURT:  How many times are there?

03:29:08  10          MR. HARTZOG:  I don't have the number in

03:29:10  11  front of me, Your Honor.  Give me one second.

03:29:24  12          Sixty-five Your Honor.

03:29:27  13          THE COURT:  How many?

03:29:28  14          MR. HARTZOG:  Sixty-five in his 23-year

03:29:30  15  career.

03:29:32  16          THE COURT:  Are you going to go through each

03:29:34  17  one?

03:29:34  18          MR. HARTZOG:  Your Honor, that's my point.

03:29:36  19  Do we have to?  Because I think just saying:  Oh, you

03:29:39  20  used force 65 times before without context is

03:29:42  21  prejudicial.   But if that comes out, then we have to go

03:29:45  22  through and say:  Okay, let's talk about number one,

03:29:48  23  number two, number three.  And I just don't think it's

03:29:53  24  relevant at all.

03:29:55  25          THE COURT:  How do you, if you were allowed

03:29:59  1    to introduce that evidence, how would you go about doing
03:30:02  2    it?
03:30:02  3             MS. EDWARDS:  Well, I suppose, Your Honor,
03:30:04  4    that I would, I think -- I would limit it to -- I would
03:30:09  5    limit what we would be looking at to more recent uses of
03:30:14  6    force because I actually think it's much more relevant.
03:30:18  7    He had been on the force for 23 years; what he's likely
03:30:21  8    to do in year one is different from what he's likely to
03:30:26  9    do in year 18, 20.  So I think some time limitation may
03:30:31  10   be appropriate.
03:30:32  11            THE COURT:  What do you think?  How many
03:30:33  12   years?
03:30:37  13            MS. EDWARDS:  Ten, maybe.
03:30:39  14            THE COURT:  Ten years?
03:30:41  15            MR. HARTZOG:  Your Honor, I think we're
03:30:42  16   getting into 404 territory.  They're trying to -- or
03:30:45  17   406, trying to show:  Well, he used force before, so
03:30:48  18   therefore he must have used force here.  Which we agree
03:30:52  19   he used force.  That's why I'm not sure it's relevant
03:30:55  20   in the first place.  But they're trying to paint a
03:30:58  21   picture here based on misleading information.  There's
03:31:02  22   no evidence in the record or in their pretrial
03:31:04  23   disclosures about what these incidents are.
03:31:08  24            THE COURT:  Well --
03:31:09  25            MR. HARTZOG:  They just want to show a

03:31:14  1  statistic saying:  Here's how many.

03:31:17  2           THE COURT:  And they were justified?

03:31:20  3           MR. HARTZOG:  I believe they were.   But

03:31:21  4  we'd have to go through each one to --

03:31:25  5           THE COURT:  Well, that leads to that.

03:31:27  6           MR. HARTZOG:  And their burden would have

03:31:28  7  been to show in discovery that these were sufficiently

03:31:33  8  related to the incident and that there was some

03:31:37  9  wrongdoing there.   I don't think you can just print up

03:31:42  10  a list and say:  Okay, here's the 65 times you used

03:31:45  11  force in your career, and just let the jury sit with

03:31:48  12  that.   I think that's prejudicial.

03:31:50  13           THE COURT:  Would an expert be likely to

03:31:53  14  testify, given the type of police work your client's

03:31:58  15  done and the length of time, that it would probably be

03:32:01  16  reasonable to have that many, if not more, documented

03:32:05  17  examples?

03:32:06  18           MR. HARTZOG:  I think that would be

03:32:07  19  appropriate for an expert, but that's not what any

03:32:09  20  expert in this case to date has testified to.   There is

03:32:12  21  no expert testimony on any prior specific uses of force.

03:32:16  22  And that's what I think is the issue is that you can't

03:32:19  23  just introduce a number and introduce a report saying he

03:32:24  24  used force this many times without some additional

03:32:28  25  information.

| | | |
|---|---|---|
| 03:32:29 | 1 | THE COURT: Well, does it backfire on the |
| 03:32:31 | 2 | plaintiff if the follow-up question is: Any documented |
| 03:32:38 | 3 | use of force subject to review and analysis by the |
| 03:32:41 | 4 | internal affairs unit as to whether or not it was |
| 03:32:44 | 5 | appropriate? |
| 03:32:45 | 6 | Yes. |
| 03:32:47 | 7 | MR. HARTZOG: Perhaps it does, Your Honor, |
| 03:32:48 | 8 | but then we're opening the door back up to all that |
| 03:32:50 | 9 | prior IA stuff. It just seems like -- |
| 03:32:53 | 10 | THE COURT: Then the next question would be: |
| 03:32:55 | 11 | Well, were you disciplined as a result of any of these |
| 03:33:01 | 12 | 65 uses of force that were each separately investigated? |
| 03:33:06 | 13 | No. |
| 03:33:07 | 14 | I mean doesn't that kind of shoot their |
| 03:33:09 | 15 | position in the foot a little bit, that he's been -- |
| 03:33:13 | 16 | MR. HARTZOG: Somewhat, Your Honor, but the |
| 03:33:15 | 17 | jury is still left with this implication of 65 uses of |
| 03:33:19 | 18 | force, and a jury hears "use of force," and they think |
| 03:33:22 | 19 | something different than what is it. It could be as |
| 03:33:25 | 20 | simple as putting someone in handcuffs or grabbing |
| 03:33:29 | 21 | someone's shoulder to get them to talk to you. |
| 03:33:31 | 22 | THE COURT: Which you would elicit from him. |
| 03:33:33 | 23 | MR. HARTZOG: Well, again, Your Honor, |
| 03:33:34 | 24 | that's what I'm saying we shouldn't have to do because |
| 03:33:37 | 25 | we have to go back through, and it's just we have to go |

03:33:39   1    through each one of these.

03:33:41   2                    THE COURT:  So it just comes back to 404(b)?

03:33:44   3                    MR. HARTZOG:  I think so, Your Honor, and it

03:33:46   4    just not being -- a number not being relevant.

03:33:50   5                    MS. EDWARDS:  Your Honor, we would not be

03:33:52   6    introducing this evidence to show conformity.  That's

03:33:56   7    not the point of it.  It can show motive, intent, plan,

03:34:01   8    knowledge; it can show those things.  It can also be an

03:34:04   9    important indicator of past similar conduct for punitive

03:34:09   10   damages purposes.

03:34:10   11                   THE COURT:  But then you're going to have to

03:34:12   12   go and you're going to have to go through each of the

03:34:15   13   incidences, aren't you, to know whether it falls into

03:34:18   14   that category of past similar wrongdoing, right?

03:34:23   15                   MS. EDWARDS:  Potentially within some

03:34:25   16   limited timeframe, I would say.

03:34:27   17                   THE COURT:  So you think ten years, but you

03:34:28   18   probably want to look at it after this hearing, think

03:34:31   19   about it a little bit, get your thoughts together.  And

03:34:34   20   then this could be something we take up at another time.

03:34:41   21   What do you think?

03:34:42   22                   MS. EDWARDS:  Yes, Your Honor, that would be

03:34:43   23   appropriate.

03:34:44   24                   THE COURT:  And you all talk.  Maybe you

03:34:45   25   can at least narrow it down a little bit, and I can make

03:34:48　1　a decision.

03:34:52　2　　　　　Okay.  So what else can we do today?  From

03:34:57　3　defendant's side, what would you really like to focus on

03:35:00　4　in the time we've got left?

03:35:04　5　　　　　MR. HARTZOG:  Well, I suppose, Your Honor,

03:35:08　6　we should talk about our motion for special

03:35:10　7　interrogatories.

03:35:11　8　　　　　THE COURT:  Yes, let's do that.

03:35:15　9　　　　　Now, I'm a little confused.  You've

03:35:19　10　proposed, as I understand, it these special

03:35:22　11　interrogatories for the purpose of preserving the

03:35:26　12　ultimate issue for decision by me, right?

03:35:31　13　　　　　MR. HARTZOG:  Correct, Your Honor.

03:35:31　14　　　　　THE COURT:  But the way I read some of your

03:35:33　15　proposed jury instructions, you would have the Court

03:35:36　16　instructing the jury on the question of qualified

03:35:38　17　immunity.

03:35:39　18　　　　　MR. HARTZOG:  Well, I will concede that may

03:35:43　19　be an error, because I think qualified immunity is an

03:35:47　20　issue for the Judge.  Which is why I think these

03:35:49　21　special interrogatories are the correct way to handle

03:35:52　22　qualified immunity.

03:35:53　23　　　　　THE COURT:  So you do believe that that's

03:35:54　24　for me to decide?

03:35:55　25　　　　　MR. HARTZOG:  I do, Your Honor.

03:35:57 1          THE COURT:  So if I find some jury

03:35:58 2    instructions where you seem to want me to instruct the

03:36:00 3    jury as to that, I'm just going to disregard them.

03:36:03 4          MR. HARTZOG:  I think the ultimate issue of

03:36:06 5    qualified immunity is a question of law.  But I think

03:36:09 6    in order to make that decision, the facts need to be

03:36:12 7    fleshed out by fact finders to allow you to make that

03:36:15 8    decision.

03:36:16 9          THE COURT:  Okay.  What is plaintiff's

03:36:19 10   thought on all that?

03:36:21 11         MS. EDWARDS:  Well, Your Honor, a few

03:36:24 12   things.  Our opposition sets this forth in more detail.

03:36:29 13   But obviously special interrogatories go to the issue of

03:36:33 14   qualified immunity, but more specifically to the prong

03:36:36 15   of clearly established law because the constitutional

03:36:39 16   violation is part and parcel with the jury determination

03:36:44 17   about whether there was a 1983 violation to begin with.

03:36:48 18   So the real question that any special interrogatory

03:36:53 19   would want to get at is whether there was a violation of

03:36:56 20   clearly established law.

03:36:57 21         And candidly, I don't think the defendant

03:37:01 22   has pointed to a single factual question that, if

03:37:04 23   resolved in his favor, would result in a finding of -- I

03:37:12 24   guess, a finding that the law was not clearly

03:37:13 25   established as to this particular issue.  So in our

03:37:16  1  mind there's no need for special interrogatories.

03:37:20  2          Let's start with this:  There's no need for

03:37:22  3  special interrogatories because the analysis is subsumed

03:37:25  4  by the ultimate question to the jury:  Was there a 1983

03:37:29  5  violation here?  Which wouldn't be put that way,

03:37:31  6  obviously, but:  Was there excessive force that was

03:37:34  7  used?  And obviously you would instruct the jury on

03:37:38  8  what that would mean.

03:37:39  9          But the defendant hasn't identified a single

03:37:42 10  factual question.  But also the way that these

03:37:44 11  questions are written is particularly problematic.  I'm

03:37:48 12  happy to go through one by one.

03:37:50 13          So for the first one, the question is:  Did

03:37:54 14  Soheil Mojarrad hold a knife?

03:37:56 15          And for the second one -- because these are

03:37:58 16  sort of similar in some ways, a lot of the case law

03:38:01 17  falls squarely within both of these: Did Soheil Mojarrad

03:38:05 18  fail to comply with Officer Edwards's orders?

03:38:07 19          Well, actually, the Fourth Circuit recently

03:38:10 20  held -- and I know this wouldn't be clearly established

03:38:13 21  law, but it's held many times that noncooperation with

03:38:16 22  law enforcement has never given officers carte blanche

03:38:20 23  to use deadly force against a suspect.

03:38:23 24          Luckily for many of us, neither has being

03:38:26 25  armed with a small knife.  That's what they said in the

03:38:29  1  <u>Estate of Jones by Jones v. City of Martinsburg</u>, but it

03:38:33  2  also looked at the holding in <u>Connor v. Thompson</u>, the

03:38:37  3  holding in <u>Wilson v. Prince George's County</u>.  Those

03:38:40  4  have plainly established that failure to --

03:38:45  5  noncompliance and possession of a weapon, particularly a

03:38:50  6  knife, but possession of a weapon is not enough to

03:38:53  7  authorize deadly force.

03:38:58  8          Let's go to the next one.  Special

03:38:59  9  Interrogatory Number 3 --  and, actually, this is -- I

03:39:03  10  must be reading this wrong, but my reading of number 3

03:39:07  11  and number 7 is basically the same thing: Did Soheil

03:39:11  12  Mojarrad threaten Officer Edwards with a knife? and Each

03:39:14  13  time Officer Edwards fired his weapon, did he reasonably

03:39:17  14  believe that Soheil Mojarrad had threatened him with a

03:39:20  15  knife?  I think those are the same.

03:39:22  16          But regardless, those don't actually answer

03:39:25  17  any question that's informative to whether -- those

03:39:30  18  don't answer any question to whether it's clearly

03:39:33  19  established law because it just doesn't give you any

03:39:37  20  relevant information.  Whether he threatened him is not

03:39:39  21  the issue.  The threat had to be imminent; it had to be

03:39:42  22  deadly; it had to be articulable.  There are things

03:39:46  23  that just are fully unhelpful with respect to these two.

03:39:51  24          The next one, number 4, is the special

03:39:54  25  interrogatory: Was Soheil Mojarrad standing within 20

03:39:58 1    feet or closer to him, to Officer Edwards, with the

03:40:02 2    knife?  Well, that also isn't helpful.  First of all,

03:40:06 3    there is absolutely no testimony in this case by any

03:40:10 4    expert, and, in fact, their expert says there's no such

03:40:14 5    thing as the 21-foot rule.  What that means is someone

03:40:19 6    within 21 feet holding a knife, that doesn't give you

03:40:23 7    authority no shoot.  Everyone has said that.

03:40:25 8            Even if there were a 21-foot rule, also all

03:40:28 9    of the experts have testified that that goes to the

03:40:33 10   amount of time that it would take an officer to draw his

03:40:36 11   weapon and fire, all at once.  Well, Officer Edwards

03:40:41 12   already had his weapon out, so that's not really

03:40:44 13   relevant to anything.

03:40:45 14           But more importantly on the clearly

03:40:47 15   established issue is that Wilson v. P.G. County makes

03:40:51 16   clear that standing 20 feet away with a knife is not

03:40:53 17   enough, and even making some advancement, which is where

03:40:57 18   we go to interrogatory number 6.  But I don't want to

03:41:01 19   skip over number 5.

03:41:05 20           I have to be candid; I don't completely

03:41:08 21   understand interrogatory number 5; it's:  Each time

03:41:11 22   Officer Edwards fired his weapon, did he reasonably

03:41:14 23   believe that Soheil Mojarrad made a sudden movement?   I

03:41:18 24   don't know how that helps you at all, candidly.  He

03:41:23 25   could have made a sudden movement backwards; he could

03:41:25  1  have made a sudden movement to the side.  He could have

03:41:28  2  put his arms down suddenly.   A sudden movement is far

03:41:32  3  too vague to give you valuable information about whether

03:41:35  4  this would be clearly established under Fourth Circuit

03:41:37  5  precedent.

03:41:38  6          Interrogatory number 6:  Each time Officer

03:41:40  7  Edwards fired his weapon, did he reasonably believe that

03:41:42  8  Soheil Mojarrad was starting to advance towards him with

03:41:45  9  a knife?   That, likewise, Connor v. Thompson, Wilson v.

03:41:51  10  Prince George's County.   And Connor v. Thompson, the

03:41:55  11  Fourth Circuit specifically held that it was

03:41:57  12  unreasonable for an officer to use lethal force where he

03:42:00  13  had a knife, refused to drop it, and slowly staggered

03:42:04  14  downstairs towards the officers.   That's advancing.

03:42:07  15  Again, this is not helpful because advancing just means

03:42:10  16  going towards you.   It doesn't give you any indication

03:42:13  17  of the level of threat that is being presented by any

03:42:16  18  advancement.

03:42:17  19          The same thing is true in Wilson v. Prince

03:42:21  20  George's County.   The Fourth Circuit held -- and this

03:42:23  21  is 2018, so this is a year before the shooting of Soheil

03:42:27  22  Mojarrad.  The Fourth Circuit held that an officer who

03:42:30  23  used excessive force was -- I'm sorry, that used lethal

03:42:35  24  force was excessive when he was standing about 20 feet

03:42:40  25  away from the officer holding a knife stumbling toward

03:42:44  1    the officer.   Again, that's not particularly helpful.

03:42:50  2            In addition to all of this, in addition to

03:42:52  3    the fact that none of these facts will bear on whether

03:42:57  4    clearly established law was violated, they are

03:43:01  5    suggestive of an answer.   They're putting in the jury's

03:43:05  6    head and elevating for the jury these particular ideas,

03:43:08  7    that maybe he had a knife -- not maybe, obviously we're

03:43:13  8    going to have presented a lot of evidence.  But:  Did he

03:43:15  9    have a knife?  Is that critical to their decision about

03:43:18  10   whether excessive force is used?   Did he disobey

03:43:23  11   commands to drop the knife?  Is that critical to whether

03:43:26  12   excessive force was used?

03:43:28  13           So I actually think these, particularly in

03:43:32  14   their current form, are not only inappropriate but are

03:43:35  15   prejudicial towards the plaintiff.

03:43:37  16           THE COURT:  If I decided that some special

03:43:40  17   interrogatories would be helpful to me, number one, I'd

03:43:47  18   like you to take a stab at it, at what you think would

03:43:50  19   be helpful to me; and, number two, do you think I should

03:43:55  20   send those in to the jury separately?

03:44:03  21           MS. EDWARDS:  No, Your Honor.   I mean, I

03:44:05  22   understand this concept that qualified immunity needs to

03:44:08  23   be decided at the earliest possible stage.   But I'm

03:44:13  24   not -- we're at trial.  This is the jury room.   I mean,

03:44:16  25   this is the last stage of litigation.   So I don't know

03:44:19 1  how that really helps the officer.  Which is the

03:44:23 2  purpose of -- if you're going to be cloaked in qualified

03:44:27 3  immunity, it should be done early so you don't have to

03:44:29 4  be put through the rigors of litigation.  Officer

03:44:32 5  Edwards has already been put through that, so it doesn't

03:44:35 6  save much.

03:44:36 7         THE COURT:  Two genuinely disputed material

03:44:39 8  facts:  Whether the decedent threatened the defendant

03:44:43 9  with a knife, one; and whether he was threateningly

03:44:47 10 advancing to defendant, two.  Genuine issue of material

03:44:52 11 fact.

03:44:53 12        MR. HARTZOG:  Understood, Your Honor.

03:44:54 13        THE COURT:  We had to have this trial.

03:44:56 14        MR. HARTZOG:  That's why we think the fact

03:44:58 15 finders should decide those facts.

03:44:59 16        And I'll tell, you Your Honor, each one of

03:45:01 17 these questions is modelled specifically on the finding

03:45:04 18 in Wilson v. Prince George's County where they said

03:45:09 19 that -- and again, as plaintiff's counsel mentioned, it

03:45:13 20 was not long before this incident.  And they said that

03:45:16 21 it wasn't clearly established at the time, but it will

03:45:20 22 be established going forward that an officer cannot use

03:45:23 23 excessive force where the person is 20 feet away and has

03:45:26 24 not made any sudden movements, is not threatening

03:45:31 25 anyone, and has ignored the officer's repeated commands.

03:45:35 1          THE COURT:  Remind me of the cite to that

03:45:36 2  case.

03:45:37 3          MR. HARTZOG:  Your Honor, it's 893 F.3d 213.

03:45:42 4          So our position is if there was a

03:45:45 5  threatening behavior or a sudden movement, then that is

03:45:51 6  outside of the context of what Wilson v. Prince George's

03:45:55 7  County held was now clearly established.  So, in other

03:45:58 8  words, they said that even in 2018 it wasn't clearly

03:46:02 9  established that you couldn't use deadly force against

03:46:05 10  an individual standing 20 feet away not threatening the

03:46:08 11  officer or making sudden movements, but going forward it

03:46:11 12  would be.  So the role of the Court would be: Is this

03:46:15 13  like Prince George's County where there was no

03:46:17 14  threatening movement, no sudden movement, or is it

03:46:25 15  outside of the context of what Wilson v. Prince George's

03:46:28 16  County held to be clearly established law?

03:46:31 17          And then it's also modelled in part on other

03:46:38 18  case law.  If you give he one second, Your Honor --

03:47:03 19          THE COURT:  Well, I am prepared to say at

03:47:05 20  this point that I do believe some special

03:47:08 21  interrogatories could be helpful.  And I'm inviting the

03:47:15 22  plaintiff, who points out, I think quite appropriately,

03:47:19 23  that "sudden movement" is pretty vague.

03:47:29 24          MR. HARTZOG:  But again, Your Honor, that's

03:47:30 25  exactly the phrase that the Fourth Circuit used in

03:47:33  1    <u>Wilson v. Prince George's County</u> in saying that going

03:47:37  2    forward it's not clearly established if there was no

03:47:39  3    sudden movement.  So the "sudden movement" language is

03:47:44  4    directly from <u>Wilson v. Prince George's County</u>.

03:47:47  5              THE COURT:  I want to review that case

03:47:49  6    again.

03:47:49  7              MS. EDWARDS:  Your Honor, I also think

03:47:50  8    "sudden movement" in the context of <u>Wilson</u> is different

03:47:53  9    from the sudden movement in this context.  And most

03:47:56  10   importantly, Wilson himself, who was shot, had been --

03:48:04  11   had committed an assault, had committed a battery, had

03:48:08  12   been actively threatened; he was being pursued for an

03:48:12  13   act of violence.  So a sudden movement in that context

03:48:16  14   may look different from a sudden movement when somebody

03:48:20  15   took a cell phone off of a table at the Sheetz.  I

03:48:24  16   think you've got to look at the totality.  And just

03:48:27  17   because there was a sudden movement and that particular

03:48:32  18   language is used in <u>Wilson</u>, it doesn't mean that it

03:48:34  19   creates qualified immunity.

03:48:37  20             THE COURT:  Well, I'd like very much to see,

03:48:41  21   without waiving your objection to any special

03:48:43  22   interrogatories, if you would like, and you certainly

03:48:46  23   don't have to, I'm just giving you the opportunity to

03:48:50  24   take a stab at what --

03:48:54  25             MS. BEIGHTOL:  Your Honor, what is the best

03:48:55　1　way to get -- you've suggested two different items for

03:48:58　2　us to draft.　What is the best way for us to provide

03:49:01　3　those to you?

03:49:02　4　　　　　THE COURT:　What I'd like you to do is go

03:49:03　5　ahead and file them.　You can just attach it to

03:49:13　6　something you call a notice and just index what is it on

03:49:18　7　the front of the notice, then just attach one as A and

03:49:22　8　one as B.

03:49:23　9　　　　　Ms. Collins, do you have any other helpful

03:49:26　10　advice?

03:49:27　11　　　　　I want you to file it because I want it to

03:49:33　12　be transparent on the docket.

03:49:40　13　　　　　MS. EDWARDS:　Your Honor, should we email

03:49:42　14　those in Word format as well since they're a proposed

03:49:48　15　verdict form?

03:49:50　16　　　　　THE COURT:　I don't haven't a lot of

03:49:51　17　heartburn with you not.　Just file it.

03:49:53　18　　　　　THE CLERK:　You can use the event notice

03:49:55　19　"Other."

03:49:56　20　　　　　MS. BEIGHTOL: One other clarifying question,

03:49:57　21　just because you had asked us earlier if there were

03:50:01　22　things we could talk about that may make things easier

03:50:04　23　as we go to trial.　We understand that exhibits are due

03:50:07　24　within seven days of trial.　We also understand that

03:50:10　25　Your Honor appreciates electronics.　So we wanted to

03:50:14  1  inquire with you, especially because several of the

03:50:17  2  exhibits are video, whether it would be more convenient

03:50:20  3  for Your Honor to receive them in a link with an

03:50:25  4  electronic format versus in paper, or how you would --

03:50:30  5       THE COURT:  I'm really glad you brought that

03:50:32  6  up.  Let me go back and look at what I told you to do.

03:50:39  7  Because sometimes I think we tell people to do more than

03:50:43  8  what they really need to do.  I know there are a lot of

03:50:48  9  pressures on both sides.  And I want my exhibits when

03:50:51  10  we start trial, to be honest.  I don't really need them

03:50:55  11  seven days before.

03:50:57  12       MS. BEIGHTOL:  I got that, to be fair, from

03:50:59  13  the local rule.  And I didn't see anything about it  --

03:51:03  14  specific directions in your order.  But just whether

03:51:06  15  you like paper versus electronic versus -- you  know,

03:51:11  16  what you would like and how you would like it.

03:51:14  17       It sounded like there was a direction for a

03:51:16  18  second notebook for the jury.  And again, our documents

03:51:20  19  tend to be -- a lot of them are video.  And then the

03:51:23  20  ones that aren't video may be lengthy documents that we

03:51:26  21  may only use a portion of.  And rather than burdening

03:51:29  22  the Court or jury with stacks of paper, we wanted to

03:51:32  23  inquire as to your preference.

03:51:44  24       THE COURT:  The clerk is looking at me.

03:51:47  25       THE CLERK:  I'll be glad to go over that

03:51:50  1  after we're done here, how to present exhibits.

03:51:54  2         THE COURT:  Let's talk about -- and I'll

03:51:57  3  invite Sandra to pipe up.   I think there may be a

03:52:01  4  little bit of inconsistency in my drafting of the trial

03:52:05  5  scheduling order.   I think it was my intention to

03:52:08  6  obviate aspects of the local civil rules where I don't

03:52:12  7  really need the exhibits seven days before.   I don't

03:52:15  8  think that serves any interest of mine.   If there's

03:52:18  9  something specific I want, I'll ask for it.   But then I

03:52:22  10  note at the very end of the order it says:  All

03:52:26  11  requirements set forth in the local civil rules not

03:52:29  12  altered herein shall be strictly observed.   So I think

03:52:33  13  if I want to do what I think I did, I need to be a

03:52:36  14  little bit plainer.   So that's hindsight.

03:52:38  15         So let's just focus on your explicit

03:52:41  16  questions.   I just want a book.   Actually, I want --

03:52:47  17  how many exhibits are we talking about?   What's the

03:52:50  18  volume of paper?

03:52:51  19         MS. BEIGHTOL:  There is a large volume.

03:52:52  20  That's why I wondered if electronic might be more

03:52:55  21  pleasing to the Court.   That's how we are circulating

03:52:57  22  it to each other, through a link with clearly identified

03:53:00  23  which exhibit is which.   And because many of them are

03:53:03  24  video, if we were to do a notebook, it might be a

03:53:07  25  notebook with lots of disks or flash drives, and you

03:53:10  1  couldn't see it that way.

03:53:11  2          THE COURT:  So you can give me something

03:53:13  3  electronic that's one-stop shopping?

03:53:16  4          MS. BEIGHTOL: Your Honor, we can give you,

03:53:17  5  at your preference, either a shared point link that you

03:53:20  6  could click on and look at everything in a folder, or we

03:53:23  7  could bring you a flash drive on the first day of trial;

03:53:26  8  whatever is your preference.  Then the question would

03:53:30  9  be whether you want something separate in paper in the

03:53:34  10  courtroom too, or whether that is sufficient for all.

03:53:35  11          THE COURT:  We need the paper for court.

03:53:37  12  And we need the videos separately.  And then you're

03:53:42  13  supposed to make sure it's a format that can be played

03:53:45  14  in the jury room.  Was that gone over with you this

03:53:47  15  morning?

03:53:48  16          MS. EDWARDS:  Yes, Your Honor.

03:53:49  17          MR. HARTZOG:  It was.

03:53:50  18          THE COURT:  Okay.  And I'm fine with taking

03:53:53  19  them into evidence at the end of the day.  Just remember

03:53:56  20  what you've offered that day and give them all to

03:54:00  21  Sandra.

03:54:01  22          And I'm assuming, Sandra -- I haven't had a

03:54:06  23  civil trial -- it's been a couple months, hasn't it?

03:54:09  24          THE CLERK:  It's been a little while.

03:54:11  25          THE COURT:  But that's an efficiency right

03:54:13  1  there, just to go ahead and take them all in at the end

03:54:16  2  of the day or before lunch, maybe, the morning ones.

03:54:21  3  So we need the paper because I'm going to

03:54:23  4  send the paper to the jury room.  And then we need the

03:54:27  5  video stuff, we need it separate.  It could be played

03:54:32  6  from your laptop in the courtroom.  But just at the end

03:54:35  7  of the day I want that disk in that format that's going

03:54:39  8  to play in the jury room.

03:54:41  9  MR. HARTZOG:  Your Honor, should it be a

03:54:43  10  disk or a thumb drive, or whatever the technology rules

03:54:49  11  say?

03:54:49  12  THE CLERK:  A disk.

03:54:51  13  MS. BEIGHTOL:  Just to clarify, so first day

03:54:53  14  of trial we should each come with an electronic set of

03:54:56  15  exhibits on disk for Your Honor, and a separate paper

03:55:01  16  copy of everything to be used as needed?

03:55:03  17  THE COURT:  I'm willing to use this trial as

03:55:05  18  my Guinea pig.  I'm willing to go from paper to

03:55:08  19  electronic for my records.  So a disk, thumb drive, I

03:55:17  20  don't really care.

03:55:18  21  Does that help you too?

03:55:18  22  MR. HARTZOG:  I does, Your Honor.

03:55:21  23  THE COURT: Just bring it the first day.

03:55:34  24  And then you've got to bring one set of

03:55:36  25  paper for the clerk to take in.  And you've got to bring

03:55:38  1    in the separately formatted on disks of the audio visual

03:55:45  2    whatever.

03:55:46  3              Sandra, does that comply with what you want?

03:55:46  4              THE CLERK:  Yes, ma'am.

03:55:51  5              Just going over -- at the end of each day I

03:55:56  6    run a summary, an exhibit list.  At the end of each day

03:55:59  7    you will be given a printed copy.  So that night you

03:56:01  8    can go over it.  But the exhibits that you have moved

03:56:05  9    to admit and have been admitted, I will need to collect

03:56:08  10   those at the end of each trial day.

03:56:11  11             THE COURT:  And then that evening she's

03:56:14  12   amending, or the next day you're amending the list of

03:56:18  13   exhibits?

03:56:20  14             THE CLERK:  That is correct.

03:56:20  15             THE COURT:  And we will give, as soon as

03:56:22  16   she's done, you get it, and I get it, and it's very

03:56:25  17   helpful.

03:56:27  18             THE CLERK:  So we have a running list.  And

03:56:29  19   if you see something -- each day you'll get an

03:56:32  20   opportunity that if there's some discrepancy, we can

03:56:35  21   clarify it right then versus having to go five days back

03:56:38  22   or something, or look at the record.

03:56:41  23             THE COURT:  They're preparing for you that

03:56:44  24   proposed exhibit list, right?  They give you -- like,

03:56:47  25   the plaintiff will give you one?  Remind me how that

| | |
|---|---|
| 03:56:50 | 1 |

works.

THE CLERK:  We have the proposed pretrial order, so your exhibits that are listed on the pretrial order, your exhibit numbers must match what is on that pretrial order, because that's what I use, and that's what the Court uses to go by.

So at the end of each day whenever you're giving me the paper exhibits, I need them in a separate folder, like a manila folder that's been labeled Exhibit A, B, C, D, whatever, running.  Then I keep those.

And then the CDs, if it's been admitted that day, that video evidence, then I need a CD that's been marked with exhibit stickers.  Make sure all your exhibit stickers match your pretrial order list.

MS. EDWARDS:  We have several stipulated exhibits.  So those would be joint exhibits. Plaintiff's exhibits would be marked Plaintiff's Exhibits, and defendant's exhibits would be marked Defendant's Exhibits; does that sound appropriate?  Or do we need to redo the numbering?

THE CLERK:  You still need to move to introduce them so it's very clear on the record what exhibits --

THE COURT:  What is your question?  Repeat that question.  You've got that third category.

03:57:54 1        MS. EDWARDS:  Yes, and many of the exhibits

03:57:56 2    we agreed to.   So we thought being a joint exhibit

03:58:02 3    would be most appropriate, then either of them could

03:58:05 4    introduce it.

03:58:06 5        THE COURT:  So you would prefer, if I'm

03:58:08 6    following you, that there just be a number, not a

03:58:14 7    sourcing to the plaintiff or to the defendant on that

03:58:16 8    group of exhibits?

03:58:19 9        MS. EDWARDS:  Yes.

03:58:19 10        MR. HARTZOG:  Defer to the Court, but that

03:58:20 11    may make some sense.  If it's a joint exhibit, it would

03:58:23 12    just be marked "Exhibit," then "Plaintiff's Exhibit,"

03:58:26 13    then "Defendant's Exhibit."

03:58:27 14        THE COURT:  So you've got a sticker that

03:58:29 15    just says "Exhibit" for those, or you'll put a sticker

03:58:32 16    on.   So when Sandra is doing the list of exhibits, she

03:58:38 17    typically has a column that says "Plaintiff," she has a

03:58:41 18    column "Defendant," so what Sandra will do now is add a

03:58:46 19    column that says "Joint."

03:58:49 20        MS. EDWARDS:  That sounds good, Your Honor.

03:58:51 21        MR. HARTZOG:  That's fine with us, Your

03:58:52 22    Honor.

03:58:52 23        THE COURT:  Now let me tell you what happens

03:58:54 24    at the end of the trial.   Because there's also a column

03:58:58 25    that says "Objection," "Sustained," "Overruled."  We

03:59:04 1  sanitize that, and we use this non-argumentative exhibit

03:59:16 2  list of what's in as the index for the jury.   Because

03:59:20 3  we send -- unless it's guns, money, drugs, weapons --

03:59:23 4  send everything back to the jury room.   And I always

03:59:29 5  thought if they had an index, they can find what they

03:59:32 6  want.

03:59:33 7          So, for example, Number 1, Report of Autopsy

03:59:37 8  Examination.  Is that going to say "Plaintiff,"

03:59:42 9  "Defendant," or is that just going to be a joint one?

03:59:45 10         MS. EDWARDS:  I believe that particular

03:59:47 11 exhibit is joint.

03:59:48 12         MR. HARTZOG:  I believe that was our first

03:59:50 13 joint exhibit.

03:59:50 14         THE COURT:  Okay.

03:59:51 15         MR. HARTZOG:  Can I ask a clarifying

03:59:53 16 question on the exhibit labeling?  Probably both sides

03:59:56 17 at this point have had some exhibits that they've listed

03:59:59 18 in their pretrial that will not come into evidence or

04:00:03 19 will not be introduced.   Do we want the numbering to

04:00:06 20 still match up to the pretrial even though they're

04:00:09 21 nonsequential at this point?

04:00:10 22         THE COURT:  There's two different ways of

04:00:12 23 answering that question.   If we go forward with today's

04:00:16 24 proposed pretrial order as controlling, the answer is

04:00:21 25 very definitely yes.

04:00:24  1          However, if you leave here and take on the

04:00:27  2   additional assignment of amending that pretrial order to

04:00:31  3   reflect decisions that have been made today, decisions

04:00:37  4   that were made by you before today, and decisions that

04:00:41  5   may be made by you in the coming weeks, it is fine with

04:00:47  6   me that you bring the next iteration of your pretrial

04:00:54  7   order the day we get together.

04:00:58  8          Sandra, is it okay with you?

04:01:01  9          THE CLERK:  Yes, ma'am.

04:01:01  10         THE COURT:  Then you can number anything

04:01:03  11  whatever you want to number it, just as long as it

04:01:06  12  matches that.

04:01:09  13         Do you want to take another stab at your

04:01:11  14  pretrial order?

04:01:15  15         MR. HARTZOG:  Okay.  We'll confer on that.

04:01:18  16  It makes sense to me, but we'll confer.

04:01:20  17         MS. EDWARDS:  Sure.

04:01:21  18         MS. BEIGHTOL:  As for the paper copy that

04:01:23  19  you want us to bring, do we need to bring multiple

04:01:26  20  copies for all the jurors or just one paper copy?

04:01:29  21         THE COURT:  Well, you know, you're getting

04:01:33  22  into something that I haven't really focused on in this

04:01:35  23  trial is utility of juror notebooks.  I have used them

04:01:44  24  in a few trials over 20 years, not very many.  But if

04:01:51  25  it's something that both sides agree to -- sometimes it

04:01:55   1   may be, if there's a lot of shorthand nomenclature, to

04:02:00   2   do a shared index that explains a little bit about

04:02:04   3   certain documents that will be coming in.  There are all

04:02:09   4   different ways to look at it.

04:02:11   5            The answer to your question is:  No, I just

04:02:16   6   need one.  But if you all think there are some key

04:02:19   7   documents that each juror should have a copy of while a

04:02:23   8   witness is testifying -- of course, we don't want to

04:02:27   9   distract from the witness's testimony.  Because I'm

04:02:29  10   going to tell the jury at the start:  You're going to

04:02:32  11   have a copy of each exhibit admitted, and you're going

04:02:37  12   to have any audio/visual in whatever format, and you'll

04:02:44  13   be able to play it, but one thing you're not going to

04:02:47  14   have is trial testimony.  I'm going to tell them that

04:02:52  15   we just don't do it.  We don't have a system in place

04:02:57  16   whereby I can send them certified transcripts.  I'm

04:03:04  17   going to just emphasize that if you don't hear what a

04:03:07  18   witness says or a question that's being asked, raise

04:03:10  19   your hand, and we'll address it right then and there,

04:03:14  20   because I will not be in a position to send you back

04:03:18  21   trial testimony.

04:03:20  22            So I'll just leave you with those thoughts.

04:03:24  23   If there are some exhibits that you want everybody to

04:03:27  24   have, and there's no disagreement, you can come to court

04:03:30  25   with ten notebooks.  And I tell them to put them under

04:03:36  1    their chair.  And when it's necessary for you to look at

04:03:39  2    the notebook, jurors, I will let you know.  And

04:03:45  3    sometimes there's something that might have to get

04:03:47  4    passed around.  I don't know that there is in this

04:03:50  5    case.  Sometimes I put stuff on a table and let them

04:03:55  6    walk around it; that's possible.

04:03:57  7            But is there anything that comes to your

04:04:00  8    mind that we would want to do this?

04:04:02  9            MR. HARTZOG:  Possibly the knife that was

04:04:04  10   recovered at the scene.  We're trying to coordinate

04:04:07  11   whether to have that in person or pictures.  But there

04:04:09  12   is a possibility that the knife itself would be shown to

04:04:14  13   the jury.

04:04:14  14           THE COURT:  Well, what we do is we roll that

04:04:16  15   table that's over there in the corner, which is where

04:04:20  16   somebody's suitcase is going to be gone by the time we

04:04:23  17   start, but the clerk will use that sort of for exhibits.

04:04:29  18   But we'll clear it off, and we can roll it into the

04:04:32  19   middle of the courtroom, and we let everybody walk

04:04:35  20   around.  I don't think we'd want to put a knife in each

04:04:38  21   person's hand.  But if that's something you wanted to

04:04:41  22   do, and that suited both sides particularly, that's fine

04:04:44  23   with me.  We just need to kind of stage that.

04:04:49  24           MR. HARTZOG:  Understood.

04:04:51  25           MS. EDWARDS:  Your Honor, can I, since we're

04:04:53  1  in the question asking stage, can I ask you a couple

04:04:56  2  other questions?

04:04:57  3        One is:  During opening we were told this

04:05:00  4  morning it would be from the well and behind a podium.

04:05:06  5        THE COURT:  If you want it.

04:05:07  6        MS. EDWARDS:  Okay.  Because he did -- I was

04:05:09  7  wondering, do we need to be behind the podium or not?

04:05:14  8        THE COURT:  These are good questions to ask.

04:05:18  9  Do you want to be behind a podium when you give your

04:05:21  10  opening statement?

04:05:22  11        MR. HARTZOG:  I typically would, because I

04:05:24  12  probably have a notebook of things.  But I could also

04:05:28  13  go without if needed.

04:05:30  14        THE COURT:  It's fine.  And if you don't

04:05:32  15  want to be behind the podium, what we will do is you'll

04:05:37  16  be lapel mic'ed up, and Sandra will turn off the

04:05:43  17  microphone to the podium, because we don't want the

04:05:45  18  feedback.  And you can walk around however you like.

04:05:50  19        MS. EDWARDS:  That might be a question for

04:05:52  20  another day, but we just kind of wanted to figure out

04:05:54  21  what the parameters were.

04:05:56  22        And similarly, is an old-school flip

04:06:01  23  chart -- are we allowed to have that?

04:06:03  24        THE COURT:  Sure.

04:06:03  25        MS. EDWARDS:  I know it's not technology.

04:06:06   1          THE COURT:  Are you going to want to show

04:06:07   2   any evidence?  Because that really kind of raises for me

04:06:10   3   some concerns, unless there's no issue between the

04:06:15   4   sides.

04:06:16   5          MR. HARTZOG:  That was my next question

04:06:18   6   about:  Can we show joint exhibits or other exhibits

04:06:23   7   during our opening?

04:06:24   8          THE COURT:  Joint exhibits or other

04:06:27   9   exhibits.  Let's deal first with joint exhibits.

04:06:30  10   Would there be a joint exhibit you would like to show?

04:06:33  11          MS. EDWARDS:  I think we would prefer not to

04:06:35  12   show any exhibits during opening.

04:06:37  13          MR. HARTZOG:  I'm fine.

04:06:39  14          THE COURT:  Given that answer, I'm going to

04:06:41  15   say unless it's really compelling, let's not get into

04:06:45  16   exhibits in opening.

04:06:46  17          MR. HARTZOG:  That's fair.

04:06:47  18          THE COURT:  I'll make the point that this is

04:06:50  19   opening statement; It's what the lawyer thinks the

04:06:53  20   evidence will show and aspects of it that you're asked

04:06:58  21   to pay careful attention to, And just kind of leave it

04:07:01  22   at that.

04:07:06  23          Now, flip charts, is this a chart that's

04:07:08  24   going to come in as a demonstrative?  You just want to

04:07:13  25   write stuff down as you go and kind of teach a little

| | | |
|---|---|---|
| 04:07:17 | 1 | bit? |
| 04:07:17 | 2 | MS. EDWARDS:  Yes, Your Honor. |
| 04:07:17 | 3 | THE COURT:  State a little bit? |
| 04:07:19 | 4 | Are you okay with that? |
| 04:07:20 | 5 | MR. HARTZOG:  It depends what she writes, |
| 04:07:24 | 6 | Your Honor. |
| 04:07:25 | 7 | THE COURT:  I can appreciate that.  You |
| 04:07:28 | 8 | don't have to sit right there.  You can, if you want |
| 04:07:31 | 9 | during her opening statement, go over and sit in the |
| 04:07:34 | 10 | first row.  And the same -- but I'm assuming that you're |
| 04:07:45 | 11 | just going to be drawing a timeline or -- |
| 04:07:49 | 12 | MS. EDWARDS:  I'm not entirely sure at this |
| 04:07:53 | 13 | point.  We haven't planned it.  But I think just to |
| 04:07:58 | 14 | highlight some essential elements. |
| 04:08:00 | 15 | THE COURT:  We haven't used the easel in a |
| 04:08:02 | 16 | long time. |
| 04:08:03 | 17 | Sandra, do you know where the easel is? |
| 04:08:07 | 18 | THE CLERK:  I will have to dig. |
| 04:08:09 | 19 | MS. EDWARDS:  We can bring our own easel, if |
| 04:08:12 | 20 | that would be helpful. |
| 04:08:13 | 21 | THE COURT:  Likewise, if you want a chart, |
| 04:08:16 | 22 | you can. |
| 04:08:17 | 23 | And we typically give the plaintiff the |
| 04:08:24 | 24 | nicer conference room.  Have you seen that? |
| 04:08:27 | 25 | MS. EDWARDS:  We have not, Your Honor. |

04:08:30   1                    THE COURT:  It's just the way it typically

04:08:33   2    falls.

04:08:33   3                    MR. HARTZOG:  Defense counsel always gets

04:08:37   4    the short end of the stick.

04:08:39   5                    THE COURT:  But we've got a room for you.

04:08:41   6                    MR. HARTZOG:  We're perfectly happy in a

04:08:43   7    small room.

04:08:44   8                    THE COURT:  And there's a wall between you.

04:08:45   9    So you just need to think about that.  But we want you

04:08:48  10    to be comfortable.

04:08:50  11                    Sandra, can you show them those rooms before

04:08:52  12    they leave?  It's just not like we've got a lot of

04:08:55  13    choice.  The plaintiff's room is the old Marshal's

04:08:58  14    office in the building.  And yours is probably where

04:09:02  15    they used to keep the HVAC system.

04:09:06  16                    MR. HARTZOG:  It will be totally fine, Your

04:09:08  17    Honor.  Thank you.

04:09:10  18                    THE COURT:  What else to talk about?  I

04:09:15  19    know we haven't talked about some things that I wish we

04:09:17  20    could have gotten to, but we're heading into the 4:00

04:09:21  21    hour.  I can answer a few more questions.  Is there

04:09:24  22    anything else from the defense side that I need to rule

04:09:27  23    on, focus on right now to help you?

04:09:31  24                    MR. HARTZOG:  I did have an issue with some

04:09:32  25    of the jury instructions, but I assume we'll get to that

04:09:35  1  at a later date.

04:09:37  2        THE COURT:  Yes.   I think we've bitten off

04:09:40  3  right much, particularly if you all decide to revise the

04:09:43  4  pretrial order.   I'm not going to order you to do it.

04:09:47  5  But there are benefits to you doing that, I would just

04:09:50  6  point out, that accrue to both sides.

04:09:53  7        So we're starting at, I told you, 9:00 a.m.

04:10:00  8  I think you all ought to talk to me once on the phone

04:10:04  9  before trial.   I'd like to know what's your decision on

04:10:08  10  notebooks? Are you wanting to use those?   There may be

04:10:14  11  some other things to talk about.   Even if it's just ten

04:10:18  12  minutes, I think we ought to do it over the phone and

04:10:21  13  just touch base.

04:10:24  14        And I'll just leave it up to you all to talk

04:10:26  15  to Sandra about my schedule as she understands it.   You

04:10:31  16  don't need to do it today, but give me a couple choices

04:10:35  17  in the weeks to come.   And maybe I can answer some

04:10:42  18  questions then.

04:10:43  19        MS. BEIGHTOL: I have one other, just,

04:10:44  20  question.  We've talked about playing video testimony.

04:10:48  21  In the event that either party chooses to play video

04:10:51  22  testimony, do we just bring a DVD with the agreed

04:10:57  23  sections of that testimony that morning and just play it

04:11:01  24  through here, or is there any protocol that you

04:11:03  25  appreciate with regard to --

04:11:05  1    THE COURT:  Well, you're kind of returning

04:11:07  2  us to something that we talked about earlier in my mind,

04:11:11  3  and it's important.  I said:  Are there any issues as

04:11:15  4  to videotaped depositions?  And then we talked about

04:11:19  5  how that might sort itself out as we go along.  Did

04:11:23  6  that, ladies and gentlemen, today sort itself out, or do

04:11:29  7  we still have some issues?

04:11:31  8    MR. HARTZOG:  There may still be a couple

04:11:33  9  issues that need to be addressed in that regard.  And

04:11:39 10  we can do that now or over the phone or whatever Your

04:11:44 11  Honor prefers.

04:11:44 12    THE COURT:  Do I need to watch the videos to

04:11:46 13  take up these issues?

04:11:48 14    MR. HARTZOG:  I don't believe so, Your

04:11:50 15  Honor, at least as to some of them.  For example, we've

04:11:53 16  objected to testimony about Officer Edwards's use of

04:11:58 17  medication, and that's the subject of a separate motion

04:12:03 18  in limine that would resolve that issue.

04:12:05 19    THE COURT:  Haven't I already addressed

04:12:07 20  that?

04:12:07 21    MR. HARTZOG:  I think Your Honor's decision

04:12:09 22  was that their expert could testify as to the effect of

04:12:14 23  Adderall.  But I think some of the deposition testimony

04:12:21 24  was asking him why he uses it and that type of stuff.

04:12:42 25    THE COURT:  Is that something plaintiff

04:12:45  1   still wants to explore in trial testimony?

04:12:47  2          MS. BEIGHTOL: As far as Defendant Edwards, I

04:12:50  3   think what the plaintiff would propose is sort of like

04:12:52  4   what Your Honor talked about being the story, the story

04:12:56  5   of the day, that he woke up, that he took these

04:12:58  6   medications, what they were for.  There were other

04:13:01  7   medications, including heart medications and other

04:13:05  8   things taken in the time period leading up to.  So the

04:13:08  9   focus won't be on that specific one, but just in the

04:13:12  10  context of the day and what happened.

04:13:15  11         The plaintiff, Your Honor, has full

04:13:19  12  knowledge of your ruling on their expert and would not

04:13:22  13  intend to offer any expert testimony outside of what the

04:13:26  14  Court permitted at this time.  So that, we are not

04:13:36  15  concerned about.  We plan to follow your order on Dr.

04:13:39  16  Tackett as well as Dr. Alpert.

04:13:45  17         THE COURT:  I'm reminded I deferred ruling

04:13:47  18  on whether Tackett could testify as to whether

04:13:50  19  defendant's conduct was consistent with that of an

04:13:53  20  individual whose perception had been altered by Adderall

04:14:00  21  as distinguished from whether Adderall did, in fact,

04:14:04  22  influence his perception.

04:14:06  23         MS. BEIGHTOL: Your Honor, this is obviously

04:14:08  24  in your discretion, but my thought with regard to that

04:14:11  25  is that we take that up in the event the plaintiff

04:14:13  1  intends to offer that testimony closer to the time of

04:14:17  2  that piece of testimony.  I think talking about it

04:14:21  3  right now might be a bit premature, and also don't want

04:14:25  4  to waste the Court's time on something that may or may

04:14:27  5  not be necessary at this time.

04:14:28  6          THE COURT:  Can you let me know if that is

04:14:30  7  an issue before you get into it, as Defendant has made

04:14:34  8  this motion?

04:14:36  9          MS. BEIGHTOL:  Absolutely.

04:14:37  10          And the parties did agree, if it helps Your

04:14:40  11  Honor, on a couple of motions during the break, if it's

04:14:42  12  okay for the parties to let you know that.  One of

04:14:45  13  which was related to hearsay testimony, which was a

04:14:48  14  motion.

04:14:49  15          MR. HARTZOG:  I think probably the most

04:14:51  16  appropriate way to handle that, since we were just sort

04:14:53  17  of talking off the cuff, I would like to review.  But

04:14:56  18  when we do an amended pretrial order, we could do

04:14:59  19  that --

04:14:59  20          MS. BEIGHTOL:  That's perfectly fine.  I

04:15:00  21  was just trying to save you some time.

04:15:02  22          THE COURT:  I'm going to like an amended

04:15:08  23  pretrial order.  I think that's a good use.

04:15:11  24          And who knows, in talking it through you may

04:15:13  25  agree on some other things.

04:15:17  1          Okay.  So the question is:  Can I elicit

04:15:23  2   testimony from plaintiff's perspective about what that

04:15:28  3   day was like, which includes what drugs your client

04:15:32  4   ingested.

04:15:35  5          MR. HARTZOG:  And that's the basis of our

04:15:37  6   motion.   I don't think what medication he takes is

04:15:39  7   relevant to whether he used excessive force.

04:15:51  8          THE COURT:  Let me think about that one.

04:15:55  9   Okay?

04:15:56  10         Because that's something you want to do?

04:15:58  11         MS. BEIGHTOL:  Absolutely.  It's the context

04:16:00  12  of the day.   It's like how much sleep he had the night

04:16:05  13  before.   Those questions are all in order.

04:16:07  14         I can credit my co-counsel with taking a

04:16:10  15  very methodical deposition of the steps of the day.

04:16:14  16  It's not focused on what drugs he took.   But it is very

04:16:17  17  methodical:  When did you wake up?  What time did you go

04:16:22  18  to sleep the night before?  Did you take anything before

04:16:24  19  you went to sleep?  Did you take anything when you woke

04:16:27  20  up?

04:16:27  21         Also, Your Honor has ruled that Dr. Tackett

04:16:29  22  can come to trial and talk about Adderall and its effect

04:16:36  23  in general.   So excluding that testimony would sort of

04:16:37  24  end run that whole issue, which I think would go against

04:16:40  25  the prior ruling permitting him.

04:16:43   1          And again, if we're going to go into the

04:16:45   2    third category that you suggested that would cause

04:16:47   3    another ruling, we would let you know well in advance.

04:16:50   4    But at this point our intent is just to offer the facts

04:16:53   5    of the day.  And that is part of the facts, just like

04:16:57   6    the body-worn camera was not turned on.  It's part of

04:17:01   7    the facts like what he drove there and what uniform he

04:17:04   8    wore, which are all discussed in that same category of

04:17:08   9    testimony.  What did he have on his belt?  Could he

04:17:10   10   see?  What was the lighting?  Those are all pieces of

04:17:13   11   fact that go to his perception, that go to what he knew

04:17:16   12   and what he didn't know, and all of those things.

04:17:18   13          THE COURT:  And I'm mindful of the fact that

04:17:20   14   the defendant has asked the Court to reconsider that

04:17:25   15   part of its December 1st order that Tackett is qualified

04:17:32   16   to opine on the effect of Adderall generally and has

04:17:38   17   applied a reliable or accepted methodology.  So he's

04:17:42   18   raised that up as an issue, whether Tackett can actually

04:17:46   19   testify.

04:17:48   20          Do you have anything that's new on that

04:17:52   21   question?

04:17:53   22          MR. HARTZOG:  Nothing new, Your Honor.

04:17:54   23   It's the same issue that's been briefed.

04:17:56   24          THE COURT:  Well, that part of your motion

04:17:57   25   is denied.

04:18:02  1          So, I mean, the point you make is well

04:18:06  2  taken.  So, yes, you can ask him.  I'm going to go

04:18:12  3  ahead and make that ruling now.  You can ask him what

04:18:15  4  medicine he took that morning.

04:18:17  5          MS. BEIGHTOL:  Thank you, Your Honor.

04:18:18  6          THE COURT:  Anything else to talk about now?

04:18:26  7          MR. HARTZOG:  I feel like we've got a lot to

04:18:27  8  talk about, but nothing I can think of that is urgent

04:18:30  9  for today, Your Honor.  I think a lot of these rulings

04:18:39  10  can be made as the evidence comes up.

04:18:52  11          THE COURT:  Contributory negligence.  Let's

04:19:01  12  revisit past dealings with law enforcement.  It's been

04:19:07  13  a long day.  Remind me how far we got on that.

04:19:13  14          MR. HARTZOG:  I think, if I recall

04:19:16  15  correctly, Your Honor had said that we were not supposed

04:19:21  16  to bring up past incidences of him having issues with

04:19:25  17  law enforcement unless it was -- unless it came up and

04:19:30  18  it was impeachment for something.

04:19:32  19          THE COURT:  Well, are you thinking that I

04:19:36  20  need to think more about that defense?

04:19:41  21          MR. HARTZOG:  Perhaps, Your Honor, because I

04:19:43  22  do think -- and forgive me; I forgot that contributory

04:19:48  23  negligence was an issue in this case because it's so

04:19:51  24  focused on the 1983 claim.

04:19:53  25          THE COURT:  Is it on the verdict form?

04:19:55 1          MR. HARTZOG:  It is, Your Honor, because

04:19:57 2    they do have a negligence claim.  So I do think the

04:20:00 3    contributory negligence -- I think that only amplifies

04:20:03 4    the reason why these prior issues should come into

04:20:07 5    evidence.

04:20:13 6          THE COURT:  Because you're, for example,

04:20:18 7    saying that he assaulted a police officer in 2018 and

04:20:22 8    received a broken shoulder.

04:20:25 9          MR. HARTZOG:  I think it sort of goes to him

04:20:27 10   understanding the risk of being violent in a law

04:20:32 11   enforcement encounter.

04:20:32 12         THE COURT:  But, of course, that would need,

04:20:34 13   if I let that in for that purpose, a careful limiting

04:20:37 14   instruction to the jury.

04:20:39 15         MR. HARTZOG:  Understood.

04:20:41 16         THE COURT:  And I think you ought to be

04:20:44 17   thinking about that.

04:20:46 18         MR. HARTZOG:  Okay.

04:20:46 19         THE COURT:  As far as limiting instructions,

04:20:48 20   while I'm saying you can bring the amended pretrial

04:20:51 21   order that day and the formatted evidence that day, I'd

04:20:58 22   like a week before the trial if you're in a position to

04:21:04 23   send me then any limiting instructions that you know of.

04:21:08 24   And, of course, things can come up during trial.  You

04:21:12 25   could make an oral motion for a limiting instruction.

04:21:14  1   Just because you didn't file one doesn't mean you can't

04:21:18  2   make one.   But if you know by the week before the trial

04:21:21  3   that there's some you really, really want, or five days

04:21:25  4   before the trial, send them to me so I can be looking at

04:21:28  5   them.   And send me the sources.   Make sure to include

04:21:32  6   the sources of them to the best of your ability.   Okay?

04:21:38  7                MS. BEIGHTOL:  Your Honor, because defendant

04:21:40  8   did not raise contrib, and the Court did, we would like

04:21:45  9   permission to brief that issue.

04:21:46  10               THE COURT:  Well, the defendant's got it on

04:21:49  11  its verdict form.

04:21:50  12               MS. BEIGHTOL:  Right.   But in the context

04:21:52  13  of the motion that the plaintiffs made, we never got a

04:21:56  14  response brief to our motions in limine.   And we would

04:21:59  15  like the opportunity, because that wasn't a specific

04:22:03  16  issue that's been raised to us, that we could brief that

04:22:07  17  before Your Honor.

04:22:10  18               THE COURT:  What would you like to say in

04:22:11  19  your brief?

04:22:12  20               MS. BEIGHTOL: I think we'd like to talk

04:22:13  21  about specifically how this has been handled in other

04:22:16  22  courts and also the danger of unfair prejudice as it

04:22:19  23  relates to the excessive force issue which, of course,

04:22:21  24  we have briefed, but as it relates specifically to the

04:22:24  25  contributory negligence.

|          |    |                                                    |
|----------|----|----------------------------------------------------|
| 04:22:26 | 1  | THE COURT:  It's a big issue, isn't it?            |
| 04:22:28 | 2  | MS. BEIGHTOL: I think we'd like to look at         |
| 04:22:29 | 3  | the law and provide that to the Court to assist Your |
| 04:22:32 | 4  | Honor with that determination.                     |
| 04:22:34 | 5  | THE COURT:  So you would be making a motion?       |
| 04:22:37 | 6  | Remind me.  Did this one slide through the cracks a |
| 04:22:42 | 7  | little bit?                                         |
| 04:22:43 | 8  | MS. BEIGHTOL: I don't think this slid              |
| 04:22:44 | 9  | through the cracks.  I think Defendant's Edwards's  |
| 04:22:48 | 10 | counsel just shared that he had forgotten that was one |
| 04:22:51 | 11 | of the issues.                                     |
| 04:22:52 | 12 | MR. HARTZOG:  It's addressed in our trial          |
| 04:22:52 | 13 | briefs.                                            |
| 04:22:53 | 14 | MS. BEIGHTOL:  We did not get a response           |
| 04:22:55 | 15 | brief on our motions in limine.  Had that been raised, |
| 04:22:57 | 16 | we would have briefed it and been prepared to present |
| 04:22:58 | 17 | that --                                            |
| 04:22:58 | 18 | THE COURT:  Did you make a motion in limine        |
| 04:23:00 | 19 | directed to the contributory negligence?           |
| 04:23:02 | 20 | MS. BEIGHTOL: We made a motion in limine to        |
| 04:23:04 | 21 | keep out the past dealings with law enforcement.  So |
| 04:23:07 | 22 | that was our motion in limine.                     |
| 04:23:10 | 23 | THE COURT:  Okay.                                   |
| 04:23:10 | 24 | MR. HARTZOG:  Your Honor, just to clarify,         |
| 04:23:12 | 25 | when I said I forgot contributory, I meant earlier |

04:23:16  1  today.  We have raised it in our jury instructions, in

04:23:19  2  our verdict form, and in our trial brief.

04:23:21  3          THE COURT:  Right.  I'm looking at your

04:23:23  4  verdict form.  "Did the decedent by his own negligence

04:23:26  5  contribute to his injuries?"  "Did Officer Edwards have

04:23:34  6  the last clear chance to avoid?"

04:23:43  7          MS. BEIGHTOL:  And if he's seeking to enter

04:23:45  8  it, I mean, we did brief the prior bad acts issue and

04:23:47  9  the other issues as it relates to it shouldn't be

04:23:51 10  entered to be in conformity therewith.

04:23:53 11          THE COURT:  I am not telling you you can't

04:23:55 12  right now try to challenge contributory negligence being

04:23:59 13  part of this case.  I'm saying we all benefit from

04:24:02 14  focusing on this now and putting the Court in the

04:24:06 15  position with benefit of briefing.  And so what you're

04:24:10 16  talking to me about is now making a motion specific to

04:24:15 17  this issue.  And when can you file it with your brief?

04:24:21 18  How quickly can you do that?

04:24:22 19          MS. EDWARDS:  Your Honor, just for

04:24:24 20  clarification, correct me if I'm wrong, but Ms. Beightol

04:24:30 21  wasn't asking to brief the issue of whether contrib

04:24:33 22  should be considered at all, but it wasn't raised as a

04:24:37 23  reason for an opposition to the motion in limine number

04:24:40 24  3 that plaintiff has already made regarding prior

04:24:43 25  dealings with law enforcement.  But the Court just

04:24:46  1    introduced that concept.   So we wanted a chance to

04:24:49  2    brief that.

04:24:52  3                THE COURT:  However you want to do it.   But

04:24:54  4    he's going to get a chance to respond, I think.

04:24:58  5                MS. BEIGHTOL:  That's fair.   And he had not

04:25:01  6    responded to our motion in limine, which is why we

04:25:03  7    wanted the extra briefing.  We're fine to have a

04:25:05  8    discourse in briefing.  We just thought it would be --

04:25:08  9                THE COURT:  Do you want to call it

04:25:10  10   supplemental?

04:25:10  11                MS. BEIGHTOL:  Exactly.

04:25:11  12                I'm sorry I did not articulate that

04:25:14  13   accurately.   But she did articulate what I was trying

04:25:17  14   to communicate.

04:25:18  15                THE COURT:  A good partnership.

04:25:19  16                How soon can you file your supplemental

04:25:22  17   brief?

04:25:23  18                MS. BEIGHTOL: End of the week?

04:25:28  19                THE COURT:  And then you're wanting to file

04:25:29  20   or needing to file a response to that.

04:25:32  21                MR. HARTZOG:  Within a week, a week of their

04:25:34  22   filing?  Would that be sufficient?

04:25:40  23                MS. EDWARDS:  We may be able to get it filed

04:25:43  24   sooner.   We'll file it as soon as it's ready.

04:25:46  25                THE COURT:  You have five days to respond

04:25:50  1   whenever they file it.  If it falls on the weekend, you

04:25:53  2   can carry it over to Monday.   The same for you.

04:25:58  3                Anything else?   All right.   So madam

04:26:05  4   clerk, would you like my law clerk to run upstairs and

04:26:08  5   get the keys?   You've got them right there.   So she's

04:26:13  6   going to show you what these rooms look like.   And you

04:26:16  7   can also open the door and give them a peek into the

04:26:19  8   jury room, and show them -- this will be the first trial

04:26:24  9   since COVID started, not the first one, but the first

04:26:28  10  one that we're doing in the pre-COVID ways.  We're

04:26:31  11  actually using the jury room versus the bankruptcy

04:26:34  12  hearing room.  We're actually seating everyone together.

04:26:37  13  We're actually going to pass the microphone that I put

04:26:41  14  in the hands of each person, and they answer a

04:26:46  15  preprinted set of questions.   Then they pass the

04:26:50  16  microphone.  And it goes around.   So if those who help

04:26:54  17  me stutter a little bit, it's because we're relearning

04:26:59  18  some of the pathways that we used to use two and a half,

04:27:04  19  three years ago.   And I'm excited about it.

04:27:10  20                And so you know that you each get three

04:27:14  21  strikes.   And so I'm going to be qualifying 16 people

04:27:19  22  to get to that ten.   Do you all have any questions

04:27:22  23  about that process?   And you're going to exercise your

04:27:25  24  strikes one, one, one, one, one.   And the last ten

04:27:31  25  people are the -- now, if you don't exercise all your

04:27:36  1  strikes, it's the first ten people.

04:27:39  2          MS. EDWARDS:  I had a question about if you

04:27:41  3  don't exercise all your strikes, how do we know who the

04:27:45  4  first ten people are?  Is that evident?

04:27:48  5          THE COURT:  You will be given a list after

04:27:50  6  check-in, so we know exactly who's come in.  And we'll

04:27:53  7  have our extra people for challenges, for cause.

04:28:04  8          Sandra, has there been some discussion

04:28:06  9  between you and the jury coordinator how many people I

04:28:10 10  wanted to come in?

04:28:11 11          THE CLERK:  Not at this time.

04:28:19 12          THE COURT:  Given the nature of the case,

04:28:21 13  let's have 38 people.  That's going to be more than

04:28:25 14  enough, don't you think, to pick the jury?

04:28:25 15          MS. EDWARDS:  Yes, Your Honor.

04:28:33 16          THE COURT: So, yes, you will have a sheet of

04:28:35 17  paper in your hands.  When it comes time for selection,

04:28:39 18  the clerk has made a chart, and it will have 16 people

04:28:42 19  in the order on the chart.  And we will give you the

04:28:49 20  official chart at time of selection after I've heard and

04:28:53 21  decided any challenges.  And we will give it first to

04:28:56 22  plaintiff, and you will strike one.  And it doesn't come

04:29:00 23  back to me; it goes right over there.  You will strike

04:29:02 24  one.  You will strike one.

04:29:04 25          And say it comes back to you, and you don't

04:29:07  1   strike anybody; you give it to them.  You're deemed to

04:29:13  2   have approved everybody who's left.

04:29:15  3           And likewise, if on pass you don't exercise

04:29:19  4   a strike, you're deemed to have approved everybody left.

04:29:25  5           And sometimes I get this question: Say I've

04:29:28  6   got the 16 people up here, and I strike somebody, say,

04:29:34  7   for cause.  And the person I strike for cause is seated

04:29:38  8   in the first box; they were the first person called.

04:29:41  9   And so then I bring up the 17th person who's out there

04:29:45  10  in the audience, and they slide by all those people, and

04:29:50  11  they take that first seat.  At that point I deem them

04:29:54  12  number one.  I let that control.  So don't think that

04:30:01  13  they're going to be the last person on your list.

04:30:03  14  They're going to be the first person.  Are you with me?

04:30:07  15           MR. HARTZOG:  The chair, not the person,

04:30:09  16  essentially?

04:30:09  17           THE COURT:  Yes.  That's pretty much it.

04:30:18  18  I'm trying to think of a competing scenario, but one

04:30:22  19  doesn't come to mind.  But at that point it's just a

04:30:27  20  whole lot easier to keep track of that.  That person

04:30:32  21  comes back to number one.

04:30:34  22           MS. EDWARDS:  Your Honor, I believe you said

04:30:35  23  this before, but there are no alternates?

04:30:38  24           THE COURT:  No.  So if we lose somebody, say

04:30:40  25  we lose somebody to COVID, we go down to nine.  Now, if

04:30:44 1   you feel strongly that I need to start with more, Judge

04:30:47 2   Britt would always try a civil case with 12 people, and

04:30:52 3   I have always tried with ten.   As long as we have six,

04:30:58 4   that's enough.   So there aren't alternates in civil

04:31:00 5   cases.

04:31:01 6              Do you feel that ten is enough?

04:31:03 7              MS. EDWARDS:  Yes, Your Honor.

04:31:06 8              MR. HARTZOG:  Yes, Your Honor.

04:31:08 9              THE COURT:  But it could go down to nine; it

04:31:10 10  could go down to eight.   We've had very good luck with

04:31:13 11  not losing people.   I think we've lost one person to

04:31:17 12  COVID over the whole time.   And I was trying case after

04:31:21 13  case after case.   So hopefully we'll be as fortunate.

04:31:27 14             Now, if we end up at a point where, say,

04:31:31 15  there are 11 people left, and somebody didn't exercise a

04:31:35 16  strike.  I might look at you and say:  Do you want all

04:31:38 17  11?   But you both have to agree to that.   Otherwise --

04:31:43 18  and we'd all have to know that some storm was coming,

04:31:47 19  some inclement whether.   But otherwise I keep to ten.

04:31:53 20             I'm tired of hearing myself speak.   Are

04:31:57 21  there any other questions that if answered now might be

04:32:00 22  helpful to you?

04:32:06 23             MS. EDWARDS:  No, Your Honor.

04:32:07 24             MR. HARTZOG:  Thank you, Your Honor.

04:32:08 25             THE COURT:  Good luck to both sides in your

04:32:09  1    continued preparation.   Ms. Collins will be looking

04:32:11  2    over the next couple days for you to call.   Give me a

04:32:15  3    couple dates and times for a telephonic conference.   If

04:32:17  4    there are questions that have come up between now and

04:32:20  5    then, I can answer them.

04:32:21  6                      Otherwise, I'll be on the lookout for your

04:32:23  7    briefing and your response.   And I appreciate the

04:32:32  8    opportunity to consider that more deeply.   Thank you.

          9                      (Concluded at 3:42 p.m.)

          10                            -  -  -

          11

          12                    **C E R T I F I C A T E**

          13

          14       I certify that the foregoing is a correct transcript

          15    from the record of proceedings in the above-entitled

          16    matter.

          17

          18    /s/ Tracy L. McGurk_____                ___2/20/2023___

          19    Tracy L. McGurk, RMR, CRR                       Date

          20

          21

          22

          23

          24

          25

**'**

**'21** [3] - 5:14, 5:21, 7:20

**/**

**/s** [1] - 145:18

**1**

**1** [9] - 26:5, 26:14, 44:25, 63:8, 63:18, 80:8, 80:9, 81:3, 121:7
**101-15** [4] - 16:3, 16:4, 16:5, 16:16
**1040** [1] - 86:5
**11** [2] - 144:15, 144:17
**11:10** [1] - 2:1
**12** [1] - 144:2
**13** [2] - 15:1, 25:22
**135** [1] - 45:14
**14** [1] - 16:16
**150** [2] - 1:16, 1:19
**16** [3] - 141:21, 142:18, 143:6
**164-5** [3] - 25:12, 25:13, 26:12
**17** [5] - 16:8, 16:15, 17:3, 62:15, 64:17
**170** [1] - 45:15
**178** [2] - 66:17, 66:23
**17th** [1] - 143:9
**18** [1] - 99:9
**19** [1] - 69:3
**1983** [2] - 104:17, 105:4, 135:24
**1:20** [1] - 46:3
**1st** [1] - 134:15

**2**

**2** [8] - 44:25, 63:8, 63:18, 66:23, 67:1, 80:8, 80:9, 81:3
**2/20/2023** [1] - 145:18
**20** [7] - 99:9, 106:25, 107:16, 108:24, 110:23, 111:10, 122:24
**2017_WL_3638452** [1] - 71:20
**2018** [3] - 108:21, 111:8, 136:7
**2021** [4] - 5:19, 10:1, 14:4, 22:18
**2022** [9] - 4:16, 4:24, 5:22, 8:6, 8:9, 8:11, 9:11, 40:11, 64:1
**2023** [2] - 1:7, 89:8

**20th** [1] - 9:2
**21** [3] - 8:8, 9:21, 107:6
**21-foot** [2] - 107:5, 107:8
**2100** [1] - 1:16
**213** [1] - 111:3
**21st** [1] - 8:16
**22** [1] - 25:17
**23** [1] - 99:7
**23-year** [1] - 98:14
**25** [2] - 42:1, 42:9
**26** [1] - 20:16
**27601** [1] - 1:16
**27611-5967** [1] - 1:19
**28560** [1] - 1:22

**3**

**3** [11] - 44:25, 63:8, 63:18, 66:23, 80:8, 80:9, 81:3, 86:6, 106:9, 106:10, 139:24
**38** [1] - 142:13
**392-6626** [1] - 1:22
**3:42** [1] - 145:9

**4**

**4** [6] - 43:20, 44:7, 45:2, 45:4, 81:3, 106:24
**4.06** [1] - 42:1
**40** [1] - 44:11
**401** [3] - 45:25, 48:19, 53:24
**402** [3] - 45:25, 48:20, 53:24
**403** [4] - 45:25, 48:20, 53:25
**404** [6] - 69:25, 77:9, 81:18, 82:18, 96:19, 99:16
**404(a** [1] - 86:14
**404(a)** [1] - 86:14
**404(b** [1] - 102:2
**406** [1] - 99:17
**413** [1] - 1:21
**419** [1] - 1:22
**450** [1] - 1:19
**4:00** [1] - 128:20

**5**

**5** [7] - 26:5, 26:14, 45:1, 63:8, 63:18, 107:19, 107:21
**5:20-cv-396-FL** [1] - 1:4

**6**

**6** [6] - 1:7, 25:17, 26:4, 44:1, 107:18, 108:6

**65** [4] - 98:20, 100:10, 101:12, 101:17
**6C** [1] - 27:3

**7**

**7** [4] - 8:10, 10:21, 13:22, 106:11
**784** [1] - 86:5
**79** [1] - 69:1
**7th** [3] - 8:21, 39:10, 39:12

**8**

**856-4236** [1] - 1:20
**856-4500** [1] - 1:17
**893** [1] - 111:3

**9**

**919** [2] - 1:17, 1:20
**9:00** [1] - 129:7

**A**

**a.m** [2] - 2:1, 129:7
**ability** [1] - 137:6
**able** [23] - 4:6, 5:2, 6:13, 6:17, 15:19, 19:12, 29:17, 30:21, 38:11, 42:25, 43:1, 47:22, 60:24, 64:10, 74:6, 75:8, 82:15, 88:16, 88:24, 89:2, 91:11, 123:13, 140:23
**above-entitled** [1] - 145:15
**absolutely** [10] - 25:4, 37:25, 53:2, 69:10, 69:11, 70:2, 71:7, 107:3, 132:9, 133:11
**abundance** [1] - 68:10
**accept** [1] - 33:1
**acceptable** [1] - 78:25
**accepted** [1] - 134:17
**access** [1] - 34:10
**accordance** [2] - 73:24, 88:17
**according** [1] - 12:6
**accordingly** [1] - 40:19
**accrue** [1] - 129:6
**accruing** [1] - 79:11
**accurate** [1] - 31:2
**accurately** [1] - 140:13
**accused** [2] - 42:19, 43:8
**accuses** [1] - 48:10
**accusing** [1] - 43:13
**act** [1] - 112:13
**acted** [6] - 69:24, 73:24, 77:8, 79:8, 87:6, 88:17

**acting** [1] - 85:22
**action** [1] - 55:22
**actively** [3] - 13:19, 13:23, 112:12
**activity** [1] - 72:1
**acts** [5] - 81:4, 81:5, 81:6, 85:4, 139:8
**actual** [1] - 26:14
**add** [4] - 38:6, 38:18, 60:21, 120:18
**Adderall** [5] - 130:23, 131:20, 131:21, 133:22, 134:16
**addition** [3] - 77:9, 109:2
**additional** [6] - 13:7, 17:21, 31:17, 56:11, 100:24, 122:2
**address** [3] - 3:23, 44:23, 123:19
**addressed** [4] - 27:4, 130:9, 130:19, 138:12
**addressing** [1] - 3:7
**adds** [2] - 88:12, 94:15
**administrator** [1] - 1:4
**admission** [2] - 18:7, 76:1
**admit** [2] - 91:2, 118:9
**admitted** [3] - 118:9, 119:11, 123:11
**adopting** [1] - 86:13
**advance** [2] - 108:8, 134:3
**advancement** [2] - 107:17, 108:18
**advancing** [3] - 108:14, 108:15, 110:10
**advice** [1] - 113:10
**advised** [3] - 38:2, 60:3, 60:4
**advocating** [1] - 65:9
**affairs** [10] - 86:20, 86:24, 88:18, 89:21, 89:24, 91:17, 97:1, 97:2, 101:4
**Affairs** [2] - 87:12, 88:10
**affecting** [1] - 83:10
**affidavit** [1] - 24:8
**affirmatively** [2] - 40:6, 92:20
**afield** [1] - 68:5
**aggressor** [3] - 85:13, 85:23, 86:11
**ago** [5] - 8:15, 13:18, 18:25, 30:7, 141:19
**agree** [13] - 6:8, 6:15, 18:16, 42:17, 49:12, 55:10, 58:23, 65:20, 99:18, 122:25, 132:10, 132:25, 144:17
**agreed** [2] - 120:2, 129:22
**agreement** [2] - 11:19, 65:9
**ahead** [4] - 26:3, 113:5, 117:1, 135:3
**albeit** [1] - 17:3
**alcohol** [1] - 91:12

**allegation** [4] - 11:1, 11:6, 30:15, 73:6
**allegations** [1] - 37:4
**alleged** [1] - 11:4
**alleviate** [2] - 61:6, 63:14
**allow** [5] - 7:16, 20:23, 22:7, 40:4, 104:7
**allowance** [1] - 60:22
**allowed** [15] - 7:18, 12:23, 16:9, 17:8, 20:18, 20:24, 21:2, 43:17, 45:24, 60:19, 79:20, 85:21, 88:9, 98:25, 125:23
**allowing** [1] - 62:3
**almost** [2] - 32:22, 69:6
**alone** [1] - 21:16
**Alpert** [1] - 131:16
**altered** [2] - 115:12, 131:20
**alternates** [2] - 143:23, 144:4
**alternative** [1] - 28:12
**alternatively** [1] - 25:25
**altogether** [1] - 80:1
**amended** [4] - 86:14, 132:18, 132:22, 136:20
**amending** [3] - 118:12, 122:2
**amount** [1] - 107:10
**amplifies** [1] - 136:3
**analysis** [6] - 24:21, 30:13, 44:16, 94:7, 101:3, 105:3
**analyzed** [1] - 37:21
**Anderson** [1] - 86:5
**answer** [15] - 11:2, 55:15, 74:25, 82:19, 92:17, 106:16, 106:18, 109:5, 121:24, 123:5, 126:14, 128:21, 129:17, 141:14, 145:5
**answered** [1] - 144:21
**answering** [1] - 121:23
**answers** [1] - 94:23
**Antonio** [1] - 1:5
**anxiety** [1] - 70:10
**anyway** [1] - 19:5
**apologize** [4] - 29:10, 29:11, 71:22, 73:7
**appearance** [1] - 3:1
**APPEARANCES** [1] - 1:14
**applied** [2] - 86:14, 134:17
**appreciate** [3] - 127:7, 129:25, 145:7
**appreciates** [1] - 113:25
**approached** [2] - 5:7, 6:4
**appropriate** [11] - 37:3, 69:25, 70:1, 71:13, 99:10, 100:19, 101:5, 102:23, 119:19, 120:3, 132:16
**appropriately** [1] - 111:22
**approval** [1] - 87:20

**approved** [2] - 143:2, 143:4
**April** [1] - 9:25
**area** [1] - 37:3
**areas** [1] - 53:7
**argue** [7] - 49:19, 49:20, 50:1, 50:4, 87:24, 88:4, 88:6
**argued** [1] - 49:18
**arguing** [4] - 22:23, 46:8, 91:6, 92:4
**argument** [11] - 23:15, 32:24, 44:5, 46:14, 46:24, 49:13, 49:15, 53:25, 84:12, 86:16, 91:16
**argumentative** [1] - 121:1
**arguments** [4] - 45:5, 48:13, 82:4, 82:6
**arm** [1] - 97:15
**armed** [2] - 50:11, 105:25
**arms** [1] - 108:2
**arrive** [1] - 51:5
**article** [1] - 49:21
**articulable** [1] - 106:22
**articulate** [2] - 140:12, 140:13
**aspects** [3] - 43:22, 115:6, 126:20
**assault** [1] - 112:11
**assaulted** [1] - 136:7
**assessing** [1] - 79:11
**assessment** [1] - 16:10
**assignment** [1] - 122:2
**assist** [1] - 138:3
**assistant** [1] - 31:8
**associate** [1] - 6:14
**assume** [6] - 3:18, 18:7, 50:3, 79:25, 80:1, 128:25
**assumed** [1] - 39:13
**assuming** [3] - 88:3, 116:22, 127:10
**assumption** [1] - 48:24
**attach** [2] - 113:5, 113:7
**attached** [2] - 15:11, 16:1
**attachment** [2] - 16:19, 16:21
**attack** [2] - 62:22, 81:20
**attacked** [8] - 39:22, 68:12, 74:8, 74:9, 75:19, 76:16, 79:3, 85:25
**attempt** [2] - 36:17, 80:21
**attempting** [1] - 36:8
**attendance** [1] - 2:19
**attention** [3] - 3:22, 73:8, 126:21
**Attorneys'** [1] - 1:15
**audience** [1] - 143:10
**audio** [1] - 118:1
**audio/visual** [1] - 123:12
**authenticate** [9] - 4:20, 9:11, 17:19, 20:19, 21:2,

24:7, 36:1, 40:15, 53:24
**authenticated** [2] - 30:2, 38:13
**authenticating** [9] - 4:17, 4:20, 4:23, 20:16, 24:15, 30:9, 39:5, 40:12, 53:22
**authentication** [1] - 17:23
**authenticity** [1] - 58:23
**authoritativeness** [1] - 49:5
**authority** [2] - 50:10, 107:7
**authorize** [1] - 106:7
**Autopsy** [1] - 121:7
**availabilities** [1] - 61:24
**availability** [1] - 61:15
**available** [4] - 39:11, 55:20, 60:4, 60:14
**average** [1] - 42:13
**avoid** [1] - 139:6
**award** [1] - 90:21
**aware** [14] - 4:22, 5:6, 6:17, 8:15, 13:6, 13:9, 31:15, 32:2, 66:1, 77:11, 77:17, 82:24, 82:25, 83:15

**B**

**back-ended** [1] - 66:3
**backdoor** [4] - 17:1, 18:16, 22:24, 93:20
**backfire** [1] - 101:1
**background** [1] - 13:3
**backtrack** [1] - 58:14
**backtracking** [1] - 60:5
**backwards** [2] - 70:14, 107:25
**bad** [6] - 11:23, 81:4, 81:5, 81:6, 96:12, 139:8
**balance** [1] - 78:12
**bankruptcy** [1] - 141:11
**bare** [1] - 44:25
**base** [1] - 129:13
**based** [5] - 14:14, 69:16, 73:18, 80:16, 99:21
**baseline** [1] - 42:8
**basis** [4] - 9:18, 10:17, 45:11, 133:5
**battery** [1] - 112:11
**bear** [2] - 72:21, 109:3
**bearing** [5] - 69:11, 85:5, 94:6, 95:15
**became** [1] - 7:24
**become** [2] - 53:8, 65:5
**becomes** [2] - 24:20, 25:3
**BEFORE** [1] - 1:12
**beforehand** [1] - 63:7
**begin** [1] - 104:17
**beginning** [3] - 10:2, 11:5, 25:17
**behalf** [1] - 14:1

**behavior** [2] - 87:21, 111:5
**behind** [4] - 125:4, 125:7, 125:9, 125:15
**Beightol** [2] - 2:21, 139:20
**BEIGHTOL** [87] - 8:7, 9:19, 12:17, 13:16, 15:23, 16:3, 16:6, 16:17, 17:12, 18:4, 18:9, 19:10, 19:21, 22:15, 23:17, 23:21, 24:6, 24:20, 26:7, 27:22, 32:8, 33:3, 33:11, 34:1, 34:6, 34:11, 35:22, 37:16, 37:23, 45:9, 45:12, 45:16, 45:21, 46:1, 46:11, 46:17, 46:23, 47:5, 47:11, 49:7, 52:6, 58:21, 60:1, 60:23, 61:8, 63:1, 65:4, 65:11, 66:16, 66:19, 67:2, 67:7, 68:19, 72:13, 72:15, 73:5, 77:6, 77:22, 78:13, 79:22, 80:6, 81:2, 112:25, 113:20, 114:12, 115:19, 116:4, 117:13, 122:18, 129:19, 131:2, 131:23, 132:9, 132:20, 133:11, 135:5, 137:7, 137:12, 137:20, 138:2, 138:8, 138:14, 138:20, 139:7, 140:5, 140:11, 140:18
**belabor** [1] - 22:15
**believes** [1] - 38:17
**below** [2] - 15:3, 15:4
**belt** [1] - 134:9
**bench** [1] - 56:4
**benefit** [2] - 139:13, 139:15
**benefits** [1] - 129:5
**Bern** [3] - 1:6, 1:22, 59:24
**best** [4] - 3:16, 112:25, 113:2, 137:6
**better** [1] - 84:18
**between** [9] - 35:3, 67:19, 75:16, 84:17, 96:11, 126:3, 128:8, 142:9, 145:4
**beyond** [2] - 37:2, 87:17
**bifurcating** [1] - 78:9
**big** [3] - 89:18, 93:22, 138:1
**bind** [1] - 61:11
**biology** [2] - 4:3, 9:5
**bit** [17] - 13:3, 44:8, 52:3, 56:1, 61:5, 71:21, 101:15, 102:19, 102:25, 115:4, 115:14, 123:2, 127:1, 127:3, 132:3, 138:7, 141:17
**bitten** [1] - 129:2
**blanche** [1] - 105:22
**Bode** [28] - 26:16, 26:22, 26:23, 27:7, 27:21, 28:15, 28:23, 29:7, 29:8, 32:11, 32:12, 32:13, 32:14, 33:3, 33:9, 33:23, 34:5, 34:10, 34:13, 34:22, 36:2, 36:14,

38:7, 56:17, 56:22, 56:25, 57:18, 58:3

**body** [18] - 7:3, 19:18, 51:6, 88:21, 89:7, 89:9, 89:14, 89:19, 93:18, 94:1, 94:4, 94:8, 94:22, 95:8, 95:15, 95:18, 95:22, 134:6

**body-worn** [1] - 134:6

**bones** [1] - 44:25

**book** [1] - 115:16

**box** [2] - 36:18, 143:8

**boys** [1] - 82:8

**Bracamontes** [22] - 4:10, 4:11, 4:21, 9:9, 17:14, 17:16, 17:19, 17:24, 18:2, 18:6, 18:10, 18:14, 20:14, 23:21, 24:7, 29:18, 30:2, 32:20, 37:1, 38:14, 40:17, 58:24

**Bracamontes's** [2] - 18:10, 24:8

**break** [3] - 45:5, 63:7, 132:11

**BRETT** [1] - 1:8

**brief** [14] - 48:9, 85:10, 86:6, 137:9, 137:14, 137:16, 137:19, 138:15, 139:2, 139:8, 139:17, 139:21, 140:2, 140:17

**briefed** [3] - 134:23, 137:24, 138:16

**briefing** [7] - 49:22, 49:24, 69:14, 139:15, 140:7, 140:8, 145:7

**briefs** [1] - 138:13

**bring** [21] - 4:6, 47:13, 58:15, 64:11, 64:20, 91:20, 93:10, 93:11, 93:20, 116:7, 117:23, 117:24, 118:1, 122:6, 122:19, 127:19, 129:22, 135:16, 136:20, 143:9

**bringing** [6] - 59:24, 65:25, 66:3, 73:7, 75:18, 92:10

**brings** [1] - 47:5

**Britt** [1] - 144:2

**broken** [1] - 136:8

**brother** [2] - 71:1, 82:2

**brothers** [2] - 82:5, 82:7

**brought** [2] - 3:22, 114:5

**building** [1] - 128:14

**bullet** [1] - 27:1

**bunch** [1] - 54:13

**burden** [3] - 66:6, 100:6

**burdening** [1] - 114:21

**business** [3] - 17:23, 24:1, 32:1

## C

**cabin** [1] - 62:13

**calendar** [1] - 59:21

**California** [2] - 72:25, 81:25

**cam** [1] - 51:6

**camera** [18] - 7:3, 19:19, 52:15, 88:21, 89:7, 89:14, 89:19, 93:18, 94:2, 94:4, 94:8, 94:20, 94:22, 95:8, 95:15, 95:18, 95:23, 134:6

**cameras** [1] - 89:10

**candid** [1] - 107:20

**candidly** [3] - 92:12, 104:21, 107:24

**cannot** [5] - 27:11, 27:14, 32:10, 40:17, 110:22

**cans** [1] - 53:7

**capability** [1] - 31:1

**capacity** [2] - 1:9, 31:4

**car** [2] - 85:3, 95:13

**care** [8] - 40:21, 69:3, 71:3, 76:4, 76:6, 76:7, 79:24, 117:20

**career** [2] - 98:15, 100:11

**careful** [4] - 37:1, 65:14, 126:21, 136:13

**carefully** [1] - 84:15

**CAROLINA** [1] - 1:1

**Carolina** [17] - 1:6, 27:5, 27:19, 28:19, 30:17, 31:9, 34:3, 34:8, 55:7, 55:8, 55:12, 57:19, 57:21, 70:14, 70:15, 90:19

**carry** [1] - 141:2

**carte** [1] - 105:22

**case** [126] - 3:1, 3:16, 3:23, 3:25, 5:7, 5:23, 6:7, 6:20, 7:12, 7:13, 7:20, 8:19, 9:6, 10:3, 10:6, 10:10, 10:12, 11:3, 11:18, 11:20, 11:22, 12:1, 12:2, 12:5, 12:7, 12:9, 12:12, 12:14, 12:20, 12:25, 13:4, 13:6, 13:24, 18:22, 18:24, 20:10, 21:15, 22:5, 22:17, 23:24, 24:8, 24:9, 24:25, 27:10, 27:14, 27:24, 28:10, 30:4, 31:11, 32:3, 33:15, 36:16, 39:1, 39:8, 39:18, 39:20, 39:21, 42:18, 42:19, 42:24, 43:14, 43:18, 44:9, 44:15, 44:24, 47:8, 47:10, 47:12, 48:14, 50:9, 50:21, 51:19, 53:10, 53:17, 54:1, 54:4, 54:8, 55:19, 60:25, 61:2, 61:20, 62:6, 62:21, 64:21, 65:24, 69:4, 69:10, 71:8, 71:15, 71:19, 71:25, 72:19, 73:13, 78:9,

81:12, 81:22, 82:22, 84:11, 85:16, 85:17, 85:18, 86:3, 86:12, 87:1, 87:4, 87:6, 91:10, 91:13, 94:7, 96:17, 100:20, 105:16, 107:3, 111:2, 111:18, 112:5, 124:5, 135:23, 139:13, 142:12, 144:2, 144:12, 144:13

**Case** [4] - 27:6, 27:20, 28:23, 34:5

**cases** [3] - 25:18, 44:3, 144:5

**categories** [2] - 66:23, 67:11

**category** [5] - 67:1, 102:14, 119:25, 134:2, 134:8

**Catharine** [1] - 2:20

**Catie** [1] - 15:18

**Caudle** [2] - 53:1, 54:16

**caused** [1] - 39:10

**caution** [1] - 68:10

**caveat** [2] - 80:8, 80:10

**CD** [1] - 119:12

**CDs** [1] - 119:13

**cell** [1] - 112:15

**certain** [2] - 95:10, 123:3

**certainly** [13] - 11:8, 15:14, 20:6, 25:21, 43:23, 51:17, 58:20, 72:19, 77:23, 77:24, 79:21, 97:25, 112:22

**certified** [1] - 145:14

**certify** [1] - 145:14

**Chad** [1] - 54:16

**chair** [2] - 124:1, 143:15

**challenge** [1] - 139:12

**challenges** [2] - 142:7, 142:21

**challenging** [1] - 25:15

**chance** [5] - 59:11, 77:20, 139:6, 140:1, 140:4

**change** [1] - 59:16

**changed** [1] - 64:2

**character** [5] - 67:13, 68:2, 68:3, 84:9, 85:12

**characterization** [1] - 24:5

**characterize** [1] - 68:6

**charges** [1] - 91:20

**chart** [6] - 125:23, 126:23, 127:21, 142:18, 142:19, 142:20

**charts** [1] - 126:23

**check** [2] - 60:15, 142:6

**check-in** [1] - 142:6

**Chelsea** [1] - 2:22

**chief** [26] - 3:25, 6:7, 8:20, 10:6, 10:10, 11:18, 11:20, 11:22, 12:5, 12:20, 18:22, 18:24, 22:17, 24:25, 27:10, 30:4, 31:11, 32:3, 36:16, 39:9, 47:9, 47:10, 47:12,

62:7, 62:22, 64:21

**chiefing** [1] - 65:24

**child** [3] - 67:24, 75:16, 76:7

**choice** [1] - 128:13

**choices** [1] - 129:16

**chooses** [1] - 129:21

**chosen** [1] - 68:6

**Circuit** [12] - 85:10, 85:16, 85:20, 86:3, 86:12, 87:4, 105:19, 108:4, 108:11, 108:20, 108:22, 111:25

**circulating** [1] - 115:21

**circumstance** [2] - 83:5, 84:4

**cite** [5] - 24:10, 25:7, 85:14, 86:2, 111:1

**cited** [2] - 48:9, 85:10

**city** [1] - 106:1

**civil** [6] - 3:14, 115:6, 115:11, 116:23, 144:2, 144:5

**claim** [3] - 69:12, 135:24, 136:2

**claims** [1] - 52:14

**clarification** [6] - 34:13, 50:5, 50:20, 62:3, 84:22, 139:20

**clarified** [1] - 26:14

**clarify** [5] - 28:17, 29:17, 32:9, 117:13, 118:21, 138:24

**clarifying** [4] - 38:6, 48:25, 113:20, 121:15

**classes** [1] - 25:24

**cleanly** [1] - 73:9

**clear** [16] - 4:25, 54:9, 54:21, 55:3, 62:22, 68:25, 77:12, 78:7, 78:22, 83:13, 90:20, 90:23, 107:16, 119:22, 124:18, 139:6

**clearly** [17] - 48:8, 54:6, 90:8, 104:15, 104:20, 104:24, 105:20, 106:18, 107:14, 108:4, 109:4, 110:21, 111:7, 111:8, 111:16, 112:2, 115:22

**Clement** [40] - 3:24, 4:5, 5:2, 5:20, 6:7, 6:11, 7:19, 8:1, 8:19, 9:7, 9:25, 10:15, 10:18, 11:9, 12:20, 12:23, 14:5, 14:25, 16:2, 17:16, 17:20, 18:4, 18:10, 18:15, 18:21, 20:23, 21:4, 21:9, 21:10, 23:18, 36:11, 39:10, 51:2, 58:15, 59:7, 60:13, 62:3, 63:9, 63:22, 64:6

**Clement's** [2] - 14:12, 17:7

**Clemmons** [1] - 2:22

**clerk** [7] - 15:17, 114:24, 117:25, 124:17, 141:4, 142:18

**CLERK** [12] - 113:18, 114:25, 116:24, 117:12, 118:4, 118:14, 118:18, 119:2, 119:21, 122:9, 127:18, 142:11
**click** [1] - 116:6
**client** [4] - 53:17, 65:9, 96:12, 133:3
**client's** [1] - 100:14
**cloaked** [1] - 110:2
**closed** [1] - 17:13
**closer** [2] - 107:1, 132:1
**closing** [1] - 46:14
**co** [4] - 9:23, 18:19, 49:14, 133:14
**co-counsel** [4] - 9:23, 18:19, 49:14, 133:14
**collect** [2] - 29:15, 118:9
**collected** [1] - 29:12
**collection** [1] - 5:12
**Collins** [2] - 113:9, 145:1
**column** [4] - 120:17, 120:18, 120:19, 120:24
**comfortable** [1] - 128:10
**coming** [6] - 6:15, 22:20, 26:21, 122:5, 123:3, 144:18
**comings** [1] - 6:13
**commands** [2] - 109:11, 110:25
**Commenced** [1] - 2:1
**commit** [1] - 74:24
**commitment** [1] - 70:7
**commitments** [1] - 69:7
**committed** [11] - 67:22, 70:21, 72:19, 74:7, 74:21, 76:18, 76:19, 79:3, 79:15, 112:11
**communicate** [1] - 140:14
**compelling** [3] - 7:8, 80:25, 126:15
**competing** [1] - 143:18
**complaint** [3] - 11:3, 91:3
**completely** [4] - 51:3, 87:14, 90:17, 107:20
**complex** [1] - 25:9
**complies** [1] - 44:17
**comply** [2] - 105:18, 118:3
**compromise** [3] - 6:5, 63:5, 92:10
**concede** [2] - 96:15, 103:18
**concept** [5] - 5:18, 81:25, 82:10, 109:22, 140:1
**concern** [7] - 34:10, 36:3, 40:22, 61:7, 73:15, 77:24, 78:16
**concerned** [7] - 32:18, 71:23, 71:24, 72:3, 77:13, 79:16, 131:15
**concerning** [1] - 84:5
**concerns** [3] - 65:1, 77:16,

126:3
**Concluded** [1] - 145:9
**conclusion** [4] - 27:17, 28:8, 41:15, 49:18
**conclusions** [1] - 28:16
**conclusive** [2] - 37:22, 47:15
**conduct** [5] - 90:23, 90:25, 95:20, 102:9, 131:19
**conducted** [1] - 44:12
**confer** [2] - 122:15, 122:16
**conference** [3] - 12:5, 127:24, 145:3
**Conference** [1] - 1:7
**CONFERENCE** [1] - 1:12
**confidence** [1] - 51:1
**confident** [2] - 3:8, 43:1
**conflict** [1] - 35:23
**conflicting** [1] - 19:17
**conformity** [5] - 69:25, 77:8, 79:9, 102:6, 139:10
**confronted** [1] - 96:13
**confuse** [4] - 25:4, 37:9, 69:22, 94:12
**confused** [2] - 41:19, 103:9
**confuses** [1] - 88:13
**confusing** [7] - 33:13, 41:11, 52:10, 65:24, 87:18, 88:7, 92:13
**confusion** [4] - 29:23, 32:17, 55:2, 55:4
**connection** [2] - 18:13, 49:8
**Connor** [3] - 106:2, 108:9, 108:10
**consent** [3] - 5:9, 56:12, 63:18
**consented** [1] - 5:12
**consider** [8] - 42:25, 57:18, 61:6, 67:18, 80:12, 80:14, 90:21, 145:8
**considered** [5] - 58:15, 64:11, 79:6, 79:8, 139:22
**considering** [2] - 39:24, 93:13
**consistent** [1] - 131:19
**constitutional** [1] - 104:15
**consumption** [1] - 72:4
**contacted** [1] - 40:2
**contained** [2] - 22:11, 75:20
**content** [1] - 97:2
**contention** [1] - 42:21
**context** [11] - 46:23, 97:11, 98:20, 111:6, 111:15, 112:8, 112:9, 112:13, 131:10, 133:11, 137:12
**continued** [3] - 49:20, 53:15, 145:1
**contours** [1] - 60:21

**contradict** [1] - 82:11
**contrib** [2] - 137:8, 139:21
**contribute** [1] - 139:5
**contributor** [4] - 7:6, 14:15, 41:25, 42:1
**contributory** [7] - 135:11, 135:22, 136:3, 137:25, 138:19, 138:25, 139:12
**control** [3] - 24:17, 64:23, 143:12
**controlled** [1] - 24:18
**controlling** [1] - 121:24
**convenient** [1] - 114:2
**conversation** [3] - 8:3, 8:8, 77:9
**cooperation** [1] - 105:21
**coordinate** [1] - 124:10
**coordinator** [1] - 142:9
**copies** [1] - 122:20
**copy** [6] - 117:16, 118:7, 122:18, 122:20, 123:7, 123:11
**corner** [1] - 124:15
**correct** [26] - 6:23, 8:12, 8:13, 8:17, 9:14, 12:17, 29:6, 34:18, 34:21, 35:18, 35:22, 35:25, 37:25, 49:2, 50:24, 56:19, 57:10, 62:16, 74:16, 75:18, 92:1, 103:13, 103:21, 118:14, 139:20, 145:14
**Correct** [2] - 34:25, 74:14
**correcting** [1] - 3:4
**correctly** [2] - 36:4, 135:15
**counsel** [29] - 2:18, 3:7, 4:22, 5:7, 5:24, 6:5, 6:8, 6:17, 7:22, 9:23, 18:19, 27:18, 30:7, 31:14, 31:17, 33:14, 36:13, 40:2, 40:5, 40:8, 49:14, 56:9, 64:1, 78:4, 79:2, 110:19, 128:3, 133:14, 138:10
**counting** [1] - 27:16
**country** [1] - 72:24
**County** [10] - 106:3, 107:15, 108:10, 108:20, 110:18, 111:7, 111:13, 111:16, 112:1, 112:4
**couple** [12] - 9:19, 48:4, 50:8, 75:13, 84:23, 116:23, 125:1, 129:16, 130:8, 132:11, 145:2, 145:3
**course** [9] - 40:20, 47:7, 58:25, 82:5, 86:16, 123:8, 136:12, 136:24, 137:23
**COURT** [311] - 1:1, 2:2, 2:4, 2:8, 2:14, 2:17, 2:23, 3:4, 4:11, 5:1, 8:3, 8:14, 8:23, 9:3, 9:12, 9:16, 12:15, 12:18, 13:12, 13:15, 14:10, 14:21, 15:6, 15:12, 16:5, 16:11,

16:14, 16:21, 16:25, 17:10, 17:15, 18:3, 18:6, 19:7, 19:20, 20:8, 21:8, 21:24, 22:13, 23:15, 23:20, 23:25, 24:17, 25:10, 25:14, 25:21, 26:6, 26:13, 26:16, 26:21, 27:1, 27:18, 27:23, 28:18, 28:22, 30:17, 31:4, 31:10, 31:20, 31:23, 32:4, 32:23, 33:6, 33:24, 34:2, 34:7, 34:16, 34:19, 34:23, 35:1, 35:8, 35:12, 35:16, 35:19, 37:14, 37:19, 38:5, 38:25, 39:22, 40:16, 40:21, 41:17, 41:25, 42:8, 42:15, 43:19, 43:25, 44:24, 45:6, 45:11, 45:13, 45:18, 45:24, 46:2, 46:7, 46:12, 46:22, 47:8, 47:13, 47:25, 48:2, 48:23, 49:3, 50:1, 50:23, 50:25, 51:22, 55:6, 55:15, 55:21, 56:7, 56:14, 56:17, 56:25, 57:4, 57:8, 57:11, 57:17, 58:2, 58:11, 58:14, 58:19, 58:22, 59:3, 59:11, 59:17, 59:23, 60:7, 60:13, 60:19, 61:4, 61:21, 61:25, 62:5, 62:14, 62:21, 63:17, 64:5, 64:19, 65:7, 66:9, 66:12, 66:18, 66:25, 67:6, 67:12, 68:2, 68:18, 72:10, 72:14, 73:2, 73:20, 74:12, 74:15, 74:20, 74:24, 75:3, 75:13, 75:23, 76:5, 76:12, 77:2, 77:19, 77:25, 78:23, 80:3, 80:14, 81:5, 82:19, 83:4, 83:17, 83:22, 83:24, 84:15, 85:7, 85:15, 86:2, 86:7, 86:12, 86:18, 87:23, 88:8, 89:4, 89:17, 90:8, 90:12, 91:19, 91:22, 92:22, 93:1, 93:14, 93:22, 94:14, 94:19, 95:2, 95:9, 95:17, 96:1, 96:8, 96:20, 97:3, 97:8, 97:18, 98:9, 98:13, 98:16, 98:25, 99:11, 99:14, 99:24, 100:2, 100:5, 100:13, 101:1, 101:10, 101:22, 102:2, 102:11, 102:17, 102:24, 103:8, 103:14, 103:23, 104:1, 104:9, 109:16, 110:7, 110:13, 111:1, 111:19, 112:5, 112:20, 113:4, 113:16, 114:5, 114:24, 115:2, 116:2, 116:11, 116:18, 116:25, 117:17, 117:23, 118:11, 118:15, 118:23, 119:24, 120:5, 120:14, 120:23, 121:14, 121:22, 122:10, 122:21, 124:14, 125:5, 125:8,

125:14, 125:24, 126:1,
126:8, 126:14, 126:18,
127:3, 127:7, 127:15,
127:21, 128:1, 128:5, 128:8,
128:18, 129:2, 130:1,
130:12, 130:19, 130:25,
131:17, 132:6, 132:22,
133:8, 134:13, 134:24,
135:6, 135:11, 135:19,
135:25, 136:6, 136:12,
136:16, 136:19, 137:10,
137:18, 138:1, 138:5,
138:18, 138:23, 139:3,
139:11, 140:3, 140:9,
140:15, 140:16, 140:19,
140:25, 142:5, 142:12,
142:16, 143:17, 143:24,
144:9, 144:25
  **court** [7] - 25:18, 44:3,
61:16, 66:11, 86:13, 116:11,
123:24
  **Court** [38] - 1:21, 4:1, 9:17,
11:21, 18:16, 20:23, 22:4,
22:6, 23:11, 36:25, 38:17,
38:18, 39:23, 40:8, 45:16,
63:4, 63:13, 65:12, 66:6,
71:13, 71:24, 72:1, 73:17,
78:22, 88:16, 103:15,
111:12, 114:22, 115:21,
119:6, 120:10, 131:14,
134:14, 137:8, 138:3,
139:14, 139:25
  **Court's** [4] - 3:15, 17:2,
73:8, 132:4
  **courtroom** [4] - 64:12,
116:10, 117:6, 124:19
  **courts** [4] - 25:16, 69:14,
71:11, 137:22
  **COVID** [4] - 141:9, 141:10,
143:25, 144:12
  **cracks** [2] - 138:6, 138:9
  **crafted** [1] - 51:23
  **creates** [2] - 63:12, 112:19
  **credibility** [4] - 71:17,
71:18, 72:6, 96:17
  **credible** [1] - 81:20
  **credit** [1] - 133:14
  **crime** [2] - 33:20, 35:25
  **Crime** [16] - 27:6, 27:20,
28:6, 28:10, 28:20, 29:1,
29:2, 29:9, 31:7, 31:16,
31:18, 34:3, 34:8, 55:7, 56:4
  **criminal** [2] - 87:22, 91:20
  **criteria** [1] - 44:19
  **critical** [2] - 109:9, 109:11
  **criticism** [1] - 65:15
  **criticize** [1] - 66:2
  **cross** [5] - 74:6, 79:1, 93:1,
95:2, 95:4
  **cross-examination** [2] -

74:6, 79:1
  **CRR** [2] - 1:21, 145:19
  **crucial** [1] - 6:19
  **crystal** [1] - 90:23
  **cuff** [1] - 132:17
  **current** [2] - 63:16, 109:14
  **curriculum** [1] - 25:23
  **custodian** [1] - 23:25
  **Cybergenetics** [29] - 4:18,
9:10, 23:20, 26:11, 26:17,
27:2, 27:16, 29:16, 32:15,
33:8, 34:19, 35:1, 35:5, 36:2,
36:7, 36:8, 48:19, 49:1, 49:5,
56:8, 56:21, 57:2, 58:6,
58:16, 58:23, 62:18, 63:19,
64:3, 64:9

# D

  **damage** [1] - 68:7
  **damages** [21] - 67:16, 68:1,
68:16, 70:3, 70:4, 74:1, 78:6,
78:11, 79:11, 83:3, 83:5,
84:14, 90:18, 90:22, 91:6,
91:10, 91:16, 92:4, 102:10
  **Dan** [1] - 2:24
  **dances** [1] - 37:3
  **danger** [1] - 137:22
  **data** [7] - 27:3, 28:8, 38:7,
38:16, 38:17, 44:15, 44:16
  **Date** [1] - 145:19
  **date** [8] - 9:1, 9:21, 9:22,
9:23, 79:19, 100:20, 129:1
  **dates** [2] - 8:13, 145:3
  **David** [1] - 23:6
  **days** [9] - 61:13, 61:14,
113:24, 114:11, 115:7,
118:21, 137:3, 140:25, 145:2
  **DE** [3] - 25:12, 26:11
  **deadline** [6] - 5:17, 18:20,
23:2, 39:8, 55:25, 56:1
  **deadly** [6] - 50:10, 85:18,
105:23, 106:7, 106:22, 111:9
  **deal** [4] - 25:15, 89:18,
93:22, 126:9
  **dealing** [1] - 87:25
  **dealings** [3] - 135:12,
138:21, 139:25
  **dealt** [2] - 67:9, 69:19
  **death** [1] - 79:11
  **deceased** [1] - 68:22
  **decedent** [7] - 2:7, 2:9,
2:12, 82:22, 85:23, 110:8,
139:4
  **December** [16] - 5:14, 5:19,
5:21, 7:20, 8:5, 8:10, 8:21,
10:1, 10:20, 11:8, 13:22,
14:4, 22:18, 39:10, 39:12,
134:15

  **decide** [4] - 62:24, 103:24,
110:15, 129:3
  **decided** [3] - 109:16,
109:23, 142:21
  **decision** [16] - 28:3, 73:18,
85:10, 86:15, 86:25, 87:12,
87:15, 88:18, 91:20, 103:1,
103:12, 104:6, 104:8, 109:9,
129:9, 130:21
  **decisions** [3] - 122:3, 124:4
  **declaration** [12] - 11:10,
16:1, 16:3, 16:18, 16:20,
16:24, 18:11, 24:9, 26:10,
32:21, 49:8, 49:9
  **declining** [1] - 11:19
  **deem** [1] - 143:11
  **deemed** [3] - 98:2, 143:1,
143:4
  **deeply** [1] - 145:8
  **defendant** [22] - 19:15,
19:19, 21:9, 26:1, 46:12,
47:13, 77:16, 79:10, 80:24,
81:1, 82:10, 83:25, 85:11,
87:24, 97:24, 104:21, 105:9,
110:8, 110:10, 120:7,
134:14, 137:7
  **Defendant** [20] - 1:10, 1:18,
2:23, 23:9, 24:24, 25:7, 33:5,
33:17, 45:20, 46:10, 46:18,
52:25, 69:18, 77:11, 92:15,
96:14, 120:18, 121:9, 131:2,
132:7
  **defendant's** [9] - 3:24,
12:19, 24:4, 51:20, 56:1,
103:3, 119:18, 131:19,
137:10
  **Defendant's** [3] - 119:19,
120:13, 138:9
  **Defender** [1] - 1:18
  **defense** [7] - 24:23, 78:4,
79:1, 85:22, 128:3, 128:22,
135:20
  **defer** [2] - 88:15, 120:10
  **deferred** [1] - 131:17
  **definitely** [1] - 121:25
  **degree** [1] - 36:22
  **delay** [3] - 63:12, 63:16,
66:5
  **demeanor** [1] - 68:8
  **demonstrative** [1] - 126:24
  **denied** [3] - 76:24, 80:6,
134:25
  **denominated** [1] - 21:9
  **denying** [1] - 12:19
  **Department** [4] - 86:20,
87:3, 89:10, 91:25
  **department** [1] - 91:17
  **Department's** [1] - 87:12
  **depose** [7] - 6:1, 11:25,
12:1, 59:7, 59:25, 60:2

  **deposition** [8] - 12:8,
48:12, 60:16, 60:20, 61:18,
81:23, 130:23, 133:15
  **depositions** [4] - 61:17,
65:13, 66:14, 130:4
  **describe** [1] - 76:13
  **deserved** [1] - 53:17
  **designate** [3] - 11:17,
21:16, 22:17
  **designated** [11] - 5:5, 5:16,
5:20, 7:19, 9:8, 11:9, 14:5,
14:6, 21:12, 23:4, 28:5
  **designation** [2] - 10:15,
11:11, 14:7, 15:24, 23:1,
23:5
  **designed** [1] - 95:6
  **despite** [1] - 64:11
  **detail** [1] - 104:12
  **determination** [4] - 34:15,
91:1, 104:16, 138:4
  **determinations** [1] - 86:19
  **determinative** [3] - 19:4,
19:25, 37:12
  **determine** [1] - 73:10
  **determined** [4] - 13:5, 28:7,
87:1, 88:23
  **determines** [1] - 87:16
  **developed** [1] - 27:4
  **diagnose** [1] - 73:10
  **diagnoses** [5] - 70:24,
70:25, 71:4, 72:16, 75:14
  **diagnosis** [2] - 72:11, 73:3
  **dialogue** [2] - 3:13, 8:4
  **difference** [3] - 50:19,
60:11, 96:11
  **different** [17] - 9:20, 25:18,
30:19, 31:1, 54:13, 70:12,
75:3, 84:4, 87:14, 90:17,
99:8, 101:19, 112:8, 112:14,
113:1, 121:22, 123:4
  **differently** [1] - 73:21
  **difficult** [1] - 4:4
  **dig** [1] - 127:18
  **dilute** [1] - 86:15
  **direct** [2] - 14:19, 78:2
  **directed** [2] - 83:9, 138:19
  **direction** [1] - 114:17
  **directions** [1] - 114:14
  **directly** [6] - 2:9, 14:16,
76:2, 78:4, 83:25, 112:4
  **director** [1] - 31:8
  **disagree** [1] - 22:2
  **disagreement** [2] - 17:5,
123:24
  **disciplined** [1] - 101:11
  **disclose** [2] - 4:15, 68:10
  **disclosed** [3] - 5:15, 21:15,
56:2
  **disclosure** [7] - 5:17, 7:22,
18:20, 30:5, 31:13, 55:25,

56:2

**disclosures** [18] - 4:15, 4:25, 9:17, 10:18, 10:24, 11:21, 13:11, 20:17, 30:5, 30:6, 31:14, 39:5, 39:6, 40:13, 45:10, 53:20, 56:21, 99:23
**discourse** [1] - 140:8
**discovery** [4] - 12:7, 30:7, 39:19, 100:7
**discrepancy** [1] - 118:20
**discretion** [5] - 12:16, 12:18, 22:4, 37:1, 131:24
**discuss** [3] - 37:18, 61:5, 86:5
**discussed** [2] - 73:13, 134:8
**discussing** [1] - 63:6
**Discussion** [1] - 47:4
**discussion** [2] - 32:16, 142:8
**discussions** [1] - 63:14
**disk** [5] - 117:7, 117:10, 117:12, 117:15, 117:19
**disks** [2] - 115:25, 118:1
**disobey** [1] - 109:10
**dispensation** [1] - 3:5
**disproves** [1] - 54:24
**dispute** [1] - 66:17
**disputed** [1] - 110:7
**disputes** [2] - 20:4, 66:14
**disregard** [1] - 104:3
**distinguished** [1] - 131:21
**distract** [1] - 123:9
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [2] - 3:7, 71:19
**DIVISION** [1] - 1:2
**DNA** [91] - 4:3, 5:6, 5:9, 5:12, 5:13, 5:19, 6:19, 6:24, 7:5, 7:7, 9:6, 11:7, 12:12, 13:4, 13:5, 13:7, 13:8, 13:17, 13:24, 14:3, 14:14, 14:15, 15:1, 15:3, 20:7, 21:7, 21:14, 21:22, 24:21, 24:25, 25:9, 27:3, 29:8, 29:13, 29:14, 29:16, 29:17, 29:18, 29:19, 29:22, 29:25, 30:12, 30:23, 30:24, 31:1, 31:2, 32:6, 34:15, 34:16, 34:20, 34:24, 35:3, 35:4, 35:7, 35:10, 35:13, 35:15, 37:17, 38:11, 42:5, 42:7, 42:9, 42:22, 43:2, 46:8, 46:24, 46:25, 47:6, 47:18, 48:21, 51:2, 52:16, 54:24, 55:9, 55:12, 56:13, 56:14, 56:15, 57:7, 57:12, 57:14, 57:16, 57:16, 57:24, 57:25, 58:5, 58:7
**docket** [7] - 15:7, 15:10,

16:4, 25:11, 66:17, 66:23, 113:12
**Docket** [1] - 1:4
**doctor** [4] - 75:14, 75:25, 76:1, 78:19
**document** [9] - 20:19, 20:20, 20:25, 32:14, 32:15, 38:1, 45:8, 45:10, 97:14
**documented** [2] - 100:16, 101:2
**documents** [5] - 92:17, 114:18, 114:20, 123:3, 123:7
**Donahue** [1] - 71:19
**done** [20] - 13:7, 21:25, 25:16, 28:22, 29:2, 38:24, 56:11, 57:5, 57:7, 57:19, 57:21, 62:18, 68:11, 68:15, 78:11, 81:15, 100:15, 110:3, 115:1, 118:16
**door** [6] - 80:16, 80:23, 80:25, 82:17, 101:8, 141:7
**doors** [1] - 52:11
**dot** [1] - 35:21
**double** [1] - 78:9
**doubt** [2] - 40:16, 87:17
**dovetail** [1] - 67:4
**down** [11] - 11:16, 15:6, 59:22, 75:25, 77:3, 102:25, 108:2, 126:25, 143:25, 144:9, 144:10
**downstairs** [1] - 108:14
**Dr** [40] - 6:3, 6:10, 7:24, 7:25, 8:10, 8:20, 8:22, 9:24, 10:11, 10:16, 10:22, 11:11, 11:14, 11:17, 12:11, 12:14, 13:19, 13:22, 14:9, 14:12, 15:13, 17:3, 18:12, 18:18, 19:6, 21:20, 23:11, 24:12, 32:22, 33:16, 49:9, 55:21, 55:23, 56:10, 60:3, 60:24, 131:15, 131:16, 133:21
**draft** [1] - 113:2
**drafting** [2] - 78:24, 115:4
**draw** [5] - 41:15, 56:12, 56:14, 64:16, 107:10
**drawing** [1] - 127:11
**drawn** [1] - 48:8
**drive** [3] - 116:7, 117:10, 117:19
**drives** [1] - 115:25
**drop** [2] - 108:13, 109:11
**drove** [1] - 134:7
**drugs** [3] - 121:3, 133:3, 133:16
**due** [4] - 13:11, 15:3, 21:1, 113:23
**during** [9] - 2:8, 19:16, 40:1, 125:3, 126:7, 126:12, 127:9, 132:11, 136:24
**DVD** [1] - 129:22

## E

**earliest** [1] - 109:23
**early** [2] - 59:18, 110:3
**easel** [3] - 127:15, 127:17, 127:19
**easier** [3] - 2:13, 113:22, 143:20
**Eastern** [1] - 3:6
**EASTERN** [1] - 1:1
**economies** [1] - 59:19
**economy** [1] - 98:5
**edged** [1] - 78:9
**EDWARDS** [66] - 1:8, 2:3, 2:6, 2:10, 2:20, 29:5, 34:12, 34:18, 34:21, 34:25, 35:14, 35:18, 45:14, 50:5, 50:24, 55:14, 55:18, 55:23, 59:6, 60:10, 60:18, 62:2, 81:17, 84:21, 86:9, 86:22, 88:2, 89:6, 90:15, 92:9, 96:10, 96:25, 97:4, 97:23, 99:3, 99:13, 102:5, 102:15, 102:22, 104:11, 109:21, 112:7, 113:13, 116:16, 119:15, 120:1, 120:9, 120:20, 121:10, 122:17, 124:25, 125:6, 125:19, 125:25, 126:11, 127:2, 127:12, 127:19, 127:25, 139:19, 140:23, 142:2, 142:15, 143:22, 144:7, 144:23
**Edwards** [75] - 2:20, 2:25, 5:11, 6:21, 6:25, 7:5, 7:9, 7:17, 10:3, 10:4, 11:5, 14:14, 14:17, 14:19, 17:9, 19:15, 19:19, 21:6, 22:9, 23:9, 25:7, 29:14, 29:17, 29:20, 29:24, 30:11, 33:5, 33:17, 35:3, 35:11, 38:10, 42:12, 42:19, 42:25, 43:7, 43:8, 46:10, 46:12, 46:18, 48:7, 48:11, 48:12, 50:2, 50:7, 50:9, 50:17, 51:8, 51:13, 51:14, 52:1, 52:4, 52:25, 54:11, 68:12, 69:18, 73:8, 73:24, 77:11, 86:25, 88:21, 89:7, 89:22, 92:15, 92:25, 95:23, 96:14, 106:12, 106:13, 107:1, 107:11, 107:22, 108:7, 110:5, 131:2, 139:5
**Edwards's** [18] - 5:9, 5:19, 21:22, 24:24, 29:8, 29:21, 34:14, 34:20, 35:17, 36:13, 42:5, 42:9, 56:14, 56:15, 57:14, 105:18, 130:16, 138:9
**effect** [4] - 93:4, 130:22, 133:22, 134:16

**effective** [1] - 67:5
**effectively** [3] - 10:21, 12:11, 33:17
**efficiencies** [1] - 3:13
**efficiency** [1] - 116:25
**efficient** [2] - 66:25, 67:5
**efficiently** [1] - 3:17
**effort** [2] - 17:1, 84:2
**eight** [2] - 44:13, 144:10
**either** [5] - 27:19, 78:21, 116:5, 120:3, 129:21
**elected** [1] - 59:8
**electronic** [6] - 114:4, 114:15, 115:20, 116:3, 117:14, 117:19
**electronics** [1] - 113:25
**elements** [1] - 127:14
**elevating** [1] - 109:6
**elicit** [2] - 101:22, 133:1
**eliciting** [1] - 62:22
**Elizabeth** [4] - 28:5, 28:9, 28:14, 28:17
**email** [1] - 113:13
**emailed** [1] - 61:24
**emails** [1] - 61:25
**embraces** [1] - 45:8
**emphasize** [1] - 123:17
**emphasizing** [1] - 45:6
**empirically** [1] - 44:17
**encompasses** [1] - 48:22
**encounter** [1] - 136:11
**encourage** [1] - 32:21
**end** [16] - 44:2, 59:15, 59:18, 115:10, 116:19, 117:1, 117:6, 118:5, 118:6, 118:10, 119:7, 120:24, 128:4, 133:24, 140:18, 144:14
**ended** [1] - 66:3
**ends** [1] - 16:16
**enforcement** [11] - 83:10, 83:19, 84:7, 84:17, 85:18, 85:25, 105:22, 135:12, 135:17, 136:11, 138:21, 139:25
**engage** [1] - 71:25
**engaged** [1] - 72:1
**enter** [9] - 12:21, 25:14, 32:15, 52:19, 53:18, 59:3, 69:24, 71:16, 139:7
**entered** [6] - 3:1, 18:23, 32:19, 37:23, 77:8, 139:10
**entering** [2] - 24:21, 69:22
**entire** [3] - 7:12, 37:16, 61:2
**entirely** [1] - 95:6, 95:20, 127:12
**entitled** [3] - 43:10, 85:11, 145:15
**entry** [2] - 25:20, 69:13

**environment** [1] - 68:23
**envision** [1] - 51:22
**equally** [1] - 88:6
**equipped** [1] - 89:9
**error** [2] - 44:16, 103:19
**especially** [6] - 14:3, 37:10, 68:23, 87:14, 89:10, 114:1
**essential** [1] - 127:14
**essentially** [6] - 32:20, 41:7, 86:23, 86:25, 87:10, 143:16
**establish** [4] - 44:12, 67:21, 83:20, 84:2
**established** [15] - 104:15, 104:20, 104:25, 105:20, 106:4, 106:19, 107:15, 108:4, 109:4, 110:21, 110:22, 111:7, 111:9, 111:16, 112:2
**Estate** [2] - 1:5, 106:1
**evaluated** [1] - 69:15
**eve** [1] - 13:18
**evening** [1] - 118:11
**event** [7] - 40:7, 53:6, 75:5, 75:7, 113:18, 129:21, 131:25
**evidence** [94] - 5:6, 6:19, 6:20, 6:24, 7:5, 7:8, 7:11, 7:16, 10:13, 10:16, 12:24, 13:2, 13:4, 13:17, 13:24, 17:9, 20:2, 20:11, 21:5, 21:21, 22:4, 22:9, 22:11, 33:7, 33:10, 33:11, 37:11, 37:17, 40:10, 40:11, 42:18, 42:22, 42:23, 43:2, 43:10, 43:11, 43:12, 43:14, 46:8, 47:6, 48:21, 51:2, 52:16, 53:16, 54:14, 54:23, 54:24, 57:7, 57:12, 63:19, 67:12, 67:25, 68:9, 68:14, 68:16, 69:22, 69:24, 71:16, 77:15, 81:12, 82:11, 82:13, 82:14, 82:17, 83:6, 84:10, 84:14, 85:12, 85:20, 87:19, 88:5, 88:22, 88:24, 89:11, 89:12, 89:21, 92:21, 93:6, 95:5, 99:1, 99:22, 102:6, 109:8, 116:19, 119:12, 121:18, 126:2, 126:20, 135:10, 136:5, 136:21
**evident** [3] - 36:20, 41:1, 142:4
**exact** [3] - 9:1, 81:17, 87:10
**Exactly** [1] - 140:11
**exactly** [6] - 36:14, 55:24, 69:23, 70:4, 111:25, 142:6
**Examination** [1] - 121:8
**examination** [2] - 74:6, 79:1
**examining** [1] - 21:10
**example** [7] - 44:11, 46:14,

71:1, 81:21, 121:7, 130:15, 136:6
**examples** [1] - 100:17
**excessive** [18] - 69:11, 70:1, 71:24, 87:4, 94:6, 94:7, 94:11, 95:25, 96:17, 98:8, 105:6, 108:23, 108:24, 109:10, 109:12, 110:23, 133:7, 137:23
**exchange** [1] - 40:3
**excited** [1] - 141:19
**exclude** [23] - 4:2, 9:4, 9:18, 9:24, 10:11, 11:17, 13:13, 13:19, 13:23, 18:8, 18:9, 23:11, 25:1, 25:21, 32:6, 35:2, 39:23, 45:7, 45:8, 47:3, 52:20, 84:10
**excluded** [7] - 10:21, 14:15, 24:13, 37:5, 80:1, 85:6, 88:5
**excludes** [1] - 7:5
**excluding** [2] - 6:10, 133:23
**exclusion** [1] - 86:18
**exclusively** [2] - 21:20, 32:22
**exercise** [5] - 141:23, 141:25, 142:3, 143:3, 144:15
**Exhibit** [7] - 16:24, 45:15, 119:9, 120:12, 120:13, 120:15
**exhibit** [21] - 26:19, 30:3, 36:15, 38:18, 40:14, 53:21, 97:21, 115:23, 118:6, 118:24, 119:4, 119:13, 119:14, 120:2, 120:11, 121:1, 121:11, 121:13, 121:16, 123:11, 126:10
**Exhibits** [2] - 119:18, 119:19
**exhibits** [29] - 113:23, 114:2, 114:9, 115:1, 115:7, 115:17, 117:15, 118:8, 118:13, 119:3, 119:8, 119:16, 119:17, 119:18, 119:23, 120:1, 120:8, 120:16, 121:17, 123:23, 124:17, 126:6, 126:8, 126:9, 126:12, 126:16
**exits** [1] - 20:12
**expand** [1] - 19:9
**expect** [1] - 3:11
**expecting** [1] - 95:14
**expedited** [1] - 61:17
**experience** [1] - 3:19
**expert** [74] - 3:25, 4:2, 5:5, 5:15, 5:16, 5:20, 6:4, 6:7, 7:20, 8:20, 9:4, 9:8, 9:13, 10:1, 10:5, 10:12, 10:13, 11:14, 12:2, 12:3, 12:9, 12:10, 12:12, 12:20, 13:8, 13:10, 13:20, 13:25, 17:24,

18:12, 18:17, 18:21, 21:17, 22:24, 23:1, 23:2, 24:16, 24:25, 31:21, 31:25, 32:6, 33:15, 36:16, 36:20, 38:9, 39:6, 39:14, 39:15, 39:16, 41:24, 43:16, 48:21, 52:17, 53:18, 53:23, 55:25, 56:10, 57:5, 57:14, 58:7, 58:8, 58:9, 65:15, 100:13, 100:19, 100:20, 100:21, 107:4, 130:22, 131:12, 131:13
**expert's** [1] - 17:5
**experts** [2] - 21:15, 37:17, 39:9, 65:20, 107:9
**explain** [9] - 36:19, 36:21, 40:25, 59:4, 94:2, 95:10, 96:4, 96:6, 98:1
**explained** [3] - 25:3, 33:12, 52:17
**explaining** [1] - 58:16
**explains** [2] - 94:16, 123:2
**explanation** [5] - 17:21, 20:22, 47:20, 63:22, 75:15
**explanations** [2] - 52:22, 54:13
**explicit** [2] - 49:12, 115:15
**explicitly** [7] - 14:8, 32:22, 49:15, 49:18, 51:8, 51:10, 51:16
**explore** [1] - 131:1
**exposed** [1] - 59:10
**extent** [3] - 38:16, 62:20, 63:24
**extra** [2] - 140:7, 142:7
**extremely** [2] - 42:5, 42:6
**eyewitness** [1] - 22:25

# F

**F.2d** [1] - 86:5
**F.3d** [1] - 111:3
**faced** [1] - 53:4
**fact** [39] - 3:5, 7:9, 7:12, 12:9, 12:10, 19:17, 21:6, 25:5, 30:20, 31:16, 31:21, 31:22, 32:5, 33:19, 35:24, 39:21, 44:2, 48:9, 48:15, 49:24, 52:24, 53:16, 67:17, 68:15, 69:13, 73:16, 84:6, 86:14, 96:11, 96:12, 96:14, 104:7, 107:4, 109:3, 110:11, 110:14, 131:21, 134:11, 134:13
**facts** [12] - 22:20, 39:20, 46:15, 86:19, 96:21, 104:6, 109:3, 110:8, 110:15, 134:4, 134:5, 134:7
**factual** [2] - 104:22, 105:10
**factually** [1] - 32:10

fail [1] - 105:18
failed [2] - 87:24, 89:14
failure [2] - 89:15, 106:4
fair [16] - 17:16, 24:4, 24:5, 30:13, 36:5, 36:17, 48:14, 63:10, 90:3, 91:11, 91:16, 92:3, 93:9, 114:12, 126:17, 140:5
fairly [2] - 3:12, 56:22
fairness [2] - 7:15, 89:25
fall [1] - 67:11
falling [1] - 50:13
falls [5] - 56:23, 102:13, 105:17, 128:2, 141:1
familiar [1] - 15:10, 82:8
family [28] - 48:10, 67:19, 67:21, 68:7, 68:17, 70:5, 70:11, 70:16, 70:20, 70:22, 70:24, 72:17, 72:20, 74:3, 74:5, 74:9, 75:11, 75:19, 78:17, 82:23, 83:9, 83:14, 83:18, 83:21, 83:25, 85:6
far [16] - 10:2, 15:15, 23:17, 46:20, 55:4, 68:5, 69:10, 72:16, 77:3, 78:13, 80:19, 83:8, 108:2, 131:2, 135:13, 136:19
fashion [1] - 65:25
father [2] - 71:3, 72:9
fault [1] - 66:7
favor [1] - 104:23
Fayetteville [2] - 1:16, 1:19
fear [3] - 63:3, 65:22
February [1] - 1:7
Federal [1] - 1:18
feedback [1] - 125:18
feet [6] - 107:1, 107:6, 107:16, 108:24, 110:23, 111:10
felt [2] - 79:16, 91:18
few [6] - 8:14, 60:12, 66:21, 104:11, 122:24, 128:21
field [4] - 4:2, 9:5, 9:8, 32:6
fights [1] - 82:6
figure [2] - 55:12, 125:20
file [13] - 8:16, 55:20, 56:4, 113:5, 113:11, 113:17, 137:1, 139:17, 140:16, 140:19, 140:20, 140:24, 141:1
filed [8] - 6:12, 6:16, 8:24, 8:25, 9:24, 66:17, 140:23
files [1] - 97:13
filing [4] - 3:2, 5:10, 6:18, 140:22
filings [1] - 67:17
film [1] - 94:20
Final [1] - 1:7
final [1] - 87:1
FINAL [1] - 1:12

**finally** [1] - 11:18
**finders** [2] - 104:7, 110:15
**findings** [4] - 49:10, 87:5, 87:6, 87:10
**fine** [12] - 60:18, 61:15, 97:4, 116:18, 120:21, 122:5, 124:22, 125:14, 126:13, 128:16, 132:20, 140:7
**fingerprint** [2] - 19:23, 20:1
**fingerprints** [2] - 19:4, 20:6
**finish** [1] - 45:17
**fire** [2] - 85:3, 107:11
**fired** [3] - 106:13, 107:22, 108:7
**firm** [1] - 6:14
**first** [37] - 11:2, 13:4, 14:5, 15:12, 20:9, 26:17, 27:1, 33:9, 33:21, 48:5, 54:16, 64:22, 67:6, 67:7, 77:7, 77:18, 94:10, 99:20, 105:13, 107:2, 116:7, 117:13, 117:23, 121:12, 126:9, 127:10, 141:8, 141:9, 142:1, 142:4, 142:21, 143:8, 143:11, 143:14
**five** [8] - 27:25, 37:6, 67:11, 98:12, 98:14, 118:21, 137:3, 140:25
**FLANAGAN** [1] - 1:12
**flash** [2] - 115:25, 116:7
**fleshed** [1] - 104:7
**flip** [2] - 125:22, 126:23
**focus** [10] - 21:21, 35:5, 62:1, 62:14, 64:15, 67:1, 103:3, 115:15, 128:23, 131:9
**focused** [7] - 21:10, 21:19, 21:20, 56:7, 122:22, 133:16, 135:24
**focusing** [1] - 139:14
**fold** [2] - 24:7, 86:23
**folder** [3] - 116:6, 119:9
**follow** [5] - 25:24, 59:5, 87:24, 101:2, 131:15
**follow-up** [1] - 101:2
**following** [5] - 23:9, 34:2, 36:4, 86:15, 120:6
**foot** [1] - 101:15
**footage** [1] - 94:22
**football** [1] - 91:12
**Foran** [59] - 5:3, 6:3, 6:6, 6:10, 7:24, 7:25, 8:10, 8:21, 8:22, 9:24, 10:11, 10:16, 10:22, 11:12, 11:14, 11:17, 12:11, 12:14, 13:19, 13:22, 14:9, 14:13, 15:13, 17:3, 17:5, 18:18, 19:6, 21:10, 21:20, 21:21, 23:6, 23:11, 24:12, 32:22, 33:16, 36:10, 39:22, 39:23, 39:24, 40:4, 40:6, 49:3, 49:9, 55:21,

55:23, 56:10, 57:17, 58:2, 58:19, 60:3, 60:25, 62:6, 62:7, 62:9, 62:11, 62:23, 62:24, 64:20, 64:21
**Foran's** [1] - 18:12
**force** [43] - 50:10, 69:11, 70:1, 71:24, 85:18, 85:19, 87:2, 87:4, 87:5, 87:7, 94:6, 94:7, 94:11, 95:25, 96:17, 97:14, 97:15, 98:6, 98:20, 99:6, 99:7, 99:17, 99:18, 99:19, 100:11, 100:21, 100:24, 101:3, 101:12, 101:18, 105:6, 105:23, 106:7, 108:12, 108:23, 108:24, 109:10, 109:12, 110:23, 111:9, 133:7, 137:23
**forced** [1] - 12:7
**forces** [2] - 97:10, 97:17
**foregoing** [1] - 145:14
**Forensic** [4] - 27:6, 27:20, 28:23, 34:5
**forensic** [5] - 4:2, 4:3, 9:5, 32:6
**forensics** [1] - 31:6
**forgive** [1] - 135:22
**forgot** [2] - 135:22, 138:25
**forgotten** [1] - 138:10
**form** [6] - 109:14, 113:15, 135:25, 137:11, 139:2, 139:4
**formally** [1] - 89:11
**format** [5] - 113:14, 114:4, 116:13, 117:7, 123:12
**formatted** [1] - 118:1, 136:21
**former** [2] - 97:1, 97:13
**forth** [5] - 3:12, 25:24, 65:14, 104:12, 115:11
**fortunate** [1] - 144:13
**forward** [6] - 3:9, 10:8, 110:22, 111:11, 112:2, 121:23
**four** [1] - 65:21
**Fourth** [8] - 86:12, 87:4, 105:19, 108:4, 108:11, 108:20, 108:22, 111:25
**frankly** [2] - 59:13, 65:14
**Freeman** [3] - 86:19, 91:19, 91:22
**Freeman's** [2] - 87:9, 88:10
**friends** [1] - 70:25
**front** [9] - 15:16, 15:18, 24:21, 26:8, 84:2, 90:11, 90:24, 98:11, 113:7
**full** [4] - 19:8, 46:4, 57:25, 131:11
**fully** [2] - 77:14, 106:23
**fundamental** [1] - 7:15
**Fusion** [1] - 27:3

**G**

**game** [3] - 30:14, 65:23, 91:12
**games** [1] - 39:18
**gamesmanship** [1] - 63:11
**general** [1] - 133:23
**generally** [1] - 134:16
**generate** [1] - 58:5
**generated** [2] - 43:4, 58:6
**genetic** [1] - 42:11
**genetics** [1] - 36:23
**genotyping** [1] - 44:19
**gentlemen** [1] - 130:6
**genuine** [1] - 110:10
**genuinely** [1] - 110:7
**George's** [9] - 106:3, 108:10, 108:20, 110:18, 111:6, 111:13, 111:15, 112:1, 112:4
**Georgia** [3] - 70:13, 70:14, 70:16
**given** [7] - 81:15, 100:14, 105:22, 118:7, 126:14, 142:5, 142:12
**glad** [2] - 114:5, 114:25
**glove** [2] - 20:10, 22:23
**gloves** [6] - 19:3, 19:9, 19:20, 19:24, 20:13, 46:22
**goal** [1] - 3:15
**grabbing** [2] - 97:15, 101:20
**granted** [4] - 12:13, 39:7, 80:7, 80:9
**great** [2] - 25:15, 71:1
**grounds** [1] - 53:23
**group** [1] - 120:8
**growing** [1] - 82:6
**guess** [5] - 35:2, 53:25, 78:16, 96:5, 104:24
**guilty** [1] - 87:17
**Guinea** [1] - 117:18
**guns** [1] - 121:3
**guy** [3] - 66:2, 82:3, 95:14

**H**

**half** [3] - 69:6, 73:1, 141:18
**hall** [1] - 84:18
**hand** [16] - 7:4, 14:19, 20:5, 30:16, 37:12, 50:14, 51:7, 51:11, 52:2, 52:5, 52:21, 53:3, 54:18, 54:21, 123:19, 124:21
**handcuff** [1] - 97:16
**handcuffs** [1] - 101:20
**handle** [2] - 103:21, 132:16
**handled** [2] - 47:3, 137:21

**hands** [6] - 19:13, 19:14, 20:13, 54:23, 141:14, 142:17
**happy** [5] - 5:11, 44:23, 66:10, 105:12, 128:6
**hard** [2] - 36:23, 37:5
**hardships** [1] - 63:12
**harm** [2] - 84:24, 86:10
**harming** [2] - 67:24, 84:25
**Harris** [1] - 71:19
**HARTZOG** [190] - 2:16, 2:24, 4:8, 4:14, 5:4, 8:5, 8:12, 8:17, 8:25, 9:7, 9:14, 12:22, 13:14, 14:11, 14:24, 15:9, 15:21, 15:25, 16:7, 16:13, 16:19, 16:22, 17:6, 17:18, 20:9, 21:11, 22:2, 24:5, 25:12, 25:19, 26:5, 26:11, 26:20, 26:23, 27:11, 28:4, 28:20, 28:25, 29:10, 30:19, 31:6, 31:12, 31:22, 31:24, 35:6, 35:9, 38:6, 39:2, 39:25, 40:20, 41:4, 41:20, 42:4, 42:10, 42:17, 43:21, 44:22, 45:3, 47:16, 48:1, 48:3, 49:2, 51:4, 51:25, 53:19, 56:9, 56:15, 56:19, 57:3, 57:6, 57:10, 57:13, 57:20, 58:4, 58:13, 58:18, 59:1, 59:13, 59:22, 60:15, 61:23, 62:11, 62:16, 63:21, 64:18, 65:2, 66:10, 67:15, 68:4, 73:22, 74:14, 74:16, 74:22, 75:1, 75:6, 75:17, 76:3, 76:8, 76:23, 81:7, 82:20, 83:13, 83:20, 83:23, 84:13, 84:20, 85:9, 85:17, 86:4, 86:17, 88:14, 89:20, 90:10, 91:5, 91:21, 92:1, 92:19, 92:23, 93:3, 93:17, 93:24, 94:18, 94:21, 95:3, 95:12, 95:19, 96:5, 97:6, 97:9, 97:20, 98:4, 98:10, 98:14, 98:18, 99:15, 99:25, 100:3, 100:6, 100:18, 101:7, 101:16, 101:23, 102:3, 103:5, 103:13, 103:18, 103:25, 104:4, 110:12, 110:14, 111:3, 111:24, 116:17, 117:9, 117:22, 120:10, 120:21, 121:12, 121:15, 122:15, 124:9, 124:24, 125:11, 126:5, 126:13, 126:17, 127:5, 128:3, 128:6, 128:16, 128:24, 130:8, 130:14, 130:21, 132:15, 133:5, 134:22, 135:7, 135:14, 135:21, 136:1, 136:9, 136:15, 136:18, 138:12, 138:24, 140:21, 143:15,

144:8, 144:24

**Hartzog** [4] - 2:25, 10:2, 25:11, 29:6

**hassles** [2] - 63:2, 63:15

**hate** [1] - 22:15

**head** [1] - 109:6

**heading** [1] - 128:20

**headlines** [1] - 48:10

**health** [25] - 67:13, 68:22, 69:3, 69:8, 70:8, 70:24, 70:25, 72:11, 72:16, 73:3, 73:5, 73:11, 73:14, 73:15, 74:8, 74:13, 74:18, 77:10, 77:16, 79:14, 79:18, 79:24, 80:21, 88:1, 88:4

**hear** [12] - 16:9, 22:6, 30:14, 37:20, 38:22, 42:24, 51:10, 54:5, 90:3, 91:17, 92:6, 123:17

**heard** [10] - 4:12, 10:1, 14:10, 17:11, 17:13, 20:10, 21:3, 54:16, 85:7, 142:20

**hearing** [6] - 36:12, 38:23, 39:20, 102:18, 141:12, 144:20

**hears** [1] - 101:18

**hearsay** [3] - 44:9, 75:23, 132:13

**heart** [1] - 131:7

**heartburn** [1] - 113:17

**held** [9] - 69:14, 85:20, 105:20, 105:21, 108:11, 108:20, 108:22, 111:7, 111:16

**help** [8] - 15:20, 49:11, 57:1, 59:19, 60:9, 117:21, 128:23, 141:16

**helpful** [15] - 34:13, 38:8, 52:24, 63:24, 97:1, 107:2, 108:15, 109:1, 109:17, 109:19, 111:21, 113:9, 118:17, 127:20, 144:22

**helps** [4] - 16:4, 107:24, 110:1, 132:10

**hence** [1] - 50:23

**herein** [1] - 115:12

**higher** [1] - 87:21

**highlight** [1] - 127:14

**highly** [2] - 54:25

**himself** [6] - 50:13, 73:8, 77:16, 81:8, 84:24, 112:10

**hindsight** [1] - 115:14

**hinge** [1] - 50:21

**hint** [1] - 24:15

**history** [1] - 67:13

**hold** [2] - 68:14, 105:14

**holding** [5] - 86:16, 106:2, 106:3, 107:6, 108:25

**honest** [1] - 114:10

**Honor** [189] - 2:3, 2:10,

2:24, 4:8, 4:10, 4:14, 5:4, 6:19, 8:7, 8:12, 8:17, 9:2, 9:14, 9:20, 10:11, 12:17, 12:22, 13:14, 13:17, 14:11, 14:24, 15:9, 15:21, 16:6, 16:7, 16:20, 17:6, 17:12, 17:18, 18:15, 20:9, 21:11, 21:18, 22:3, 25:6, 25:20, 26:5, 26:7, 26:20, 26:24, 27:11, 27:22, 28:4, 28:12, 29:5, 29:10, 30:3, 31:12, 31:22, 32:8, 34:12, 34:18, 34:21, 35:15, 35:18, 36:12, 38:15, 38:21, 39:2, 39:25, 40:20, 41:16, 42:17, 43:23, 44:22, 45:9, 46:1, 47:16, 48:1, 48:17, 49:2, 49:7, 49:11, 50:5, 50:24, 51:4, 55:14, 55:18, 56:20, 57:3, 58:18, 58:21, 59:1, 59:6, 59:13, 60:10, 61:23, 62:2, 62:16, 63:1, 63:21, 64:18, 65:2, 66:16, 66:19, 67:15, 68:4, 68:19, 69:9, 73:22, 76:24, 77:7, 78:14, 81:7, 81:17, 84:13, 84:20, 84:21, 85:9, 86:4, 86:9, 86:17, 86:22, 88:3, 89:6, 90:11, 90:15, 91:6, 92:1, 92:9, 92:19, 93:3, 93:24, 95:3, 96:5, 96:10, 96:25, 98:11, 98:12, 98:18, 99:3, 99:15, 101:7, 101:16, 101:23, 102:3, 102:5, 102:22, 103:5, 103:13, 103:25, 104:11, 109:21, 110:12, 110:16, 111:3, 111:18, 111:24, 112:7, 112:25, 113:13, 113:25, 114:3, 116:4, 116:16, 117:9, 117:15, 117:22, 120:20, 120:22, 124:25, 127:2, 127:6, 127:25, 128:17, 130:11, 130:15, 131:4, 131:11, 131:23, 132:11, 133:21, 134:22, 135:5, 135:9, 135:15, 135:21, 136:1, 137:7, 137:17, 138:4, 138:24, 139:19, 142:15, 143:22, 144:7, 144:8, 144:23, 144:24

**Honor's** [3] - 43:15, 65:14, 130:21

**HONORABLE** [1] - 1:12

**hope** [1] - 60:3

**hopefully** [1] - 144:13

**hour** [5] - 44:6, 44:21, 46:2, 46:4, 128:21

**hours** [1] - 60:12

**house** [3] - 67:23, 74:10,

74:12

**huge** [1] - 96:11

**humans** [1] - 72:22

**HVAC** [1] - 128:15

# I

**IA** [7] - 91:2, 92:6, 92:7, 92:10, 93:11, 97:13, 101:9

**IAs** [1] - 90:5

**ideally** [1] - 60:1

**ideas** [1] - 109:6

**identified** [34] - 4:19, 4:21, 9:9, 9:25, 10:5, 18:19, 18:21, 20:19, 23:12, 23:24, 24:25, 25:1, 25:8, 30:4, 30:9, 31:13, 31:14, 36:15, 37:24, 39:3, 39:6, 40:10, 40:13, 40:14, 43:17, 43:21, 53:21, 56:24, 58:8, 69:1, 69:2, 79:25, 105:9, 115:22

**identify** [3] - 11:15, 20:16, 47:11

**ignored** [1] - 110:25

**illuminate** [1] - 64:9

**illustrative** [1] - 32:17

**image** [1] - 49:16

**imminent** [1] - 106:21

**immunity** [8] - 103:17, 103:19, 103:22, 104:5, 104:14, 109:22, 110:3, 112:19

**impeach** [2] - 75:9, 79:20

**impeached** [1] - 82:16

**impeachment** [17] - 76:25, 78:20, 79:23, 80:5, 80:11, 80:22, 81:1, 81:8, 81:14, 81:18, 82:14, 83:3, 84:14, 84:16, 92:18, 92:20, 135:18

**impermissible** [1] - 82:17

**impinging** [1] - 61:2

**implicated** [1] - 48:5

**implication** [10] - 48:8, 48:14, 48:15, 51:9, 51:16, 54:7, 54:9, 54:22, 98:7, 101:17

**imply** [3] - 93:25, 94:24, 95:6

**import** [2] - 19:8, 51:1

**important** [15] - 9:22, 19:1, 22:5, 22:16, 22:19, 41:6, 43:14, 53:16, 70:6, 71:14, 87:2, 102:9, 130:3

**importantly** [2] - 22:22, 107:14, 112:10

**improve** [2] - 3:13, 79:12

**inappropriate** [2] - 95:1, 109:14

**incidences** [3] - 85:8,

102:13, 135:16

**incident** [13] - 19:16, 82:21, 83:15, 84:25, 85:3, 89:24, 91:18, 92:7, 93:9, 93:15, 100:8, 110:20

**incidents** [9] - 81:13, 81:24, 82:21, 83:14, 83:16, 85:24, 90:2, 92:2, 99:23

**inclement** [1] - 144:19

**include** [2] - 43:20, 137:5

**included** [1] - 27:12

**includes** [2] - 84:24, 133:3

**including** [2] - 33:4, 131:7

**inconclusive** [6] - 13:5, 27:13, 31:19, 38:23, 38:24, 55:17

**inconsistency** [1] - 115:4

**independent** [1] - 11:13

**index** [4] - 113:6, 121:2, 121:5, 123:2

**indicated** [5] - 5:24, 8:18, 56:10, 67:16, 78:3

**indicates** [2] - 87:20

**indication** [1] - 108:16

**indicative** [1] - 86:11

**indicator** [1] - 102:9

**individual** [7] - 1:9, 4:4, 4:19, 7:2, 85:23, 111:10, 131:20

**individuals** [3] - 7:7, 21:23, 36:18

**infer** [2] - 46:15, 85:13

**inference** [2] - 46:9, 46:16

**inferences** [1] - 46:21

**influence** [1] - 131:22

**influenced** [1] - 34:9

**information** [12] - 4:17, 25:9, 46:20, 58:5, 67:25, 69:13, 69:16, 74:19, 99:21, 100:25, 106:20, 108:3

**informative** [1] - 106:17

**ingested** [1] - 133:4

**initial** [10] - 4:24, 12:1, 12:2, 30:5, 30:6, 31:14, 40:13, 53:19, 56:2, 56:3

**injuries** [1] - 139:5

**inquire** [3] - 79:2, 114:1, 114:23

**instance** [1] - 78:20

**instances** [3] - 71:2, 84:23, 90:25

**instead** [2] - 66:6, 92:10

**instruct** [3] - 40:18, 104:2, 105:7

**instructing** [1] - 103:16

**instruction** [8] - 77:20, 77:23, 78:1, 78:15, 80:12, 80:15, 136:14, 136:25

**instructions** [11] - 67:18, 79:7, 80:17, 80:18, 90:20,

103:15, 104:2, 128:25, 136:19, 136:23, 139:1
**instructive** [2] - 70:18, 71:15
**intend** [6] - 22:12, 38:14, 84:13, 93:19, 97:21, 131:13
**intended** [3] - 4:16, 40:14, 53:21
**intending** [5] - 5:8, 8:19, 20:15, 40:9, 97:10
**intends** [1] - 132:1
**intent** [3] - 96:18, 102:7, 134:4
**intention** [1] - 115:5
**intentional** [1] - 85:2
**intentionally** [1] - 94:1
**interest** [1] - 115:8
**interested** [1] - 59:24
**internal** [10] - 86:20, 86:24, 88:18, 89:21, 89:24, 91:17, 97:1, 97:2, 101:4
**Internal** [2] - 87:12, 88:10
**interpretation** [1] - 86:13
**interrogatories** [9] - 103:7, 103:11, 103:21, 104:13, 105:1, 105:3, 109:17, 111:21, 112:22
**Interrogatory** [2] - 106:9, 108:6
**interrogatory** [4] - 104:18, 106:25, 107:18, 107:21
**interrupt** [2] - 33:24, 62:1
**interrupted** [1] - 35:19
**intrinsic** [1] - 96:21
**introduce** [24] - 2:19, 27:19, 38:14, 45:2, 80:21, 82:11, 82:17, 87:19, 88:20, 88:24, 89:2, 89:11, 89:12, 89:21, 90:13, 90:16, 93:19, 97:10, 97:22, 99:1, 100:23, 119:22, 120:4
**introduced** [5] - 63:19, 79:20, 88:5, 121:19, 140:1
**introducing** [10] - 28:7, 73:23, 73:25, 74:1, 75:12, 88:22, 89:3, 92:20, 97:25, 102:6
**introduction** [2] - 23:16, 43:20
**invades** [1] - 87:8
**investigated** [1] - 101:12
**investigation** [4] - 88:10, 89:24, 91:3, 92:7
**investigations** [3] - 89:22, 92:6, 92:11
**invite** [2] - 3:10, 115:3
**inviting** [1] - 111:21
**involuntarily** [1] - 67:22
**involuntary** [2] - 69:7, 70:7
**involve** [1] - 83:15

**involved** [3] - 31:8, 56:8, 63:10
**irrelevant** [3] - 45:18, 70:2, 95:20
**isolated** [1] - 82:20
**issue** [63] - 6:4, 7:12, 7:24, 8:2, 8:20, 12:25, 13:16, 17:13, 17:14, 18:14, 19:2, 19:5, 20:1, 22:12, 30:10, 39:15, 40:1, 40:6, 40:8, 43:16, 46:8, 47:18, 48:9, 49:10, 51:19, 51:24, 67:25, 68:20, 69:8, 71:12, 71:16, 74:13, 77:17, 81:7, 90:12, 90:13, 94:8, 97:7, 98:1, 100:22, 103:12, 103:20, 104:4, 104:13, 104:25, 106:21, 107:15, 110:10, 126:3, 128:24, 130:18, 132:7, 133:24, 134:18, 134:23, 135:23, 137:9, 137:16, 137:23, 138:1, 139:8, 139:17, 139:21
**issued** [5] - 27:5, 27:6, 27:21, 34:4, 47:25
**issues** [22] - 3:20, 13:20, 14:8, 40:22, 67:20, 68:17, 71:14, 74:8, 77:10, 88:1, 88:4, 91:8, 91:9, 92:13, 130:3, 130:7, 130:9, 130:13, 135:16, 136:4, 138:11, 139:9
**items** [1] - 113:1
**iteration** [1] - 122:6
**itself** [21] - 17:22, 18:1, 20:21, 20:25, 21:21, 24:2, 26:15, 29:21, 31:25, 38:20, 40:10, 41:16, 42:2, 43:4, 48:22, 84:5, 88:25, 89:15, 124:12, 130:5, 130:6

**J**

**January** [2] - 9:1, 9:2
**Jennifer** [2] - 4:21, 9:9
**joint** [10] - 119:16, 120:2, 120:11, 121:9, 121:11, 121:13, 126:6, 126:8, 126:9, 126:10
**Joint** [1] - 120:19
**jointly** [1] - 66:17
**Jones** [2] - 106:1
**journals** [1] - 44:14
**journey** [1] - 3:18
**Jr** [1] - 2:25
**judge** [4] - 3:8, 24:18, 32:23
**JUDGE** [1] - 1:13
**Judge** [2] - 103:20, 144:2
**judgment** [2] - 18:13, 49:9
**judicial** [1] - 98:4

**jump** [2] - 52:9, 65:18
**juror** [2] - 122:23, 123:7
**jurors** [2] - 122:20, 124:2
**jury** [107] - 3:17, 7:9, 7:16, 7:18, 16:9, 17:22, 18:2, 20:25, 22:6, 24:14, 24:21, 25:3, 25:5, 27:24, 28:2, 29:23, 30:11, 30:14, 32:1, 32:17, 33:12, 37:6, 37:19, 38:22, 39:19, 41:4, 41:11, 42:24, 43:6, 43:16, 46:9, 46:14, 46:18, 46:20, 50:2, 50:4, 50:16, 51:9, 52:9, 52:12, 53:5, 53:11, 54:1, 54:7, 54:22, 55:1, 63:22, 67:17, 69:23, 71:9, 73:17, 77:12, 78:7, 79:5, 80:17, 84:2, 85:12, 87:8, 87:19, 88:7, 88:13, 89:8, 90:3, 90:19, 90:21, 91:7, 91:17, 92:6, 92:13, 92:24, 93:12, 94:9, 94:12, 94:23, 95:7, 95:21, 96:23, 98:8, 100:11, 101:17, 101:18, 103:15, 103:16, 104:1, 104:3, 104:16, 105:4, 105:7, 109:6, 109:20, 109:24, 114:18, 114:22, 116:14, 117:4, 117:8, 121:2, 121:4, 123:10, 124:13, 128:25, 136:14, 139:1, 141:8, 141:11, 142:9, 142:14
**jury's** [2] - 94:6, 109:5
**justified** [2] - 97:16, 100:2
**justified/not** [1] - 97:16

**K**

**keep** [13] - 36:12, 46:4, 60:8, 63:17, 65:3, 66:12, 71:14, 75:2, 119:10, 128:15, 138:21, 143:20, 144:19
**kept** [2] - 11:16, 90:5
**key** [8] - 7:11, 39:20, 42:18, 42:23, 51:19, 53:15, 53:16, 123:6
**keys** [1] - 141:5
**kicked** [3] - 67:23, 74:10, 74:12
**kind** [19] - 4:5, 24:3, 34:2, 35:20, 38:25, 39:18, 66:4, 68:8, 76:21, 88:13, 94:14, 94:15, 101:14, 124:23, 125:20, 126:2, 126:21, 126:25, 130:1
**knife** [107] - 6:21, 6:25, 7:1, 7:4, 7:6, 7:7, 7:8, 7:10, 7:13, 7:17, 10:4, 11:1, 11:5, 11:6, 11:7, 13:1, 14:15, 14:17, 14:18, 15:4, 17:9, 19:16,

19:22, 19:23, 20:2, 20:5, 21:4, 21:6, 21:7, 21:22, 21:23, 22:10, 29:21, 30:15, 30:18, 34:24, 37:11, 37:21, 38:12, 41:7, 41:9, 41:10, 41:13, 41:14, 42:6, 42:7, 42:14, 42:20, 42:23, 43:2, 43:3, 43:7, 43:9, 46:10, 46:13, 46:25, 47:3, 48:7, 48:11, 48:13, 48:14, 49:13, 49:17, 50:3, 50:7, 50:12, 50:14, 50:16, 50:17, 50:19, 50:22, 51:7, 51:9, 51:11, 51:15, 51:18, 51:20, 52:1, 52:4, 52:14, 52:21, 54:6, 54:8, 54:11, 54:20, 55:9, 55:13, 56:16, 68:14, 105:14, 105:25, 106:6, 106:12, 106:15, 107:2, 107:6, 107:16, 108:9, 108:13, 108:25, 109:7, 109:9, 109:11, 110:9, 124:9, 124:12, 124:20
**knowing** [1] - 74:22
**knowledge** [4] - 73:25, 81:20, 102:8, 131:12
**known** [10] - 11:7, 11:8, 18:18, 22:20, 23:23, 30:7, 36:13, 55:19, 63:25, 64:6
**knows** [2] - 69:9, 132:24
**Kristen** [1] - 2:21

**L**

**Lab** [10] - 28:6, 28:10, 28:21, 29:1, 29:2, 29:9, 31:7, 31:16, 55:7, 56:5
**lab** [2] - 31:5, 35:25
**Lab's** [1] - 31:18
**labeled** [1] - 119:9
**labeling** [1] - 121:16
**Laboratories** [1] - 29:8
**Laboratory** [6] - 27:5, 27:6, 27:20, 34:3, 34:4, 55:8
**laboratory** [5] - 29:1, 29:15, 31:9, 33:20, 47:9
**Laboratory's** [1] - 34:9
**lack** [2] - 51:1, 94:16
**ladies** [1] - 130:6
**laid** [1] - 5:23
**land** [2] - 51:3, 88:8
**language** [2] - 112:3, 112:18
**lapel** [1] - 125:16
**laptop** [1] - 117:6
**large** [2] - 41:5, 115:19
**larger** [1] - 41:21
**last** [7] - 7:22, 66:3, 96:2, 109:25, 139:6, 141:24,

143:13
**late** [1] - 9:17
**latest** [1] - 36:16
**laundry** [1] - 25:17
**law** [35] - 10:12, 15:17, 36:22, 39:18, 50:10, 65:18, 71:5, 83:10, 83:19, 84:7, 84:11, 84:17, 85:14, 85:18, 85:24, 85:25, 87:4, 104:5, 104:15, 104:20, 104:24, 105:16, 105:21, 105:22, 106:19, 109:4, 111:16, 111:18, 135:12, 135:17, 136:10, 138:3, 138:21, 139:25, 141:4
**lawsuit** [1] - 85:15
**lawyer** [1] - 126:19
**lay** [2] - 51:3, 88:8
**layperson** [1] - 77:14
**leading** [1] - 131:8
**leads** [1] - 100:5
**learned** [1] - 13:10
**least** [5] - 14:4, 20:24, 43:16, 102:25, 130:15
**leave** [9] - 38:18, 58:25, 59:7, 92:24, 122:1, 123:22, 126:21, 128:12, 129:14
**leaving** [2] - 6:14, 52:11
**left** [10] - 33:19, 54:15, 59:20, 67:8, 98:7, 101:17, 103:4, 143:2, 143:4, 144:15
**legal** [3] - 24:12, 37:4, 49:22
**length** [1] - 100:15
**lengthy** [1] - 114:20
**less** [5] - 30:20, 31:1, 41:8, 42:12
**lesser** [1] - 72:24
**lethal** [2] - 108:12, 108:23
**letter** [1] - 38:9
**letting** [1] - 63:6
**level** [2] - 15:3, 108:17
**liability** [2] - 71:8, 79:10
**life** [2] - 70:17, 70:18
**lighting** [1] - 134:10
**likely** [10] - 25:5, 41:8, 41:10, 41:13, 42:6, 42:12, 42:13, 99:7, 99:8, 100:13
**likewise** [4] - 80:2, 108:9, 127:21, 143:3
**limine** [15] - 10:17, 48:20, 66:21, 67:4, 80:9, 90:11, 94:3, 130:18, 137:14, 138:15, 138:18, 138:20, 138:22, 139:23, 140:6
**limit** [4] - 17:6, 90:16, 99:4, 99:5
**limitation** [1] - 99:9
**limited** [6] - 12:3, 62:4, 65:3, 65:25, 66:21, 102:16

**limiting** [9] - 77:19, 77:23, 78:1, 78:15, 80:18, 136:13, 136:19, 136:23, 136:25
**lines** [1] - 97:12
**link** [4] - 32:14, 114:3, 115:22, 116:5
**list** [18] - 7:23, 25:17, 36:15, 39:13, 47:17, 97:10, 97:17, 100:10, 118:6, 118:12, 118:18, 118:24, 119:14, 120:16, 121:2, 142:5, 143:13
**listed** [11] - 10:18, 25:18, 26:19, 27:14, 27:15, 28:9, 31:10, 32:2, 97:21, 119:3, 121:17
**literally** [1] - 66:2
**litigation** [3] - 39:19, 109:25, 110:4
**living** [1] - 81:25
**local** [3] - 114:13, 115:6, 115:11
**logistical** [1] - 63:2
**look** [40] - 10:14, 11:10, 14:11, 14:24, 15:8, 16:12, 16:25, 24:10, 25:6, 25:10, 26:4, 27:15, 32:21, 35:6, 44:7, 44:20, 45:4, 53:6, 63:9, 65:15, 69:6, 70:15, 70:17, 71:9, 77:24, 86:7, 89:4, 91:7, 102:18, 112:14, 112:16, 114:6, 116:6, 118:22, 123:4, 124:1, 138:2, 141:6, 144:16
**looked** [5] - 54:17, 71:8, 71:11, 91:11, 106:2
**looking** [16] - 13:4, 16:22, 26:9, 34:23, 35:4, 44:25, 49:14, 49:16, 55:8, 87:21, 99:5, 114:24, 137:4, 139:3, 145:1
**lookout** [1] - 145:6
**looks** [1] - 46:3
**Lorrin** [4] - 86:19, 87:9, 88:10, 91:22
**lose** [2] - 143:24, 143:25
**losing** [1] - 144:11
**loss** [3] - 70:16, 70:17, 70:19
**lost** [2] - 70:18, 144:11
**LOUISE** [1] - 1:12
**love** [1] - 71:3
**lower** [1] - 87:18
**luck** [2] - 144:10, 144:25
**luckily** [1] - 105:24
**lunch** [6] - 44:6, 44:21, 45:4, 46:3, 63:7, 117:2

---

**M**

**ma'am** [2] - 118:4, 122:9

**madam** [1] - 141:3
**main** [1] - 6:18
**major** [3] - 41:17, 41:18, 41:25
**male** [2] - 42:11, 42:13
**malpractice** [1] - 68:21
**man** [5] - 50:18, 69:2, 69:8, 77:15, 77:18
**manila** [1] - 119:9
**manner** [2] - 63:9, 65:13
**March** [6] - 4:16, 4:24, 5:22, 9:11, 40:11, 64:1
**marked** [4] - 119:13, 119:17, 119:18, 120:12
**Marshal's** [1] - 128:13
**Martinsburg** [1] - 106:1
**masks** [1] - 3:6
**match** [3] - 119:4, 119:14, 121:20
**matches** [1] - 122:12
**material** [4] - 74:7, 81:14, 110:7, 110:10
**materials** [3] - 56:8, 56:22, 56:23
**matter** [10] - 3:14, 47:2, 50:6, 50:8, 50:12, 50:13, 50:15, 61:11, 89:15, 145:16
**matters** [2] - 70:11, 89:16
**McGurk** [3] - 1:21, 145:18, 145:19
**mean** [28] - 13:20, 20:7, 23:21, 24:3, 36:22, 41:19, 60:1, 60:3, 60:5, 60:23, 60:25, 61:10, 61:13, 69:4, 72:15, 78:16, 87:16, 88:3, 90:18, 96:4, 101:14, 105:8, 109:21, 109:24, 112:18, 135:1, 137:1, 139:8
**meaning** [1] - 23:18
**means** [9] - 17:25, 40:25, 62:19, 63:23, 64:4, 64:10, 93:4, 107:5, 108:15
**meant** [2] - 84:10, 138:25
**mechanical** [1] - 1:25
**medical** [17] - 67:20, 68:21, 69:1, 69:7, 71:17, 72:7, 75:4, 75:20, 76:4, 76:6, 76:7, 76:22, 78:16, 78:17, 79:13, 79:18, 80:21
**medication** [4] - 70:9, 85:2, 130:17, 133:6
**medications** [3] - 131:6, 131:7
**medicine** [1] - 135:4
**Meghan** [12] - 3:24, 5:2, 5:20, 6:7, 6:11, 8:1, 9:7, 12:19, 14:12, 14:25, 16:2, 63:22
**member** [6] - 70:20, 70:22, 72:17, 74:9, 75:19, 78:17

**members** [2] - 70:24, 83:9
**mental** [22] - 67:13, 68:22, 69:3, 69:8, 70:8, 70:24, 70:25, 72:11, 72:16, 73:11, 73:14, 73:15, 74:8, 74:13, 74:18, 77:10, 77:16, 79:14, 79:18, 80:21, 88:1, 88:4
**mention** [1] - 53:15
**mentioned** [8] - 10:25, 33:21, 44:2, 46:22, 54:17, 70:4, 73:17, 110:19
**met** [1] - 69:19
**method** [2] - 44:9, 44:13
**methodical** [2] - 133:15, 133:17
**methodology** [1] - 134:17
**Methods** [1] - 27:2
**mic'ed** [1] - 125:16
**microphone** [3] - 125:17, 141:13, 141:16
**Middle** [1] - 1:21
**middle** [1] - 124:19
**might** [17] - 3:12, 6:3, 9:6, 32:12, 46:15, 52:2, 52:9, 71:25, 79:19, 115:20, 115:24, 124:3, 125:19, 130:5, 132:3, 144:16, 144:21
**mind** [10] - 42:22, 51:17, 51:20, 95:11, 95:13, 95:16, 105:1, 124:8, 130:2, 143:19
**mindful** [3] - 64:25, 68:5, 134:13
**mine** [2] - 78:17, 115:8
**minimize** [1] - 64:24
**minor** [4] - 41:18, 42:1, 90:2
**minute** [3] - 7:22, 39:4, 53:20
**minutes** [2] - 8:15, 129:12
**mirrors** [1] - 87:3
**mislead** [3] - 25:4, 37:9, 69:23
**misleading** [6] - 32:17, 33:13, 41:11, 52:11, 54:1, 99:21
**missing** [1] - 32:14
**misspoke** [1] - 29:11
**mistake** [1] - 78:8
**mitigate** [1] - 61:4
**modelled** [2] - 110:17, 111:17
**MOJARRAD** [1] - 1:4
**Mojarrad** [27] - 1:5, 2:7, 2:11, 2:12, 2:13, 6:22, 6:23, 7:4, 7:13, 11:4, 12:25, 35:11, 41:10, 48:11, 51:18, 51:20, 81:22, 84:23, 105:14, 105:17, 106:12, 106:14, 106:25, 107:23, 108:8, 108:22

**Mojarrad's** [4] - 29:22, 30:16, 42:7, 51:7

**moment** [4] - 16:12, 18:5, 61:20, 73:15

**Monday** [1] - 141:2

**money** [1] - 121:3

**month** [3] - 10:23, 11:20, 55:24

**months** [1] - 116:23

**moreover** [1] - 19:1

**morning** [9] - 2:2, 2:3, 2:24, 3:18, 116:15, 117:2, 125:4, 129:23, 135:4

**most** [5] - 66:25, 70:23, 112:9, 120:3, 132:15

**mother** [3] - 71:2, 72:9, 79:1

**motion** [59] - 3:24, 4:1, 5:10, 6:6, 6:12, 6:16, 6:18, 8:16, 8:23, 8:25, 9:4, 9:18, 10:19, 10:20, 10:23, 12:13, 12:19, 13:13, 15:11, 17:11, 18:8, 22:17, 23:10, 32:5, 37:14, 39:24, 40:4, 43:19, 44:1, 45:7, 45:24, 48:25, 56:12, 59:7, 60:19, 60:22, 63:3, 67:4, 78:10, 80:9, 81:4, 86:23, 90:11, 94:3, 103:6, 130:17, 132:8, 132:14, 133:6, 134:24, 136:25, 137:13, 138:5, 138:18, 138:20, 138:22, 139:16, 139:23, 140:6

**motions** [11] - 10:17, 13:23, 48:18, 48:20, 66:21, 80:7, 80:8, 132:11, 137:14, 138:15

**motive** [2] - 96:18, 102:7

**move** [5] - 6:7, 9:24, 10:9, 49:11, 119:21

**moved** [9] - 10:6, 10:11, 11:20, 12:10, 13:19, 23:11, 39:11, 40:8, 118:8

**movement** [15] - 107:23, 107:25, 108:1, 108:2, 111:5, 111:14, 111:23, 112:3, 112:8, 112:9, 112:13, 112:14, 112:17

**movements** [2] - 110:24, 111:11

**moving** [1] - 10:8

**MR** [190] - 2:16, 2:24, 4:8, 4:14, 5:4, 8:5, 8:12, 8:17, 8:25, 9:7, 9:14, 12:22, 13:14, 14:11, 14:24, 15:9, 15:21, 15:25, 16:7, 16:13, 16:19, 16:22, 17:6, 17:18, 20:9, 21:11, 22:2, 24:5, 25:12, 25:19, 26:5, 26:11, 26:20, 26:23, 27:11, 28:4, 28:20, 28:25, 29:10, 30:19, 31:6,

31:12, 31:22, 31:24, 35:6, 35:9, 38:6, 39:2, 39:25, 40:20, 41:4, 41:20, 42:4, 42:10, 42:17, 43:21, 44:22, 45:3, 47:16, 48:1, 48:3, 49:2, 51:4, 51:25, 53:19, 56:9, 56:15, 56:19, 57:3, 57:6, 57:10, 57:13, 57:20, 58:4, 58:13, 58:18, 59:1, 59:13, 59:22, 60:15, 61:23, 62:11, 62:16, 63:21, 64:18, 65:2, 66:10, 67:15, 68:4, 73:22, 74:14, 74:16, 74:22, 75:1, 75:6, 75:17, 76:3, 76:8, 76:23, 81:7, 82:20, 83:13, 83:20, 83:23, 84:13, 84:20, 85:9, 85:17, 86:4, 86:17, 88:14, 89:20, 90:10, 91:5, 91:21, 92:1, 92:19, 92:23, 93:3, 93:17, 93:24, 94:18, 94:21, 95:3, 95:12, 95:19, 96:5, 97:6, 97:9, 97:20, 98:4, 98:10, 98:14, 98:18, 99:15, 99:25, 100:3, 100:6, 100:18, 101:7, 101:16, 101:23, 102:3, 103:5, 103:13, 103:18, 103:25, 104:4, 110:12, 110:14, 111:3, 111:24, 116:17, 117:9, 117:22, 120:10, 120:21, 121:12, 121:15, 122:15, 124:9, 124:24, 125:11, 126:5, 126:13, 126:17, 127:5, 128:3, 128:6, 128:16, 128:24, 130:8, 130:14, 130:21, 132:15, 133:5, 134:22, 135:7, 135:14, 135:21, 136:1, 136:9, 136:15, 136:18, 138:12, 138:24, 140:21, 143:15, 144:8, 144:24

**MS** [153] - 2:3, 2:6, 2:10, 2:20, 4:10, 8:7, 9:19, 12:17, 13:16, 15:23, 16:3, 16:6, 16:17, 17:12, 18:4, 18:9, 19:10, 19:21, 22:15, 23:17, 23:21, 24:6, 24:20, 26:7, 27:22, 29:5, 32:8, 33:3, 33:11, 34:1, 34:6, 34:11, 34:12, 34:18, 34:21, 34:25, 35:14, 35:18, 35:22, 37:16, 37:23, 45:9, 45:12, 45:14, 45:16, 45:21, 46:1, 46:11, 46:17, 46:23, 47:5, 47:11, 49:7, 50:5, 50:24, 52:6, 55:14, 55:18, 55:23, 58:21, 59:6, 60:1, 60:10, 60:18, 60:23, 61:8, 62:2, 63:1, 65:4, 65:11, 66:16, 66:19, 67:2, 67:7, 68:19, 72:13, 72:15, 73:5, 77:6, 77:22, 78:13,

79:22, 80:6, 81:2, 81:17, 84:21, 86:9, 86:22, 88:2, 89:6, 90:15, 92:9, 96:10, 96:25, 97:4, 97:23, 99:3, 99:13, 102:5, 102:15, 102:22, 104:11, 109:21, 112:7, 112:25, 113:13, 113:20, 114:12, 115:19, 116:4, 116:16, 117:13, 119:15, 120:1, 120:9, 120:20, 121:10, 122:17, 122:18, 124:25, 125:6, 125:19, 125:25, 126:11, 127:2, 127:12, 127:19, 127:25, 129:19, 131:2, 131:23, 132:9, 132:20, 133:11, 135:5, 137:7, 137:12, 137:20, 138:2, 138:8, 138:14, 138:20, 139:7, 139:19, 140:5, 140:11, 140:18, 140:23, 142:2, 142:15, 143:22, 144:7, 144:23

**multiple** [5] - 32:19, 61:10, 65:13, 82:21, 122:19

**murder** [1] - 87:17

**must** [5] - 90:21, 95:22, 99:18, 106:10, 119:4

# N

**name** [7] - 4:4, 4:7, 4:18, 9:10, 23:24, 69:21

**namely** [1] - 12:25

**narrow** [1] - 102:25

**national** [1] - 44:18

**nature** [1] - 142:12

**NC** [3] - 1:16, 1:19, 1:22

**near** [2] - 59:15

**necessarily** [2] - 37:12, 75:15

**necessary** [5] - 11:7, 38:17, 38:19, 124:1, 132:5

**necessity** [1] - 5:16

**need** [49] - 4:11, 6:1, 25:23, 31:25, 41:23, 47:6, 47:17, 53:9, 56:4, 61:21, 62:5, 62:14, 62:20, 63:20, 66:15, 68:9, 78:20, 79:13, 89:11, 97:4, 104:6, 105:1, 105:2, 114:8, 114:10, 115:7, 115:13, 116:11, 116:12, 117:3, 117:4, 117:5, 118:9, 119:8, 119:12, 119:20, 119:21, 122:19, 123:6, 124:23, 125:7, 128:9, 128:22, 129:16, 130:9, 130:12, 135:20, 136:12, 144:1

**needed** [4] - 21:16, 92:17,

117:16, 125:13

**needing** [1] - 140:20

**needs** [3] - 43:23, 84:19, 109:22

**negligence** [8] - 135:11, 135:23, 136:2, 136:3, 137:25, 138:19, 139:4, 139:12

**never** [10] - 6:25, 23:24, 69:19, 69:20, 79:15, 79:16, 105:22, 137:13

**New** [5] - 1:6, 1:22, 59:24, 71:19, 73:16

**new** [3] - 10:23, 134:20, 134:22

**news** [1] - 81:11

**newspaper** [2] - 48:10, 49:21

**next** [12] - 7:2, 42:20, 51:5, 61:13, 61:14, 101:10, 106:8, 106:24, 118:12, 122:6, 126:5, 145:2

**nice** [1] - 82:2

**nicer** [1] - 127:24

**night** [3] - 118:7, 133:12, 133:18

**nine** [2] - 143:25, 144:9

**nobody** [1] - 9:12

**nomenclature** [2] - 2:15, 123:1

**non** [4] - 76:14, 105:21, 121:1, 121:21

**non-argumentative** [1] - 121:1

**non-cooperation** [1] - 105:21

**non-sequential** [1] - 121:21

**non-turbulent** [1] - 76:14

**noncompliance** [1] - 106:5

**none** [2] - 54:13, 109:3

**NORTH** [1] - 1:1

**North** [17] - 1:6, 27:5, 27:19, 28:18, 30:17, 31:8, 34:3, 34:8, 55:7, 55:8, 55:12, 57:18, 57:21, 70:14, 70:15, 90:19

**Northern** [1] - 71:18

**note** [1] - 115:10

**notebook** [5] - 114:18, 115:24, 115:25, 124:2, 125:12

**notebooks** [3] - 122:23, 123:25, 129:10

**noted** [1] - 84:12

**notereading** [1] - 1:25

**nothing** [4] - 32:11, 72:14, 134:22, 135:8

**notice** [4] - 66:17, 113:6, 113:7, 113:18

**November** [3] - 8:8, 8:16,

9:21

**Number** [2] - 106:9, 121:7
**number** [33] - 14:23, 15:7, 15:10, 25:11, 41:5, 41:21, 41:22, 81:23, 86:23, 96:16, 97:11, 97:17, 98:10, 98:22, 98:23, 100:23, 102:4, 106:10, 106:11, 106:24, 107:18, 107:19, 107:21, 108:6, 109:17, 109:19, 120:6, 122:10, 122:11, 139:23, 143:12, 143:21
**numbering** [2] - 119:20, 121:19
**numbers** [3] - 41:12, 45:15, 119:4
**numerous** [1] - 67:22

---

**O**

---

**object** [3] - 37:15, 37:16, 48:21
**objected** [4] - 45:10, 53:23, 53:24, 130:16
**objection** [8] - 2:14, 2:16, 48:19, 50:23, 77:25, 78:24, 90:9, 112:21
**Objection** [1] - 120:25
**objections** [1] - 48:18
**objective** [1] - 69:16
**observed** [1] - 115:12
**obtain** [1] - 56:6
**obtained** [1] - 15:3
**obviate** [1] - 115:6
**obviously** [9] - 55:11, 61:2, 62:5, 88:15, 104:13, 105:6, 105:7, 109:7, 131:23
**occasions** [1] - 67:22
**octillion** [7] - 40:24, 40:25, 41:1, 41:18, 41:21, 41:22, 42:1
**OF** [2] - 1:1, 1:12
**offense** [1] - 87:18
**offer** [6] - 23:5, 31:20, 49:4, 131:13, 132:1, 134:4
**offered** [5] - 32:20, 49:7, 49:19, 84:8, 116:20
**Office** [1] - 1:15
**office** [1] - 128:14
**Officer** [69] - 2:25, 5:8, 5:11, 5:18, 6:21, 6:25, 7:2, 7:5, 7:9, 7:17, 10:4, 14:14, 14:17, 14:19, 17:9, 21:6, 21:22, 22:9, 29:7, 29:13, 29:17, 29:19, 29:21, 29:23, 30:11, 34:14, 35:11, 38:10, 42:5, 42:9, 42:12, 42:19, 42:25, 43:7, 43:8, 48:7, 48:11, 48:12, 50:2, 50:6,

50:9, 50:17, 51:5, 51:8, 51:13, 51:14, 52:1, 52:4, 52:23, 54:11, 57:14, 68:12, 73:23, 86:25, 88:20, 89:7, 89:22, 92:25, 95:23, 105:18, 106:12, 106:13, 107:1, 107:11, 107:22, 108:6, 110:4, 130:16, 139:5
**officer** [2] - 69:17, 69:18, 85:21, 107:10, 108:12, 108:22, 108:25, 109:1, 110:1, 110:22, 111:11, 136:7
**officer's** [1] - 110:25
**officers** [3] - 89:9, 105:22, 108:14
**official** [1] - 142:20
**old** [2] - 125:22, 128:13
**old-school** [1] - 125:22
**once** [5] - 39:14, 57:6, 95:4, 107:11, 129:8
**one** [91] - 2:4, 4:8, 4:21, 7:1, 9:7, 12:22, 15:21, 20:1, 23:10, 23:22, 25:7, 27:17, 31:7, 33:22, 36:15, 37:6, 38:6, 41:12, 41:13, 41:25, 42:1, 42:9, 42:13, 44:11, 50:11, 51:13, 52:14, 53:11, 54:19, 56:20, 60:8, 61:3, 61:10, 63:3, 71:15, 72:6, 82:14, 86:23, 88:14, 90:20, 93:12, 98:11, 98:17, 98:22, 99:8, 100:4, 102:1, 105:12, 105:13, 105:15, 106:8, 106:24, 109:17, 110:9, 110:16, 111:18, 113:7, 113:8, 113:20, 116:3, 117:24, 118:25, 121:9, 122:20, 123:6, 123:13, 125:3, 129:19, 131:9, 132:12, 133:8, 137:1, 137:2, 138:6, 138:10, 141:9, 141:10, 141:24, 142:22, 142:24, 143:12, 143:18, 143:21, 144:11
**one-stop** [1] - 116:3
**ones** [5] - 68:6, 75:18, 76:8, 114:20, 117:2
**open** [6] - 52:11, 53:8, 63:14, 80:24, 80:25, 141:7
**opening** [9] - 80:16, 101:8, 125:3, 125:10, 126:7, 126:12, 126:16, 126:19, 127:9
**opine** [1] - 134:16
**opinion** [4] - 14:13, 15:2, 16:8, 41:24, 50:19, 63:25, 64:16
**opinions** [15] - 5:23, 5:25, 17:5, 18:12, 18:13, 21:10, 21:18, 23:6, 24:11, 24:12,

49:4, 59:9, 62:9, 62:13, 66:1
**opportunity** [13] - 7:1, 11:25, 12:8, 24:22, 54:10, 61:12, 65:5, 79:2, 96:18, 112:23, 118:20, 137:15, 145:8
**opposition** [2] - 104:12, 139:23
**oral** [3] - 59:7, 60:19, 136:25
**order** [31] - 12:21, 26:18, 27:9, 59:4, 59:12, 59:14, 61:17, 69:6, 78:14, 104:6, 114:14, 115:5, 115:10, 119:3, 119:4, 119:5, 119:14, 121:24, 122:2, 122:7, 122:14, 129:4, 131:15, 132:18, 132:23, 133:13, 134:15, 136:21, 142:19
**ordering** [1] - 78:22
**orders** [1] - 105:18
**original** [1] - 11:3
**originally** [1] - 5:5
**otherwise** [4] - 32:11, 144:17, 144:19, 145:6
**ought** [4] - 78:23, 129:8, 129:12, 136:16
**ourselves** [2] - 45:23, 49:18
**outburst** [1] - 84:16
**outbursts** [1] - 83:9
**outline** [1] - 71:21
**outset** [4] - 11:8, 13:6, 13:9, 55:19
**outside** [5] - 65:8, 66:22, 111:6, 111:15, 131:13
**outsourced** [2] - 28:24, 28:25
**outweigh** [1] - 54:3
**outweighed** [1] - 83:6
**outweighs** [1] - 55:5
**overall** [1] - 68:8
**overdose** [1] - 85:1
**Overruled** [1] - 120:25
**owe** [1] - 59:3
**own** [5] - 67:21, 83:14, 85:3, 127:19, 139:4

---

**P**

---

**P.G** [1] - 107:15
**p.m** [1] - 145:9
**page** [26] - 25:17, 25:22, 26:4, 26:17, 27:1, 37:6, 43:20, 44:7, 45:1, 45:2, 45:4, 45:13, 45:14, 66:23, 86:6
**pages** [14] - 24:9, 25:8, 25:22, 25:23, 26:5, 26:14, 27:9, 27:25, 37:6, 44:1, 44:25, 63:6, 65:21

**paint** [1] - 99:20
**paired** [1] - 4:1
**pairs** [1] - 4:5
**paper** [16] - 15:16, 114:4, 114:15, 114:22, 115:18, 116:9, 116:11, 117:3, 117:4, 117:15, 117:18, 117:25, 119:8, 122:18, 122:20, 142:17
**papers** [1] - 44:16
**paragraph** [14] - 14:23, 14:25, 15:13, 16:8, 16:15, 16:16, 17:3, 17:7, 18:11, 24:11, 36:6, 44:11, 62:15, 64:16
**paragraphs** [2] - 11:12, 66:2
**paralegal** [1] - 2:22
**parameters** [1] - 125:21
**paranoia** [1] - 70:10
**paraphrasing** [2] - 24:3, 24:4
**parcel** [1] - 104:16
**parent** [3] - 72:23, 75:16, 76:6
**parents** [2] - 75:18, 77:10
**part** [21] - 14:21, 21:12, 21:13, 29:24, 34:8, 40:22, 43:11, 44:10, 47:20, 67:20, 79:10, 88:9, 92:5, 96:21, 104:16, 111:17, 134:5, 134:6, 134:15, 134:24, 139:13
**particular** [10] - 70:8, 79:19, 83:4, 84:3, 91:13, 92:7, 104:25, 109:6, 112:17, 121:10
**particularly** [8] - 30:14, 92:3, 105:11, 106:5, 109:1, 109:13, 124:22, 129:3
**parties** [8] - 63:10, 63:13, 66:4, 66:6, 66:16, 66:24, 132:10, 132:12
**partly** [1] - 67:15
**partner** [1] - 65:18
**partnership** [1] - 140:15
**parts** [1] - 32:19
**party** [1] - 129:21
**pass** [3] - 141:13, 141:15, 143:3
**passed** [3] - 5:17, 39:9, 124:4
**passerby** [1] - 50:14
**passing** [2] - 49:16, 72:9
**past** [15] - 68:15, 90:1, 90:23, 90:25, 91:9, 91:15, 92:6, 93:11, 93:12, 95:19, 102:9, 102:14, 135:12, 135:16, 138:21
**Patel** [21] - 28:5, 28:9,

28:14, 28:17, 30:21, 31:4, 32:5, 32:10, 35:20, 35:23, 36:6, 37:20, 47:8, 47:9, 47:14, 47:17, 47:21, 47:22, 55:16

**pathways** [1] - 141:18
**patient's** [1] - 68:22
**pattern** [1] - 90:19
**pause** [1] - 16:11
**pay** [1] - 126:21
**peaceful** [1] - 82:2
**peaks** [2] - 15:4, 57:23
**peek** [1] - 141:7
**peer** [1] - 44:14
**peer-reviewed** [1] - 44:14
**people** [20] - 36:19, 36:20, 52:13, 70:13, 71:4, 72:22, 114:7, 141:21, 141:25, 142:1, 142:4, 142:7, 142:9, 142:13, 142:18, 143:6, 143:10, 144:3, 144:11, 144:15
**per** [1] - 71:2
**perceived** [2] - 64:24, 73:14
**perception** [3] - 131:20, 131:22, 134:11
**perfectly** [2] - 128:6, 132:20
**performance** [1] - 44:19
**perhaps** [3] - 66:4, 101:7, 135:21
**period** [1] - 131:8
**permissible** [1] - 82:12
**permission** [2] - 23:10, 137:9
**permit** [1] - 80:11
**permits** [1] - 71:5
**permitted** [3] - 81:13, 83:14, 131:14
**permitting** [1] - 133:25
**Perrin** [2] - 86:5, 86:13
**person** [27] - 4:7, 23:12, 29:3, 51:5, 52:14, 53:1, 54:10, 54:15, 68:13, 70:16, 70:17, 71:17, 76:5, 81:9, 81:16, 110:23, 124:11, 141:14, 143:7, 143:8, 143:9, 143:13, 143:14, 143:15, 143:20, 144:11
**person's** [3] - 70:17, 78:5, 124:21
**personal** [1] - 68:20
**personnel** [1] - 31:15
**perspective** [5] - 67:16, 74:2, 89:5, 92:5, 133:2
**Ph.D** [1] - 23:7
**phase** [1] - 78:11
**phone** [7] - 3:15, 59:21, 60:7, 112:15, 129:8, 129:12, 130:10
**photograph** [1] - 20:5

**phrase** [1] - 111:25
**physical** [3] - 73:3, 73:5, 82:6
**physicians** [1] - 49:24
**pick** [2] - 46:7, 142:14
**picture** [1] - 99:21
**pictures** [1] - 124:11
**piece** [11] - 6:19, 7:11, 28:17, 36:2, 38:4, 38:8, 41:6, 84:22, 95:5, 132:2
**pieces** [2] - 33:18, 134:10
**pig** [1] - 117:18
**pipe** [1] - 115:3
**place** [6] - 10:9, 14:5, 25:2, 94:10, 99:20, 123:15
**placed** [2] - 63:13
**places** [1] - 47:7
**placid** [1] - 76:13
**plain** [1] - 79:5
**plainer** [1] - 115:14
**plainly** [1] - 106:4
**plaintiff** [48] - 2:5, 2:6, 2:11, 2:18, 2:21, 2:22, 5:3, 7:24, 8:15, 8:22, 11:23, 13:15, 23:13, 24:22, 27:18, 39:24, 45:6, 48:13, 57:4, 57:8, 58:12, 61:19, 64:6, 64:19, 64:20, 64:21, 67:16, 74:2, 80:12, 81:4, 81:8, 81:22, 83:6, 84:1, 84:8, 84:17, 101:2, 109:15, 111:22, 118:25, 120:7, 127:23, 130:25, 131:3, 131:11, 131:25, 139:24, 142:22
**Plaintiff** [3] - 1:6, 120:17, 121:8
**plaintiff's** [29] - 4:1, 4:22, 5:7, 5:24, 6:5, 6:8, 6:17, 6:20, 7:21, 9:4, 13:13, 17:11, 22:9, 30:7, 31:14, 31:17, 33:14, 40:2, 40:5, 40:8, 56:9, 64:1, 65:1, 80:9, 104:9, 110:19, 119:17, 128:13, 133:2
**Plaintiff's** [2] - 119:17, 120:12
**Plaintiffs** [1] - 1:15
**plaintiffs** [6] - 48:5, 53:22, 55:25, 80:11, 97:20, 137:13
**plan** [4] - 32:24, 88:2, 102:7, 131:15
**planned** [1] - 127:13
**plant** [3] - 7:10, 21:6, 52:1
**planted** [23] - 6:21, 7:1, 10:4, 11:1, 17:9, 19:22, 19:24, 22:9, 30:15, 46:10, 46:12, 48:7, 48:13, 48:15, 49:13, 50:3, 50:7, 50:18, 51:8, 51:14, 54:11, 54:23
**planting** [4] - 21:4, 42:20,

43:9, 48:11
**play** [5] - 61:19, 117:8, 123:13, 129:21, 129:23
**played** [2] - 116:13, 117:5
**playing** [1] - 129:20
**pleased** [1] - 66:19
**pleasing** [1] - 115:21
**plus** [1] - 65:20
**podium** [5] - 125:4, 125:7, 125:9, 125:15, 125:17
**point** [36] - 5:1, 10:25, 14:3, 22:16, 22:23, 24:9, 26:25, 33:7, 38:6, 47:6, 47:18, 53:8, 59:10, 61:10, 76:24, 88:14, 88:19, 91:9, 91:15, 96:5, 98:18, 102:7, 111:20, 116:5, 121:17, 121:21, 126:18, 127:13, 129:6, 134:4, 135:1, 143:11, 143:19, 144:14
**pointed** [2] - 16:15, 104:22
**points** [2] - 48:4, 111:22
**Police** [5] - 86:20, 87:3, 87:11, 89:10, 91:24
**police** [2] - 100:14, 136:7
**policies** [1] - 87:25
**policy** [6] - 87:3, 87:7, 88:17, 88:23, 91:14, 91:15
**popped** [1] - 15:12
**portion** [4] - 25:20, 26:25, 28:13, 114:21
**POSEY** [1] - 4:10
**Posey** [2] - 3:1, 6:15
**posit** [1] - 86:9
**position** [12] - 11:24, 12:4, 14:2, 23:14, 36:9, 64:7, 64:8, 101:15, 111:4, 123:20, 136:22, 139:15
**possess** [2] - 50:16, 50:17
**possessed** [1] - 51:18
**possession** [2] - 106:5, 106:6
**possibility** [1] - 124:12
**possible** [4] - 3:17, 61:22, 109:23, 124:6
**possibly** [2] - 8:19, 124:9
**potentially** [2] - 65:25, 102:15
**PowerPlex** [1] - 27:3
**practice** [1] - 70:13
**practiced** [1] - 63:4
**pre** [1] - 141:10
**pre-COVID** [1] - 141:10
**precarious** [1] - 23:14
**precedent** [1] - 108:5
**prefer** [2] - 120:5, 126:11
**preference** [3] - 114:23, 116:5, 116:8
**prefers** [1] - 130:11
**prejudice** [8] - 61:4, 61:19, 64:24, 83:5, 83:8, 84:1,

95:23, 137:22
**prejudicial** [18] - 11:24, 14:2, 23:14, 37:8, 38:22, 45:18, 54:3, 69:15, 71:7, 88:12, 92:25, 95:5, 96:12, 96:15, 97:12, 98:21, 100:12, 109:15
**premature** [1] - 132:3
**preparation** [1] - 145:1
**prepare** [2] - 60:3, 60:25
**prepared** [3] - 39:1, 111:19, 138:16
**preparing** [2] - 3:14, 118:23
**preprinted** [1] - 141:15
**presence** [1] - 65:8
**present** [16] - 7:16, 18:12, 20:25, 21:22, 21:23, 22:12, 43:10, 45:5, 52:12, 53:13, 61:3, 64:21, 78:1, 85:11, 115:1, 138:16
**presentations** [1] - 64:23
**presented** [6] - 18:1, 27:25, 77:15, 88:1, 108:17, 109:8
**preserving** [1] - 103:11
**pressures** [1] - 114:9
**presumably** [2] - 75:1, 76:9
**Pretrial** [1] - 1:7
**pretrial** [30] - 4:15, 7:23, 10:18, 10:24, 11:21, 12:4, 26:18, 27:9, 31:13, 39:4, 39:6, 45:10, 56:21, 67:17, 69:6, 99:22, 119:2, 119:3, 119:5, 119:14, 121:18, 121:20, 121:24, 122:2, 122:6, 122:14, 129:4, 132:18, 132:23, 136:20
**PRETRIAL** [1] - 1:12
**pretty** [6] - 7:8, 38:7, 55:3, 62:19, 111:23, 143:17
**preventing** [1] - 39:19
**preview** [1] - 77:4
**previously** [4] - 27:4, 38:3, 68:17, 81:15
**primarily** [1] - 84:14
**Prince** [9] - 106:3, 108:10, 108:19, 110:18, 111:6, 111:13, 111:15, 112:1, 112:4
**print** [1] - 100:9
**printed** [1] - 118:7
**probabilistic** [3] - 44:18, 47:24, 58:1
**probative** [7] - 45:19, 54:3, 55:1, 55:4, 88:12, 94:12, 95:6
**problem** [5] - 24:6, 24:20, 24:24, 52:18, 98:3
**problematic** [2] - 52:18, 105:11
**problems** [1] - 61:9
**procedures** [1] - 87:25

**proceedings** [1] - 145:15
**Proceedings** [1] - 1:25
**process** [11] - 13:10, 29:4, 29:25, 30:19, 30:20, 30:23, 31:2, 40:1, 52:19, 56:5, 141:23
**produced** [2] - 1:25, 30:6
**profile** [2] - 34:15, 34:17
**profiles** [1] - 27:3
**prohibited** [1] - 81:18
**prong** [1] - 104:14
**pronounce** [2] - 2:5, 4:5
**proof** [2] - 59:12, 59:14
**propensity** [2] - 71:25, 84:8
**proper** [1] - 78:3
**properly** [3] - 31:11, 36:19, 94:9
**proposal** [5] - 6:9, 8:8, 8:18, 9:21, 40:3
**propose** [1] - 131:3
**proposed** [10] - 6:9, 26:19, 77:19, 80:12, 103:10, 103:15, 113:14, 118:24, 119:2, 121:24
**proposing** [1] - 27:19
**prosecutor** [2] - 87:15, 87:16
**protective** [1] - 68:21
**protocol** [2] - 3:6, 129:24
**prove** [2] - 82:13, 87:16
**provide** [4] - 17:20, 60:24, 113:2, 138:3
**provided** [2] - 5:21
**providers** [2] - 69:3, 79:24
**provides** [3] - 14:13, 14:19, 21:5
**province** [1] - 87:8
**Public** [1] - 1:18
**published** [1] - 44:14
**pull** [2] - 16:23, 45:12
**pulled** [2] - 45:22, 50:12
**punished** [1] - 92:5
**punitive** [8] - 78:11, 90:18, 90:22, 91:6, 91:10, 91:16, 92:4, 102:9
**purpose** [15] - 6:10, 57:11, 57:13, 58:16, 76:4, 78:6, 79:9, 80:22, 81:19, 83:7, 90:17, 90:18, 103:11, 110:2, 136:13
**purposes** [10] - 34:13, 50:6, 50:21, 62:4, 73:23, 77:1, 79:23, 82:18, 92:18, 102:10
**pursued** [1] - 112:12
**push** [1] - 33:1
**pushing** [1] - 61:5
**put** [29] - 10:9, 12:4, 12:5, 12:9, 14:18, 27:8, 33:18, 36:15, 36:17, 37:5, 39:4, 39:5, 46:20, 50:14, 52:4,

62:24, 64:6, 65:4, 66:24, 71:20, 105:5, 108:2, 110:4, 110:5, 120:15, 123:25, 124:5, 124:20, 141:13
**puts** [4] - 11:23, 14:2, 23:13, 61:11
**putting** [3] - 13:20, 32:24, 62:6, 101:20, 109:5, 139:14

**Q**

**qualified** [10] - 64:8, 103:16, 103:19, 103:22, 104:5, 104:14, 109:22, 110:2, 112:19, 134:15
**qualifying** [1] - 141:21
**questions** [14] - 24:2, 78:4, 105:11, 110:17, 115:16, 125:2, 125:8, 128:21, 129:18, 133:13, 141:15, 141:22, 144:21, 145:4
**quickly** [3] - 3:12, 15:19, 139:18
**quiet** [1] - 65:19
**quite** [1] - 111:22
**quote** [1] - 23:4
**quoted** [2] - 81:10, 87:11

**R**

**Rachel** [1] - 2:25
**raise** [2] - 123:18, 137:8
**raised** [5] - 134:18, 137:16, 138:15, 139:1, 139:22
**raises** [1] - 126:2
**Raleigh** [8] - 1:16, 1:19, 72:25, 86:20, 87:3, 87:11, 89:10, 91:24
**rather** [2] - 79:9, 114:21
**rationale** [1] - 86:1
**raw** [3] - 38:7, 38:16, 38:17
**reach** [5] - 6:5, 9:6, 28:16, 32:7, 48:25
**reached** [2] - 27:17
**read** [6] - 21:18, 37:14, 40:24, 41:14, 71:21, 103:14
**reading** [3] - 45:17, 106:10
**reads** [1] - 44:11
**ready** [1] - 140:24
**real** [2] - 52:13, 104:18
**realize** [2] - 8:2, 39:15
**realized** [6] - 6:2, 8:20, 40:1, 40:5, 40:7, 54:20
**really** [33] - 3:25, 4:12, 7:12, 13:12, 26:2, 27:8, 27:13, 36:23, 37:5, 44:4, 50:19, 55:16, 58:11, 61:2, 62:17, 70:18, 71:24, 84:19, 86:10, 93:22, 103:3, 107:12, 110:1,

114:5, 114:8, 114:10, 115:7, 117:20, 122:22, 126:2, 126:15, 137:3
**realm** [1] - 73:12
**reason** [10] - 6:18, 12:1, 21:8, 59:8, 63:3, 72:3, 91:5, 95:22, 136:4, 139:23
**reasonable** [7] - 46:9, 46:15, 50:3, 87:5, 87:17, 98:2, 100:16
**reasonableness** [1] - 69:16
**reasonably** [7] - 9:4, 9:6, 87:2, 87:7, 106:13, 107:22, 108:7
**reasons** [3] - 9:20, 46:25, 53:9
**rebut** [11] - 10:13, 10:16, 13:1, 14:9, 14:12, 17:8, 18:18, 22:25, 23:12, 25:2, 36:8
**rebuts** [3] - 14:16, 18:12, 22:10
**rebuttal** [29] - 5:16, 5:20, 6:4, 9:25, 10:5, 10:12, 10:13, 12:2, 12:3, 12:24, 14:20, 21:5, 21:9, 21:12, 21:17, 22:8, 22:11, 23:6, 38:4, 39:7, 39:16, 58:8, 58:20, 59:9, 62:8, 64:20, 68:9, 68:16, 74:17
**rebutting** [2] - 11:11, 21:4
**recalled** [1] - 62:24
**receive** [2] - 76:2, 114:3
**received** [2] - 40:11, 136:8
**receiving** [2] - 76:4, 76:6
**recent** [1] - 99:5
**recently** [1] - 105:19
**recess** [1] - 46:6
**recollection** [1] - 75:9
**reconsider** [1] - 134:14
**record** [15] - 2:4, 17:23, 24:1, 32:1, 32:10, 45:22, 47:4, 75:8, 78:16, 80:21, 86:10, 99:22, 118:22, 119:22, 145:15
**recorded** [1] - 1:25
**records** [17] - 67:20, 68:23, 69:1, 69:7, 71:18, 72:7, 73:2, 74:18, 75:4, 75:10, 75:21, 76:22, 78:18, 79:13, 79:14, 79:18, 117:19
**recovered** [1] - 124:10
**redact** [2] - 28:13, 45:21
**redacted** [2] - 43:23, 79:19
**redesignate** [11] - 3:24, 5:2, 6:12, 8:1, 8:19, 12:19, 15:11, 22:7, 22:8, 39:12, 40:3
**redesignated** [1] - 11:22
**redo** [1] - 119:20
**refer** [1] - 2:9

**reference** [4] - 15:15, 17:4, 33:9, 86:18
**referenced** [3] - 9:23, 26:17, 27:3
**references** [1] - 44:8
**referencing** [1] - 33:20
**referred** [1] - 39:18
**referring** [1] - 14:22
**reflect** [1] - 122:3
**reflected** [1] - 97:17
**refresh** [1] - 75:8
**refused** [1] - 108:13
**regard** [8] - 9:17, 11:6, 46:24, 63:14, 65:1, 129:25, 130:9, 131:24
**regarding** [6] - 60:20, 66:14, 86:19, 86:25, 87:4, 139:24
**regardless** [1] - 106:16
**relate** [1] - 66:20
**related** [7] - 32:22, 44:15, 49:21, 80:12, 95:24, 100:8, 132:13
**relates** [13] - 18:4, 18:15, 19:2, 19:6, 20:3, 33:3, 35:22, 70:4, 72:15, 79:24, 137:23, 137:24, 139:9
**relating** [1] - 78:4
**relations** [1] - 82:24
**relationship** [19] - 67:19, 68:7, 70:5, 70:11, 70:21, 71:5, 72:8, 72:17, 72:21, 72:24, 74:3, 74:5, 75:11, 75:15, 76:10, 76:14, 78:5, 83:11, 85:5
**relatively** [2] - 90:2, 92:14
**relearning** [1] - 141:17
**relevance** [1] - 50:23
**relevant** [18] - 51:17, 54:25, 71:10, 73:15, 73:16, 75:10, 91:4, 94:5, 96:7, 96:9, 96:16, 98:24, 99:6, 99:19, 102:4, 106:20, 107:13, 133:7
**reliability** [1] - 44:13
**reliable** [1] - 134:17
**relied** [3] - 12:9, 12:13, 34:22
**remember** [4] - 3:8, 59:17, 75:7, 116:19
**remembering** [1] - 26:3
**remind** [8] - 8:23, 15:7, 49:4, 86:2, 111:1, 118:25, 135:13, 138:6
**reminded** [2] - 18:19, 131:17
**remote** [2] - 60:16, 61:15
**remove** [2] - 12:10, 51:24
**removed** [1] - 75:14
**renews** [1] - 13:12
**repeat** [1] - 119:24

**repeated** [1] - 110:25
**repeatedly** [1] - 81:23
**reply** [1] - 48:9
**report** [123] - 4:20, 5:21, 5:22, 5:23, 5:25, 9:11, 11:11, 14:12, 14:21, 15:7, 15:12, 15:14, 15:25, 16:8, 17:21, 17:25, 18:1, 18:7, 18:10, 22:11, 23:16, 23:18, 23:19, 23:20, 23:22, 23:23, 24:2, 24:6, 25:2, 25:16, 25:20, 26:9, 26:11, 26:15, 26:16, 26:18, 26:22, 26:24, 27:2, 27:4, 27:16, 28:6, 28:13, 29:4, 29:7, 29:12, 29:16, 29:20, 29:25, 30:8, 31:24, 32:11, 32:12, 32:13, 32:14, 32:18, 32:25, 33:8, 33:9, 33:14, 33:22, 33:23, 34:10, 34:14, 34:17, 35:1, 35:25, 36:7, 36:8, 36:14, 36:24, 37:2, 38:7, 38:13, 38:17, 38:20, 39:3, 40:9, 40:13, 40:24, 41:8, 41:14, 42:10, 42:18, 43:4, 43:5, 43:6, 43:17, 43:20, 43:22, 44:4, 44:10, 47:2, 48:19, 48:22, 49:1, 49:6, 49:10, 53:20, 55:3, 55:7, 56:18, 56:21, 56:23, 57:1, 57:7, 57:18, 58:3, 58:5, 58:17, 58:24, 62:18, 63:7, 63:19, 64:2, 64:3, 64:9, 65:21, 76:1, 100:23
**Report** [8] - 27:5, 27:6, 27:20, 28:23, 34:4, 34:5, 121:7
**reportable** [1] - 15:5
**Reporter** [1] - 1:21
**reporters** [1] - 61:16
**reporting** [1] - 44:16
**reports** [8] - 14:25, 17:20, 27:10, 27:12, 28:1, 32:12, 47:1, 52:10
**reprimand** [3] - 88:20, 89:18, 90:4
**reprimanded** [7] - 89:12, 90:1, 92:16, 93:5, 93:8, 93:14
**reprimands** [1] - 89:2
**request** [4] - 18:24, 22:6, 26:13, 59:6
**requested** [1] - 31:17
**requesting** [1] - 57:14
**require** [1] - 65:13
**requirements** [1] - 115:11
**reserve** [1] - 80:20
**reserving** [1] - 80:10
**resolve** [1] - 130:18
**resolved** [1] - 104:23

**resolves** [1] - 97:6
**resonate** [1] - 44:4
**respect** [8] - 68:17, 80:20, 87:15, 87:25, 88:25, 91:19, 98:1, 106:23
**respectfully** [1] - 22:6
**respond** [3] - 66:9, 140:4, 140:25
**responded** [1] - 140:6
**response** [9] - 17:3, 49:8, 55:22, 86:21, 93:9, 137:14, 138:14, 140:20, 145:7
**rest** [1] - 38:3
**result** [3] - 33:13, 101:11, 104:23
**results** [5] - 30:1, 30:13, 37:21, 38:9, 56:17
**returning** [1] - 130:1
**revealed** [1] - 16:10
**review** [5] - 15:14, 91:1, 101:3, 112:5, 132:17
**reviewed** [1] - 44:14
**reviewing** [1] - 88:18
**revise** [1] - 129:3
**revisit** [1] - 135:12
**rigors** [1] - 110:4
**rise** [1] - 3:7
**risk** [5] - 29:23, 55:1, 55:5, 92:12, 136:10
**RMR** [1] - 1:21, 145:19
**road** [1] - 11:16, 77:3
**role** [2] - 10:16, 111:12
**roll** [2] - 124:14, 124:18
**room** [12] - 109:24, 116:14, 117:4, 117:8, 121:4, 127:24, 128:5, 128:7, 128:13, 141:8, 141:11, 141:12
**rooms** [2] - 128:11, 141:6
**row** [1] - 127:10
**rule** [5] - 84:10, 107:5, 107:8, 114:13, 128:22
**Rule** [2] - 20:16, 81:18
**ruled** [1] - 133:21
**rules** [4] - 62:25, 115:6, 115:11, 117:10
**ruling** [13] - 17:2, 25:15, 43:15, 65:10, 78:13, 80:20, 81:3, 88:15, 131:12, 131:17, 133:25, 134:3, 135:3
**rulings** [3] - 67:10, 69:9, 135:9
**run** [10] - 17:1, 29:8, 32:12, 32:13, 33:9, 33:13, 58:5, 118:6, 133:24, 141:4
**running** [4] - 29:13, 34:14, 118:18, 119:10

## S

**safety** [1] - 79:16
**sailed** [1] - 36:10
**samples** [1] - 35:10
**Sandra** [12] - 115:3, 116:21, 116:22, 118:3, 120:16, 120:18, 122:8, 125:16, 127:17, 128:11, 129:15, 142:8
**sanitize** [1] - 121:1
**save** [2] - 110:6, 132:21
**saw** [6] - 52:25, 53:1, 54:20, 54:21, 69:20, 77:17
**SBI** [4] - 13:5, 27:12, 31:15, 55:20
**SBI's** [1] - 31:18
**scale** [2] - 83:8, 88:11
**scenario** [1] - 143:18
**scene** [4] - 7:2, 51:6, 51:7, 124:10
**schedule** [2] - 60:15, 129:15
**scheduling** [1] - 115:5
**scheme** [1] - 93:23
**school** [1] - 125:22
**science** [1] - 44:3
**scientific** [1] - 44:14
**scope** [1] - 44:1
**se** [1] - 71:2
**seal** [1] - 87:20
**search** [1] - 53:12
**seat** [1] - 143:11
**seated** [2] - 3:11, 143:7
**seating** [1] - 141:12
**second** [9] - 4:7, 4:9, 15:22, 23:10, 59:20, 98:11, 105:15, 111:18, 114:18
**seconds** [1] - 77:17
**section** [1] - 67:9
**sections** [1] - 129:23
**see** [26] - 15:16, 19:12, 20:12, 20:13, 27:10, 32:5, 32:23, 43:6, 43:17, 52:14, 66:22, 70:12, 73:20, 76:21, 77:2, 78:3, 79:13, 80:4, 88:9, 88:11, 112:20, 114:13, 116:1, 118:19, 134:10
**seeing** [1] - 80:4
**seek** [6] - 18:9, 21:25, 26:1, 38:18, 79:17, 91:2
**seeking** [13] - 17:8, 25:19, 31:20, 32:15, 37:15, 45:1, 45:7, 45:8, 47:10, 65:10, 83:7, 88:20, 139:7
**seeks** [2] - 18:8, 18:12
**seem** [3] - 15:19, 21:24, 104:2
**selection** [2] - 142:17,

142:20
  **self** [4] - 41:1, 84:25, 85:22, 86:10
  **self-defense** [1] - 85:22
  **self-evident** [1] - 41:1
  **self-harm** [1] - 86:10
  **self-harming** [1] - 84:25
**send** [9] - 109:20, 117:4, 121:3, 121:4, 123:16, 123:20, 136:23, 137:4, 137:5
**sense** [4] - 2:17, 75:17, 120:11, 122:16
**sentence** [2] - 33:9, 33:21
**separate** [7] - 11:13, 23:10, 116:9, 117:5, 117:15, 119:8, 130:17
**separately** [5] - 78:11, 101:12, 109:20, 116:12, 118:1
**sequential** [1] - 121:21
**serene** [1] - 76:13
**serve** [1] - 94:12
**serves** [1] - 115:8
**set** [5] - 85:3, 115:11, 117:14, 117:24, 141:15
**sets** [3] - 69:1, 94:14, 104:12
**seven** [4] - 61:14, 113:24, 114:11, 115:7
**several** [2] - 114:1, 119:15
**shall** [1] - 115:12
**shapes** [1] - 63:17
**shared** [4] - 68:24, 116:5, 123:2, 138:10
**shebang** [1] - 37:17
**sheet** [1] - 142:16
**Sheetz** [1] - 112:15
**shifting** [1] - 63:17
**ship** [1] - 36:9
**shoot** [2] - 101:14, 107:7
**shooting** [6] - 42:20, 43:8, 51:19, 51:21, 88:25, 108:21
**shop** [1] - 96:2
**shopping** [1] - 116:3
**short** [1] - 128:4
**shorthand** [1] - 123:1
**shot** [3] - 50:18, 69:21, 112:10
**shots** [1] - 54:16
**shoulder** [2] - 101:21, 136:8
**show** [20] - 36:18, 68:6, 80:24, 82:15, 84:8, 85:22, 99:17, 99:25, 100:7, 102:6, 102:7, 102:8, 126:1, 126:6, 126:10, 126:12, 126:20, 128:11, 141:6, 141:8
**showed** [1] - 78:17
**showing** [1] - 81:19
**shown** [1] - 124:12

**shows** [3] - 6:24, 42:22, 88:24

**Siavash** [3] - 2:6, 2:11, 81:21

**SIAVASH** [1] - 1:4

**side** [9] - 3:16, 9:6, 10:14, 32:24, 33:2, 83:8, 103:3, 108:1, 128:22

**sidebar** [1] - 84:18

**sides** [8] - 80:16, 114:9, 121:16, 122:25, 124:22, 126:4, 129:6, 144:25

**signators** [1] - 23:22

**signature** [1] - 45:1

**signed** [1] - 23:21

**significance** [2] - 45:19, 96:22, 96:23

**similar** [6] - 58:5, 90:23, 90:25, 102:9, 102:14, 105:16

**similarly** [1] - 125:22

**simple** [2] - 92:14, 101:20

**simply** [2] - 42:4, 54:4

**single** [4] - 18:11, 24:11, 104:22, 105:9

**sit** [4] - 28:1, 100:11, 127:8, 127:9

**sitting** [3] - 27:24, 70:23, 95:21

**situation** [3] - 37:10, 85:13, 85:23

**six** [2] - 44:18, 144:4

**sixty** [2] - 98:12, 98:14

**sixty-five** [2] - 98:12, 98:14

**skip** [1] - 107:19

**sleep** [3] - 133:12, 133:18, 133:19

**slid** [1] - 138:8

**slide** [2] - 138:6, 143:10

**slides** [1] - 77:10

**slippery** [1] - 77:7

**slope** [1] - 77:7

**sloppiness** [1] - 64:11

**sloppy** [1] - 64:5

**slow** [1] - 15:6

**slowly** [1] - 108:13

**small** [3] - 88:14, 105:25, 128:7

**smaller** [1] - 71:21

**software** [1] - 47:23

**Soheil** [30] - 1:5, 2:7, 2:9, 2:12, 6:22, 6:23, 11:4, 14:17, 14:20, 19:13, 19:15, 20:3, 20:5, 35:12, 67:19, 67:20, 68:11, 69:21, 73:10, 81:9, 84:23, 105:14, 105:17, 106:11, 106:14, 106:25, 107:23, 108:8, 108:21

**Soheil's** [6] - 35:13, 35:14, 45:20, 67:13, 71:1, 72:9

**solely** [1] - 79:9

**someone** [15] - 7:21, 9:10, 14:1, 19:24, 25:1, 42:11, 42:20, 43:9, 49:17, 64:8, 66:1, 70:19, 86:11, 101:20, 107:5

**sometimes** [3] - 114:7, 122:25, 124:3, 124:5, 143:5

**somewhat** [4] - 3:13, 62:13, 67:3, 101:16

**somewhere** [2] - 45:23, 59:15

**son** [1] - 78:5

**soon** [7] - 6:13, 6:16, 23:23, 61:21, 118:15, 140:16, 140:24

**sooner** [1] - 140:24

**sophisticated** [1] - 57:22

**sorry** [10] - 16:14, 20:7, 22:7, 26:23, 26:24, 29:6, 46:11, 80:7, 108:23, 140:12

**sort** [13] - 39:17, 65:19, 67:8, 68:8, 87:20, 105:16, 124:17, 130:5, 130:6, 131:3, 132:16, 133:23, 136:9

**sorts** [1] - 52:8

**sought** [7] - 18:23, 25:1, 33:16, 39:22, 76:19, 78:10, 89:20

**sound** [1] - 119:19

**sounded** [1] - 114:17

**sounds** [2] - 76:15, 80:7, 120:20

**sources** [3] - 81:11, 137:5, 137:6

**sourcing** [1] - 120:7

**speaking** [2] - 8:16, 13:20

**speaks** [9] - 17:22, 20:20, 24:2, 29:25, 31:25, 38:20, 41:15, 42:2, 43:4

**special** [12] - 103:6, 103:10, 103:21, 104:13, 104:18, 105:1, 105:3, 106:8, 106:24, 109:16, 111:20, 112:21

**specialty** [1] - 37:3

**specific** [19] - 19:2, 72:5, 72:7, 78:20, 85:8, 100:21, 114:14, 115:9, 131:9, 137:15, 139:16

**specifically** [11] - 14:8, 14:22, 16:7, 23:3, 35:9, 72:5, 104:14, 108:11, 110:17, 137:21, 137:24

**specifics** [1] - 17:25

**speculate** [1] - 28:1

**speculating** [1] - 94:19

**speculation** [1] - 34:7

**spend** [1] - 83:1

**spikes** [1] - 57:23

**sprung** [1] - 7:21

**squarely** [1] - 105:17

**St** [2] - 1:19, 1:21

**stab** [5] - 64:22, 78:23, 109:18, 112:24, 122:13

**stacks** [1] - 114:22

**stage** [5] - 94:14, 109:23, 109:25, 124:23, 125:1

**staggered** [1] - 108:13

**stand** [2] - 79:15, 92:15

**standard** [3] - 31:2, 70:14, 87:22

**standards** [2] - 44:18, 87:14

**standing** [4] - 106:25, 107:16, 108:24, 111:10

**start** [8] - 3:23, 68:3, 86:23, 105:2, 114:10, 123:10, 124:17, 144:1

**started** [2] - 26:3, 141:9

**starting** [3] - 52:19, 108:8, 129:7

**state** [7] - 47:9, 50:21, 72:23, 95:10, 95:13, 95:16, 127:3

**State** [25] - 27:5, 27:19, 28:10, 28:18, 28:20, 28:25, 29:2, 29:9, 30:17, 31:7, 31:15, 31:18, 34:3, 34:8, 34:16, 34:23, 35:8, 35:12, 35:14, 55:7, 55:8, 55:11, 56:4, 57:18, 57:21

**state's** [1] - 56:7

**statement** [9] - 16:23, 17:17, 19:8, 21:19, 72:7, 76:3, 125:10, 126:19, 127:9

**statements** [3] - 72:5, 75:21, 75:24

**STATES** [2] - 1:1, 1:13

**States** [1] - 1:15

**statistic** [1] - 100:1

**stature** [1] - 39:8

**stay** [1] - 3:11

**stead** [1] - 63:16

**steer** [1] - 62:22

**stenography** [1] - 1:25

**step** [2] - 10:9, 32:9

**steps** [2] - 75:14, 133:15

**stick** [1] - 128:4

**sticker** [2] - 120:14, 120:15

**stickers** [2] - 119:13, 119:14

**still** [15] - 17:3, 18:5, 32:14, 41:2, 52:18, 59:14, 60:4, 64:10, 77:23, 101:17, 119:21, 121:20, 130:7, 130:8, 131:1

**stipulate** [5] - 54:6, 58:22, 64:13, 64:14, 94:22

**stipulated** [1] - 119:15

**stipulation** [5] - 51:23, 52:1, 52:4, 52:7, 65:19, 66:4

**stochastic** [1] - 15:3

**stop** [3] - 53:14, 68:3, 116:3

**storm** [1] - 144:18

**story** [3] - 94:15, 131:4

**straight** [1] - 66:7

**straightforward** [1] - 92:14

**stray** [1] - 71:7

**streamline** [1] - 97:1

**streamlined** [3] - 65:6, 65:12, 66:20

**Street** [1] - 1:16

**strength** [1] - 33:6

**stretch** [2] - 83:7, 83:12

**strictly** [1] - 115:12

**strike** [11] - 37:15, 63:5, 78:12, 142:22, 142:23, 142:24, 143:1, 143:4, 143:6, 143:7, 144:16

**strikes** [4] - 141:21, 141:24, 142:1, 142:3

**strongly** [1] - 144:1

**studies** [2] - 44:12, 44:13

**stuff** [11] - 33:1, 33:20, 36:23, 52:13, 93:11, 93:12, 101:9, 117:5, 124:5, 126:25, 130:24

**stumbling** [1] - 108:25

**stutter** [1] - 141:17

**subject** [4] - 59:16, 62:25, 101:3, 130:17

**submit** [3] - 30:12, 91:1

**submitted** [6] - 17:22, 29:14, 29:18, 29:20, 38:11, 43:2

**submitting** [1] - 29:25

**subpoenas** [1] - 47:25

**subsequent** [1] - 38:23

**subsumed** [1] - 105:3

**successful** [1] - 3:19

**sudden** [21] - 4:12, 51:12, 54:9, 54:24, 93:5, 107:23, 107:25, 108:1, 108:2, 110:24, 111:5, 111:11, 111:14, 111:23, 112:3, 112:8, 112:9, 112:13, 112:14, 112:17

**suddenly** [1] - 108:2

**sufficiency** [1] - 49:5

**sufficient** [4] - 70:9, 116:10, 140:22

**sufficiently** [1] - 100:7

**suggest** [1] - 28:4

**suggested** [2] - 113:1, 134:2

**suggestive** [1] - 109:5

**suggests** [1] - 84:7

**suitcase** [1] - 124:16

**Suite** [2] - 1:16, 1:19

**suited** [1] - 124:22

**summary** [5] - 18:13, 36:24, 49:8, 66:22, 118:6
**super** [1] - 11:24
**supplement** [1] - 80:17
**supplemental** [11] - 4:15, 5:22, 14:25, 15:1, 15:7, 15:25, 16:8, 23:19, 30:6, 140:10, 140:17
**supplemented** [3] - 4:24, 40:12, 56:3
**support** [3] - 64:16, 91:10, 91:15
**supporting** [2] - 56:22, 56:23
**suppose** [13] - 13:14, 39:2, 51:25, 52:3, 75:6, 75:17, 76:23, 93:3, 94:21, 97:23, 98:3, 99:3, 103:5
**supposed** [3] - 93:13, 116:13, 135:15
**surprise** [3] - 10:19, 30:10, 58:12
**surprised** [1] - 54:5
**suspect** [2] - 88:1, 105:23
**Sustained** [1] - 120:25
**swabbing** [1] - 15:4
**sword** [1] - 78:10
**synthetic** [1] - 44:15
**system** [3] - 57:22, 123:15, 128:15
**systems** [1] - 44:19

## T

**table** [4] - 51:24, 112:15, 124:5, 124:15
**Tackett** [5] - 131:16, 131:18, 133:21, 134:15, 134:18
**taken.)** [1] - 46:6
**talks** [2] - 15:13, 24:11
**taught** [1] - 25:24
**teach** [2] - 71:9, 126:25
**technology** [4] - 3:20, 57:24, 117:10, 125:25
**Technology** [13] - 26:16, 26:22, 26:24, 27:7, 27:21, 28:16, 28:23, 29:7, 33:10, 34:5, 34:14, 34:22, 56:18
**telephonic** [1] - 145:3
**ten** [14] - 36:17, 61:14, 99:13, 99:14, 102:17, 123:25, 129:11, 141:22, 141:24, 142:1, 142:4, 144:3, 144:6, 144:19
**tend** [2] - 85:22, 114:19
**Tenth** [4] - 85:10, 85:16, 85:20, 86:3
**terms** [4] - 50:9, 51:1,

90:22, 97:24
**territory** [2] - 95:5, 99:16
**test** [9] - 14:3, 30:24, 31:1, 34:9, 56:15, 57:15, 58:7, 69:15
**tested** [11] - 5:6, 5:9, 29:19, 29:21, 30:1, 30:18, 30:23, 30:25, 35:10, 43:3, 44:17
**testified** [8] - 19:13, 53:2, 69:19, 73:8, 81:9, 81:22, 100:20, 107:9
**testifies** [1] - 78:2
**testify** [18] - 17:19, 17:25, 26:21, 29:19, 29:24, 30:22, 38:11, 40:4, 43:1, 47:14, 47:22, 62:3, 76:9, 95:12, 100:14, 130:22, 131:18, 134:19
**testifying** [4] - 62:12, 62:13, 97:18, 123:8
**testimony** [46] - 4:2, 9:5, 13:13, 14:16, 14:20, 17:7, 18:18, 18:23, 19:17, 21:2, 22:24, 22:25, 23:6, 24:13, 24:16, 31:25, 32:6, 33:18, 38:9, 45:7, 48:21, 52:19, 65:3, 68:11, 72:18, 78:25, 81:14, 100:21, 107:3, 123:9, 123:14, 123:21, 129:20, 129:22, 129:23, 130:16, 130:23, 131:1, 131:13, 132:1, 132:2, 132:13, 133:2, 133:23, 134:9
**testing** [27] - 5:18, 13:7, 14:14, 15:2, 21:14, 28:15, 28:21, 29:2, 29:15, 29:16, 29:18, 30:23, 31:16, 31:17, 31:18, 38:23, 47:19, 47:24, 56:11, 57:5, 57:22, 57:25, 58:1, 58:9, 64:4
**THE** [323] - 1:12, 2:2, 2:4, 2:8, 2:14, 2:17, 2:23, 3:4, 4:11, 5:1, 8:3, 8:14, 8:23, 9:3, 9:12, 9:16, 12:15, 12:18, 13:12, 13:15, 14:10, 14:21, 15:6, 15:12, 16:5, 16:11, 16:14, 16:21, 16:25, 17:10, 17:15, 18:3, 18:6, 19:7, 19:20, 20:8, 21:8, 21:24, 22:13, 23:15, 23:20, 23:25, 24:17, 25:10, 25:14, 25:21, 26:6, 26:13, 26:16, 26:21, 27:1, 27:18, 27:23, 28:18, 28:22, 30:17, 31:4, 31:10, 31:20, 31:23, 32:4, 32:23, 33:6, 33:24, 34:2, 34:7, 34:16, 34:19, 34:23, 35:1, 35:8, 35:12, 35:16, 35:19, 37:14, 37:19, 38:5, 38:25, 39:22, 40:16, 40:21, 41:17,

41:25, 42:8, 42:15, 43:19, 43:25, 44:24, 45:6, 45:11, 45:13, 45:18, 45:24, 46:2, 46:7, 46:12, 46:22, 47:8, 47:13, 47:25, 48:2, 48:23, 49:3, 50:1, 50:23, 50:25, 51:22, 55:6, 55:15, 55:21, 56:7, 56:14, 56:17, 56:25, 57:4, 57:8, 57:11, 57:17, 58:2, 58:11, 58:14, 58:19, 58:22, 59:3, 59:11, 59:17, 59:23, 60:7, 60:13, 60:19, 61:4, 61:21, 61:25, 62:5, 62:14, 62:21, 63:17, 64:5, 64:19, 65:7, 66:9, 66:12, 66:18, 66:25, 67:6, 67:12, 68:2, 68:18, 72:10, 72:14, 73:2, 73:20, 74:12, 74:15, 74:20, 74:24, 75:3, 75:13, 75:23, 76:5, 76:12, 77:2, 77:19, 77:25, 78:23, 80:3, 80:14, 81:5, 82:19, 83:4, 83:17, 83:22, 83:24, 84:15, 85:7, 85:15, 86:2, 86:7, 86:12, 86:18, 87:23, 88:8, 89:4, 89:17, 90:8, 90:12, 91:19, 91:22, 92:22, 93:1, 93:14, 93:22, 94:14, 94:19, 95:2, 95:9, 95:17, 96:1, 96:8, 96:20, 97:3, 97:8, 97:18, 98:9, 98:13, 98:16, 98:25, 99:11, 99:14, 99:24, 100:2, 100:5, 100:13, 101:1, 101:10, 101:22, 102:2, 102:11, 102:17, 102:24, 103:8, 103:14, 103:23, 104:1, 104:9, 109:16, 110:7, 110:13, 111:1, 111:19, 112:5, 112:20, 113:4, 113:16, 113:18, 114:5, 114:24, 114:25, 115:2, 116:2, 116:11, 116:18, 116:24, 116:25, 117:12, 117:17, 117:23, 118:4, 118:11, 118:14, 118:15, 118:18, 118:23, 119:2, 119:21, 119:24, 120:5, 120:14, 120:23, 121:14, 121:22, 122:9, 122:10, 122:21, 124:14, 125:5, 125:8, 125:14, 125:24, 126:1, 126:8, 126:14, 126:18, 127:3, 127:7, 127:15, 127:18, 127:21, 128:1, 128:5, 128:8, 128:18, 129:2, 130:1, 130:12, 130:19, 130:25, 131:17, 132:6, 132:22, 133:8, 134:13, 134:24, 135:6, 135:11, 135:19, 135:25, 136:6, 136:12, 136:16,

136:19, 137:10, 137:18, 138:1, 138:5, 138:18, 138:23, 139:3, 139:11, 140:3, 140:9, 140:15, 140:16, 140:19, 140:25, 142:5, 142:11, 142:12, 142:16, 143:17, 143:24, 144:9, 144:25
**themselves** [2] - 38:10, 41:12
**theory** [3] - 6:20, 10:3, 21:3
**therefore** [1] - 99:18
**thereof** [1] - 51:1
**therewith** [2] - 77:9, 139:10
**they've** [8] - 10:9, 10:25, 18:18, 48:6, 69:4, 70:20, 79:25, 121:17
**thinking** [6] - 59:18, 63:1, 69:23, 95:21, 135:19, 136:17
**thinks** [2] - 57:5, 126:19
**third** [3] - 53:1, 119:25, 134:2
**Thompson** [6] - 7:3, 51:5, 52:23, 106:2, 108:9, 108:10
**thorny** [1] - 46:7
**thoughts** [2] - 102:19, 123:22
**thread** [1] - 17:4
**threat** [2] - 106:21, 108:17
**threaten** [1] - 106:12
**threatened** [4] - 106:14, 106:20, 110:8, 112:12
**threatening** [4] - 110:24, 111:5, 111:10, 111:14
**threateningly** [1] - 110:9
**three** [8] - 54:18, 61:1, 69:2, 80:7, 85:8, 98:23, 141:19, 141:20
**throughout** [1] - 17:4
**thrust** [2] - 17:2, 62:9
**thrusting** [1] - 76:6
**thumb** [2] - 117:10, 117:19
**tied** [1] - 40:23
**timeframe** [1] - 102:16
**timeline** [2] - 55:6, 127:11
**timely** [1] - 80:15
**timing** [2] - 21:13, 21:16
**tipping** [1] - 88:11
**tips** [1] - 83:8
**tired** [1] - 144:20
**today** [12] - 3:10, 30:24, 66:11, 70:23, 80:17, 103:2, 122:3, 122:4, 129:16, 130:6, 135:9, 139:1
**today's** [2] - 68:23, 121:23
**together** [7] - 33:19, 66:24, 72:20, 102:19, 122:7, 141:12
**took** [4] - 112:15, 131:5, 133:16, 135:4
**top** [1] - 87:13

**topic** [1] - 67:2
**totality** [1] - 112:16
**totally** [3] - 84:4, 93:11, 128:16
**touch** [5] - 7:17, 38:12, 42:23, 43:2, 129:13
**touched** [9] - 6:25, 7:7, 41:7, 41:9, 41:10, 41:13, 41:14, 42:14, 43:7
**toward** [1] - 108:25
**towards** [6] - 74:11, 86:11, 108:8, 108:14, 108:16, 109:15
**track** [1] - 143:20
**Tracy** [3] - 1:21, 145:18, 145:19
**train** [1] - 36:4
**training** [1] - 3:2
**TRANSCRIPT** [1] - 1:12
**transcript** [3] - 1:25, 61:18, 145:14
**transcripts** [1] - 123:16
**transferred** [1] - 20:6
**transparent** [1] - 113:12
**treating** [2] - 49:24, 79:24
**treatment** [1] - 79:17
**trial** [45] - 2:8, 3:14, 7:14, 12:8, 13:18, 22:19, 38:1, 38:2, 53:5, 53:13, 59:20, 60:25, 61:1, 61:5, 63:12, 63:16, 69:5, 75:12, 86:6, 88:13, 109:24, 110:13, 113:23, 113:24, 114:10, 115:4, 116:7, 116:23, 117:14, 117:17, 118:10, 120:24, 122:23, 123:14, 123:21, 129:9, 131:1, 133:22, 136:22, 136:24, 137:2, 137:4, 138:12, 139:2, 141:8
**trials** [1] - 122:24
**tried** [4] - 11:16, 13:24, 68:4, 144:3
**trillion** [4] - 41:18, 41:21, 42:1, 42:9
**trod** [1] - 84:15
**troubled** [2] - 36:6, 36:25
**true** [8] - 70:5, 74:15, 74:21, 76:16, 76:18, 87:9, 89:7, 108:19
**TrueAlleele** [1] - 17:20
**TrueAllele** [6] - 26:9, 30:21, 44:11, 44:17, 47:19, 58:1
**truth** [2] - 7:14, 53:13
**truthfulness** [1] - 81:21
**try** [4] - 15:22, 63:5, 139:12, 144:2
**trying** [28] - 9:1, 11:17, 13:23, 22:24, 42:2, 42:3, 44:10, 55:12, 59:19, 63:10,

65:4, 65:11, 75:2, 75:24, 78:12, 82:16, 90:13, 91:9, 93:25, 94:24, 99:16, 99:17, 99:20, 124:10, 132:21, 140:13, 143:18, 144:12
**Tuesday** [1] - 59:20
**turbulent** [1] - 76:14
**turn** [11] - 26:18, 27:9, 59:4, 63:11, 65:23, 89:7, 89:14, 94:1, 95:22, 96:1, 125:16
**turned** [5] - 19:19, 94:4, 95:15, 95:17, 134:6
**turning** [4] - 88:21, 89:18, 94:25, 95:7
**turns** [2] - 43:3, 78:25
**twice** [4] - 10:10, 13:19, 23:9, 73:1
**two** [31] - 7:6, 13:23, 19:10, 21:23, 23:10, 24:7, 27:10, 28:1, 35:3, 46:19, 52:13, 52:24, 53:1, 53:3, 53:10, 54:15, 55:24, 61:10, 61:13, 61:16, 66:22, 82:8, 86:23, 98:23, 106:23, 109:19, 110:7, 110:10, 113:1, 121:22, 141:18
**two-fold** [2] - 24:7, 86:23
**type** [11] - 30:23, 44:3, 68:13, 71:20, 72:1, 74:18, 79:14, 84:9, 85:15, 100:14, 130:24
**types** [1] - 85:4
**typically** [4] - 120:17, 125:11, 127:23, 128:1

## U

**ultimate** [4] - 87:6, 103:12, 104:4, 105:4
**unable** [2] - 17:24, 28:16
**unarmed** [1] - 50:18
**unauthorized** [1] - 98:8
**unaware** [1] - 45:20
**unclear** [2] - 85:1, 85:2
**under** [13] - 27:2, 46:15, 53:24, 53:25, 56:23, 69:25, 70:1, 77:9, 86:1, 90:19, 96:19, 108:4, 123:25
**underlying** [2] - 23:16, 23:17
**understood** [6] - 64:18, 65:2, 84:20, 110:12, 124:24, 136:15
**unduly** [1] - 69:15
**unequivocally** [1] - 69:19
**unfair** [3] - 89:1, 93:11, 137:22
**unfortunately** [4] - 61:8, 69:8, 71:20, 84:24

**unhelpful** [1] - 106:23
**uniform** [1] - 134:7
**uninvolved** [1] - 19:11
**unit** [2] - 88:11, 101:4
**UNITED** [2] - 1:1, 1:13
**United** [1] - 1:15
**unknown** [1] - 92:24
**unless** [11] - 73:13, 73:14, 79:14, 80:3, 80:24, 81:20, 121:3, 126:3, 126:15, 135:17
**unlikely** [5] - 41:6, 41:13, 42:5, 43:7
**unpack** [1] - 42:15
**unreasonable** [1] - 108:12
**unrelated** [1] - 84:16
**untimely** [1] - 22:18
**up** [46] - 4:5, 5:19, 6:7, 7:4, 10:8, 16:24, 20:11, 22:20, 25:22, 26:4, 37:20, 40:23, 45:12, 46:7, 47:5, 51:6, 52:24, 54:20, 62:12, 80:16, 82:6, 96:22, 100:9, 101:2, 101:8, 102:20, 114:6, 115:3, 121:20, 125:16, 129:14, 130:13, 131:5, 131:8, 131:25, 133:17, 133:20, 134:18, 135:10, 135:16, 135:17, 136:24, 143:6, 143:9, 144:14, 145:4
**upstairs** [1] - 141:4
**urgent** [1] - 135:8
**uses** [6] - 99:5, 100:21, 101:12, 101:17, 119:6, 130:24
**utility** [1] - 122:23

## V

**vague** [2] - 108:3, 111:23
**validating** [1] - 44:18
**validation** [2] - 44:12, 44:16
**valuable** [1] - 108:3
**value** [4] - 27:13, 54:3, 54:4, 55:4
**vehicle** [1] - 20:12
**verdict** [5] - 113:15, 135:25, 137:11, 139:2, 139:4
**versus** [7] - 60:12, 63:9, 114:4, 114:15, 118:21, 141:11
**video** [14] - 19:18, 20:12, 20:13, 52:15, 53:5, 66:14, 114:2, 114:19, 114:20, 115:24, 117:5, 119:12, 129:20, 129:21
**videos** [2] - 116:12, 130:12
**videotaped** [1] - 130:4
**view** [2] - 49:1, 59:4
**violate** [1] - 91:14

**violated** [2] - 88:23, 109:4
**violation** [4] - 104:16, 104:17, 104:19, 105:5
**violations** [1] - 91:15
**violence** [4] - 67:23, 82:11, 82:21, 112:13
**violent** [6] - 68:13, 74:10, 75:19, 81:9, 81:16, 136:10
**Virginia** [1] - 29:8
**virtue** [1] - 21:15
**visual** [1] - 118:2
**vitae** [1] - 25:23
**volume** [3] - 72:4, 115:18, 115:19

## W

**waiving** [1] - 77:25, 78:24, 112:21
**wake** [1] - 133:17
**walk** [3] - 124:6, 124:19, 125:18
**walked** [1] - 7:3
**walks** [1] - 51:6
**wall** [1] - 128:8
**wants** [4] - 47:13, 64:19, 64:21, 131:1
**waste** [5] - 25:4, 37:9, 63:4, 64:25, 132:4
**watch** [1] - 130:12
**ways** [4] - 105:16, 121:22, 123:4, 141:10
**weapon** [7] - 106:5, 106:6, 106:13, 107:11, 107:12, 107:22, 108:7
**weapons** [1] - 121:3
**wearing** [4] - 3:6, 19:20, 19:24, 20:13
**Wednesday** [1] - 3:3
**week** [6] - 96:2, 136:22, 137:2, 140:18, 140:21
**weekend** [1] - 141:1
**weeks** [4] - 61:1, 61:16, 122:5, 129:17
**weight** [2] - 21:1, 33:7
**WESTERN** [1] - 1:2
**whereby** [1] - 123:16
**white** [2] - 42:11, 42:13
**whoever's** [1] - 66:7
**whole** [3] - 133:24, 143:20, 144:12
**Willett** [1] - 3:19
**WILLIAM** [1] - 1:8
**willing** [5] - 30:11, 63:5, 64:13, 117:17, 117:18
**Wilson** [12] - 106:3, 107:15, 108:9, 108:19, 110:18, 111:6, 111:15, 112:1, 112:4, 112:8, 112:10, 112:18

**wish** [1] - 128:19
**withdraw** [7] - 6:6, 7:24, 8:22, 12:11, 39:14, 39:24, 91:21
**withdrawal** [2] - 8:10, 36:10
**withdrawing** [2] - 12:11, 40:3
**withdrawn** [5] - 5:3, 6:3, 10:22, 33:16, 33:17
**withdrew** [7] - 6:10, 7:25, 11:18, 13:22, 36:10, 39:10, 40:6
**witness** [52] - 3:25, 4:17, 4:20, 4:22, 4:23, 12:20, 12:24, 14:20, 20:16, 20:20, 21:9, 23:2, 24:7, 24:14, 24:16, 24:23, 28:5, 28:9, 30:9, 31:21, 31:22, 32:5, 33:4, 33:19, 35:24, 39:5, 39:11, 39:13, 40:12, 40:14, 41:22, 47:12, 49:19, 53:22, 58:20, 60:5, 62:8, 62:15, 64:15, 74:20, 74:25, 75:4, 76:13, 78:2, 79:15, 81:19, 81:21, 84:3, 84:17, 90:9, 123:8, 123:18
**witness's** [1] - 123:9
**witnessed** [1] - 19:11
**witnesses** [15] - 5:5, 5:15, 12:12, 14:16, 19:11, 23:1, 23:7, 36:21, 37:25, 46:19, 52:25, 53:10, 54:15, 54:19, 61:9
**woke** [2] - 131:5, 133:19
**wonder** [1] - 27:25
**wondered** [1] - 115:20
**wondering** [1] - 125:7
**WOOD** [1] - 1:12
**Word** [1] - 113:14
**word** [2] - 20:10, 40:24
**words** [6] - 19:21, 19:25, 46:24, 47:2, 79:22, 111:8
**wore** [1] - 134:8
**works** [4] - 28:18, 28:20, 44:9, 119:1
**world** [1] - 49:21
**worms** [1] - 53:8
**worn** [1] - 134:6
**worried** [2] - 67:23, 72:2
**write** [1] - 126:25
**writes** [2] - 75:25, 127:5
**written** [5] - 12:21, 59:3, 59:4, 64:2, 105:11
**wrongdoing** [3] - 94:24, 100:9, 102:14
**wrote** [1] - 59:22

## Y

**year** [3] - 99:8, 99:9, 108:21
**years** [7] - 43:18, 99:7, 99:12, 99:14, 102:17, 122:24, 141:19
**York** [2] - 71:19, 73:17
**young** [3] - 69:2, 69:8, 77:15

## Z

**zero** [1] - 94:10
**zeros** [1] - 41:23